**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Bankruptcy No. 09-27807-MBM** |
| **MAX & ERMA'S RESTAURANT, INC.,** | ) | |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **SPIRIT MASTER FUNDING, LLC,** | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MAX & ERMA'S RESTAURANT, INC.,** | ) | |
| | ) | |
| Respondent. | ) | |

**RENEWED MOTION FOR RELIEF FROM AUTOMATIC STAY
AND REQUEST FOR HEARING**

Spirit Master Funding, LLC ("*Spirit*"), creditor and parties-in-interest herein, by and through its undersigned counsel, hereby files this renewed motion (the "*Motion*") pursuant to section 362(d) of title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rule 4001-4 of the local rules of this Court (the "*Local Rules*"), for relief from the automatic stay and respectfully represents as follows:

## I.  INTRODUCTION

Spirit is the owner of the land and buildings located at (i) 130 Andrews Drive, Pittsburgh, Pennsylvania (the "*Pittsburgh Property*"); (ii) 936 Sheraton Dr., Mars, Pennsylvania (the "*Mars Property*"); (iii) 6420 Grand Ave., Gurnee, Illinois (the "*Gurnee Property*"); and (iv) 4279 Cemetery Rd., Hilliard, Ohio (the "*Hilliard Property*")(collectively, the "*Spirit Properties*").

Max & Erma's Restaurant, Inc. (the "*Debtor*") has *no* legal or equitable interests in the Spirit Properties because leasehold interests that the Debtor previously had in the Spirit Properties were validly terminated prior to the commencement of this Chapter 11 proceeding as a result of the Debtor's failure to pay rent when due to Spirit. Notwithstanding the fact that the Debtor has no legal or equitable interests in the Spirit Properties, the Debtor remains in wrongful, unlawful possession of the Spirit Properties.

At a hearing on December 1, 2009, the Court denied, without prejudice, Spirit's prior motion for relief from the automatic stay in order to provide for this renewed motion and the disposition of the Debtor's unsupported and unsupportable assertions that the terminations of the Debtor's prior leasehold interests were waived by Spirit accepting payments from the Debtor during the Debtor's holdover tenancy. There is no legal or factual basis to conclude that Spirit waived the termination of the Debtor's prior leasehold interests by accepting holdover tenant rent from the Debtor for its post-petition occupancy of the Spirit Properties.

Pursuant to Section 24(D)(i) of each of the terminated Pittsburgh and Mars Leases (as defined below), the Debtor expressly agreed that upon termination, it had no "right to reinstate . . by payment of any rentals." Moreover, pursuant to Section 30 of each of the terminated leases for the Spirit Properties, the Debtor expressly acknowledged and agreed that (i) it had an obligation to compensate for any holdover occupancy of the Spirit Properties following termination of the leases; and (ii) that such holdover occupancy or the payment of holdover rental did not constitute Spirit's consent to the Debtor's continuing tenancy.

Through the termination notices delivered to the Debtor pursuant to the subject leases and applicable law, Spirit expressly informed the Debtor that the subject leases were terminated and

that the Debtor did not have "any right . . . to reinstate [Debtor's] rights by payment of any rentals."

Plainly, the express terms of the subject leases bar a claim that Spirit waived its right to terminate the leases. Moreover, Spirit's actions in connection with, and following, the termination of the leases prevents any finding that Spirit intended to waive its right to terminate the leases by accepting compensation for the Debtor's holdover tenancy. In short, Spirit's acceptance of limited rent for the Debtor's wrongful holdover tenancy did not, and cannot, constitute a waiver of the valid lease terminations.

Because the Debtor has no legal or equitable interest in the Spirit Properties and its possession of such properties is unlawful and wrongful, cause exists under 11 U.S.C. § 362(d)(1) to grant Spirit relief from the automatic stay to permit Spirit to continue with efforts to terminate the Debtor's unlawful possession of the Spirit Properties.

## II. JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. The predicates for relief sought herein are 11 U.S.C. § 362(d)(1), Fed.R.Bankr. 4001(a) and 9014, and Local Rules 4001-4 and 9013-3.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## FACTS

5. Pursuant to four separate lease agreements, the Debtor previously leased the Spirit Properties from Spirit. The lease agreements consisted of:

(i) a December 31, 1997 Lease, as subsequently amended (the "*Mars Lease*") relating to the Mars Property by and between the Debtor and Spirit's predecessor in interest;

(ii) an October 23, 1998 Lease (the "*Hilliard Lease*"), as subsequently amended, relating to the Hilliard Property by and between the Debtor and Spirit's Predecessor in interest;

(iii) an October 23, 1998 Lease, as subsequently amended (the "*Gurnee Lea*se") relating to the Gurnee Property by and between the Debtor and Spirit's predecessor in interest; and

(iv) a December 31, 1997 Lease (the "*Pittsburgh Lease*"), as subsequently amended, relating to the Pittsburgh Property by and between the Debtor and Spirit's Predecessor in interest.

True and correct copies of the applicable provisions of the Mar Lease, the Hilliard Lease, the Gurnee Lease, and the Pittsburgh Lease, each as amended (collectively, the "*Leases*") are attached hereto as Exhibit A[1].

6.      The Debtor failed to pay rent when due under each of the Leases.  By a letters dated August 7, 2009 (the "*Default Notice*"), Spirit provided the Debtor with formal written notice of the Debtor's defaults (collectively, the "*Defaults*") for failure to pay rent when due under the Leases and notified the Debtor of its right to cure the Defaults within ten (10) days.  A true and correct copy of the Default Notice is attached hereto as Exhibit B.

7.      The Debtor failed to cure the Defaults.

8.      Pursuant to Section 24(D)(i) of each Lease, as a result of the Debtor's failure to cure the Defaults within ten (10) days of the Default Notice, Spirit was entitled to terminate each of the Leases.  By two formal written notices each dated August 18, 2009 (respectively, the "*Pittsburgh Termination Notice*" and the "*Mars Termination Notice*"), Spirit notified the Debtor

---

[1]      The entire Leases cannot be attached due to applicable page limitations on filings in the United States Bankruptcy Court for the Western District of Pennsylvania. *See* United States Bankruptcy Court for the Western District of Pennsylvania General Court Procedures #8.  Copies of the fully executed Leases have been provided to the Debtor, the U.S. Trustee's Office, and the Unsecured Creditor's Committee.  Other interested parties may receives copies of the fully executed Leases upon request.

that both the Pittsburgh Lease and the Mars Lease were terminated. By two formal written notices each dated September 4, 2009 (respectively, the "*Gurnee Termination Notice*" and the "*Hilliard Termination Notice*"), Spirit notified the Debtor that both the Hilliard Lease and the Gurnee Lease were terminated. Together, the Pittsburgh Termination Notice, the Mars Termination Notice, the Gurnee Termination Notice and the Hilliard Termination Notice, shall each be referred to as a "*Lease Termination Notice*" and collectively, the "*Lease Termination Notices*". True and correct copies of the Lease Termination Notices are attached hereto as Exhibit C.

9.       Through the Lease Termination Notices, Spirit expressly and specifically informed the Debtor that:

(i) the respective Lease was terminated;

(ii) the Debtor had no right to reinstate the Lease by payment of rent;

(iii) the Debtor was obligated to immediately surrender the respective Property; and

(iv) Spirit's collection of rent shall not constitute or effect a waiver of Spirit's rights or remedies.

*See* each Lease Termination Notice.

10.     From and after termination of the Leases, as evidenced and memorialized by the Lease Termination Notices, the Debtor had no legal or equitable interest in the Spirit Properties and the Debtor had no right to use or possession of the Spirit Properties.

11.     Notwithstanding the termination of each of the Leases and the Debtor's obligation to surrender the Spirit Properties to Spirit upon such termination, the Debtor wrongfully and unlawfully remained in possession of the Spirit Properties.

12.     Pursuant to Section 30 of each Lease, the Debtor expressly agreed that in the event that it wrongfully remained in possession of the subject Property after a termination of the Lease—as a holdover tenant—that it would be obligated to pay rentals to Spirit. *See* each Lease at § 30. Moreover, through Section 30 of each Lease, the Debtor acknowledged and agreed that Spirit's collection of rent during the Debtor's holdover tenancy would <u>not</u> be deemed to be Spirit's consent to the Debtor's tenancy. *Id.*

13.     Pursuant to Section 30 of each of the Leases, as a holdover tenant, from and after the termination of the Leases, the Debtor was obligated to pay Spirit rentals equal to 125% of the previously existing Base Monthly Rental. See each Lease at § 30. The holdover rent due for the Debtor's holdover tenancy would be:

      i.     For the Gurnee Lease, holdover rental in the amount of $310.22/day or $9,435.87/month[2];

—

      ii.     For the Pittsburgh Lease, holdover rental in the amount of $895.91/day or $27,250.72/month[3];

—

      iii.     For the Hilliard Lease, holdover rental in the amount of $664.75/day or $20,219/month[4]; and

—

      iv.     For the Mars Lease, holdover rental in the amount of $899/day or $27,347/month[5].

—

---

[2]     Immediately prior to the termination of the Gurnee Lease, Base Monthly Rental was $7,548.70. Pursuant to Section 30 of the Gurnee Lease, the holdover rental is $9,435.87/month ($7,548.70 x 1.25) and $31.22/day [(9,435.87 x 12)/365].

[3]     Immediately prior to the termination of the Pittsburgh Lease, Base Monthly Rental was $21,800.58. Pursuant to Section 30 of the Pittsburgh Lease, the holdover rental is $27,250.72/month ($21,800.58 x 1.25) and $895.91/day [(27,250.58 x 12)/365].

[4]     Immediately prior to the termination of the Hilliard Lease, Base Monthly Rental was $16,175.76. Pursuant to Section 30 of the Hilliard Lease, the holdover rental is $20,219/month ($16,175.76 x 1.25) and $664.75/day [(20,219 x 12)/365].

14. From and after the August 18, 2009 termination date of the Mars Lease through December 31, 2009, $121,378 in holdover rental has become due from the Debtor to Spirit but the Debtor has paid Spirit only $95,957.68. From and after the August 18, 2009 termination date of the Pittsburgh Lease through December 31, 2009, $120,947.85 in holdover rental has become due from the Debtor to Spirit but the Debtor has paid Spirit only $87,202.32. Following the September 4, 2009 termination of the Hilliard Lease through December 31, 2009, $78,440.50 in holdover rental has become due from the Debtor to Spirit but the Debtor has paid Spirit only $64,703.04. Finally, following the September 4, 2009 termination of the Gurnee Lease through December 31, 2009, $36,605.96 in holdover rental is due from the Debtor to Spirit but the Debtor has paid Spirit only $31,895.96. Accordingly, while the Debtor has attempted to compensate Spirit for the Debtor's unauthorized holdover occupancy of the Properties, the payments (the "*Holdover Tenancy Payments*") made by the Debtor on account of such holdover occupancy are substantially less than the amount the Debtor agreed to pay to Spirit for the Debtor's post-termination holdover tenancy.

15. Shortly after delivering the Termination notices, on September 25, 2009, Spirit delivered written correspondence (the "*Non-Waiver Letter*") to the Debtor that specifically and clearly informed the Debtor that no "prior or future collection of any amounts . . . . shall be construed to  . . . waive, limit, modify, prejudice or otherwise adversely affect any rights, remedies or powers of [Spirit] . . . . or waive, limit, modify, prejudice or otherwise adversely affect any of the claims of [Spirit] against [Debtor]." A true and correct copy of the Non-Waiver Letter is attached hereto as Exhibit D.

---

[5] Immediately prior to the termination of the Mars Lease, Base Monthly Rental was $21,878.17. Pursuant to Section 30 of the Mars Lease, the holdover rental is $27,347/month ($21,878.17 x 1.25) and $899.10/day [(27,347 x 12)/365].

16.     With respect to the Pittsburgh Property and the Mars Property, on October 16, 2009, Spirit filed in the Court of Common Pleas of Allegheny County, Pennsylvania two Complaints in Confession of Judgment in Ejectment for Possession of Real Property and Affidavit (together, the "*Pennsylvania Ejectment Actions*") seeking ejectment of the Debtor and possession of the Pittsburgh Property and the Mars Property.  On October 16, 2009, two Confessions of Judgment in Ejectment for Possession of Real Property were filed on behalf of the Debtor in the Pennsylvania Ejectment Actions.

17.     On or about October 23, 2009 (the "*Filing Date*"), following the termination of the Leases, the Debtor commenced a case under chapter 11 of the Bankruptcy Code.

**IV.**
**TO THE EXTENT THE AUTOMATIC STAY APPLIES TO THE TERMINATED LEASES, SPIRIT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362(D)(1)**

18.     By this Motion, Spirit respectfully requests entry of an order modifying the automatic stay under section 362(d)(1) of the Bankruptcy Code with respect to the Spirit Properties—to the extent such relief is necessary—to allow and authorize Spirit to market, sell or take any other action necessary, as Spirit may determine in its sole discretion, to protect its interests in the Spirit Properties, including but not limited to continuing the Pennsylvania Ejectment Actions and taking such actions as are necessary under applicable laws to terminate the Debtor's unlawful and wrongful possession of the Hilliard Premises and the Gurnee Premises.

19.     Section 362(b)(10) of the Bankruptcy Code provides that the automatic stay is inapplicable to actions taken by a landlord to obtain possession from a debtor of non-residential real property subject to a lease that terminated prepetition.  11 U.S.C. § 362(b)(10); *see also In re Northeastern Int'l Airways, Inc.*, 56 B.R. 247, 250 (S.D. Fla. 1986) (holding that a lessor was

fully within its rights to demand possession of premises from a debtor because the automatic stay did not apply where lease was terminated prepetition).  The exception to the automatic stay contained in section 362(b)(10) applies regardless of whether a lease's termination date has been accelerated or the lease has terminated based upon the original date specified in the lease.  *See, e.g., In re Policy Realty Corp.*, 242 B.R. 121 (S.D.N.Y. 1999), *aff'd,* 213 F.3d 626 (2d Cir. 2000); *In re West Pine Constr. Co.*, 80 B.R. 315 (Bankr. E.D. Pa. 1987).

20.     Because each Lease was validly terminated prior to the Filing Date, the automatic stay does not even apply to the Spirit Properties and Spirit's entitlement to take possession and control over the Spirit Properties.

21.     Even if the automatic stay does apply, pursuant to Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. §  362(d)(1), cause exists to grant Spirit relief from the stay. Section  362(d)(1) provides that a court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party or interest."  11 U.S.C. § 362(d)(1).

22.     In the instant case, the Debtor failed to pay the rents due under the Leases.  In accordance with the default procedures outlined in the Leases, Spirit sent the Default Notice to the Debtor on August 7, 2009, and August 10, 2009, notifying the Debtor of its payment defaults and notifying the Debtor of its right to cure the Defaults within ten (10) days.  The Debtor failed to cure the Defaults.

23.     Pursuant to the express terms of Section 24(D)(i) of each Lease, as a result of the Debtor's failure to cure the Defaults within ten (10) days of the Default Notice, Spirit was entitled to terminate each of the Leases.  By formal written notice dated August 18, 2009, Spirit notified the Debtor that both the Pittsburgh Lease and the Mars Lease were terminated.  By

formal written notice dated September 4, 2009, Spirit notified the Debtor that both the Hilliard Lease and the Gurnee Lease were terminated. Through the Lease Termination Notices Spirit specifically informed the Debtor of its contractual obligation to immediately surrender the subject Spirit Properties to Spirit.

24. From and after termination of the Leases, as evidenced and memorialized by the Lease Termination Notices, the Debtor had no legal or equitable interest in the Spirit Properties and the Debtor had no right to use or possession of the Spirit Properties.

25. Pursuant to Section 362(b)(10) of the Bankruptcy Code, Spirit respectfully submits that the automatic stay is inapplicable to the Spirit Properties and Spirit should be permitted to take possession of the Spirit Properties and exercise its rights with respect to such Properties.

26. Even if the automatic stay is deemed to apply to the Debtor's unlawful holdover occupancy of the Spirit Properties, Spirit respectfully submits that cause exists to modify the stay. Indeed, even where courts find that the automatic stay applies to a debtor's possessory interest in a terminated prepetition lease, they nonetheless conclude that "cause" exists under section 362(d)(1) to lift the automatic stay so as to permit the lessor to regain possession of the premises. *See*, *e.g.*, *In re Nasir*, 217 B.R. 995, 997 (Bankr. E.D. Va. 1997) ("[A] landlord's desire to evict a debtor tenant whose lease has been terminated prepetition is sufficient cause for the bankruptcy court to grant relief from the stay under § 362(d)(1)."); *In re Williams*, 139 B.R. 759, 760 (Bankr. M.D. Fla. 1992) (granting lessor relief from automatic stay to evict lessee where residential lease had terminated prepetition); *In re Memphis-Friday's Assocs.*, 88 B.R. 830, 842-43 (Bankr. W.D. Tenn. 1988) (finding that termination of a lease prepetition constitutes "cause" under section 362(d)(1) to lift the automatic stay because of the

debtor's inability to assume the lease); *In re Masterworks, Inc.*, 94 B.R. 262, 268 (Bankr. D. Conn. 1988) (finding cause for relief from the automatic stay where parties' lease terminated prior to the commencement of the bankruptcy case leaving no lease left for the debtor to assume). In accordance with the preceding authorities, even if this Court concludes that the automatic stay applies to the Debtor's wrongful and unlawful possession of the Spirit Properties, it should nonetheless find that cause exists to lift the automatic stay.

27.     In light of the foregoing, good cause has been shown under section 362(d)(1) of the Bankruptcy Code for immediate relief from the automatic stay. Granting Spirit relief from the automatic stay will enable it to take immediate steps to realize on its interests in the Spirit Properties and minimize the harm and damage inflicted upon Spirit by the Debtor's breaches and defaults and its wrongful possession of the Spirit Properties.

28.     There is no factual or legal basis to conclude that Spirit waived the Lease terminations by accepting the Holdover Tenancy Payments from the Debtor. Each of the Leases expressly provides that Spirit's acceptance of payments from the Debtor after a lease termination cannot give rise to new or renewed tenancy rights. *See* Pittsburgh Lease at § 24(D)(i); Mars Lease at § 24(D)(i); each Lease at § 30. Each Lease Termination Notice expressly informed the Debtor that the Lessee had no right to reinstate the Lease by payment of any rentals. *See* each Lease Termination Notice at ¶ 4. These contractual provisions are strictly enforceable against the Debtor and prevent any finding that Spirit's acceptance of limited payments made by the Debtor during its holdover tenancy constitute a waiver of the lease terminations. E.g. *Cottonwood Plaza Assoc. v. Nordale*,132 Ariz. 228, 644 P.2d 1314, 1318-19 (Az.Ct.App. 1982)(a landlord's termination of a lease cannot be waived by the landlord's collection of rent following breach

where the lease provides that acceptance of rents is not waiver of rights).[6]   The Second Circuit

Court of Appeals explained:

> Waiver is always a matter of intent and while an intent to waive may be inferred from the acceptance of rent under certain circumstances, such an inference may be rebutted and is rebutted here by the express agreement between the parties that the rent was paid and accepted without prejudice . . .

*E.g. Wil-low Cafeterias, Inc*., 95 F.2d 306, 309 (2nd Cir. 1938).  In the *Wil-low Cafeterias* case,

just as in the Spirit Leases, the applicable lease contract contained a provision that evidenced the

parties agreement that the landlord's acceptance of rent following a breach did not waive the

landlords rights to terminate.  *Id*.  Plainly, Spirit's acceptance of compensation for the Debtor's

unlawful holdover tenancy does not constitute Spirit's waiver of the Lease terminations.

29.     In fact,  the Debtor's Holdover Tenancy Payments were made pursuant to the

Debtor's express agreement that such payments would not constitute an agreement by Spirit to a

new or renewed tenancy.  *See* each Lease at Section 30.  While Spirit accepted the Holdover

Tenancy Payments, it did so (i) in reliance upon the Debtor's agreement that such acceptance

would not give rise to tenancy interests, *Id*.; (ii) in partial compensation for the Debtor's

wrongful possession of the Spirit Properties; and (iii) <u>after</u> notifying the Debtor through the

---

[6]     Through Section 51 of each Lease, the Debtor and Spirit agreed that Arizona law would govern all issues of contract law while issues relating to real property interests would be governed by the internal laws of the state where the subject property was located.  The issue of waiver is a matter of contract law and therefore governed by Arizona law.  *See, e.g.* 13 S. Williston, Contracts § 683 et seq. (3d ed. 1961).  Even if Arizona law would not control, other applicable law would enforce those provisions of each Lease—to which the Debtor expressly agreed—that specifically permitted Spirit to collect payments from the Debtor without waiving the lease terminations. E.g. *Graham v. Pavarini*, 458 N.E.2d 421, 426 (Ohio Ct. App. 1983)(enforcing lease provision providing that landlord retained eviction right notwithstanding collection of rent); *See Vintaloro v. Pappas*, 310 Ill. 115, 117, 141 N.E. 377 (Ill 1923)(court can enforce lease agreement that provide for non-waiver as via collection of post-termination rent and collection of holdover tenancy rent or rent during eviction litigation does not necessarily waive termination as such acts are exceptions to general rule that receipt of rent by lessor is waiver);  *Severance v. Heyl & Patterson, Inc.,* 308 Pa. 101, 108, 162 A. 171, 173 (1932) ("[t]he fact that money was paid as rent does not establish any particular term or holding and if the beginning of the tenancy or its length is in question, these facts must be shown by other evidence"); *Peterson v. Schultz,* 162 Pa.Super. 469, 58 A.2d 360 (1948) (fact that tenant has paid rent after expiration of term and the landlord has accepted it is not an affirmation of the lease for a new year but merely evidence of affirmation which may be rebutted by proof that such was not the intention of the parties).

Lease Termination Notices that payments of rental by the Debtor would not reinstate the Leases. *See* each Lease Termination Notice.

30.     Moreover, shortly after delivery of the Lease Termination Notices, Spirit delivered the Non-Waiver Letter to the Debtor which yet again informed and reminded the Debtor that no payment of rent would undo the prior Lease terminations.

31.     Through the express agreement of Spirit and the Debtor and by the actions of Spirit after the Lease terminations, Spirit's acceptance of the Holdover Tenancy Payments did not, and cannot, waive the effect of the Lease Terminations.

32.     Because each Lease was validly terminated prior to the Filing Date and such terminations were not waived, the automatic stay does not even apply.  Even if the automatic stay is deemed to apply with respect to the Debtor's unlawful holdover tenancy, cause exists to terminate the automatic stay so that Spirit may exercise its entitlement to take possession and control over the Spirit Properties.

## CONCLUSION

WHEREFORE, Spirit respectfully requests entry of an order modifying the automatic stay under section 362(d)(1) of the Bankruptcy Code with respect to all of the Spirit Properties to allow and authorize Spirit to market, sell or take any other action necessary, as Spirit may determine in its sole discretion, to protect its interests in the Spirit Properties including but not limited to continuing the Pennsylvania Ejectment Actions and taking such actions as may be necessary to terminate the Debtor's wrongful possession of the Hilliard Premises and the Gurnee Premises.

Dated:  December 31, 2009

Respectfully Submitted,

**STRASSBURGER McKENNA GUTNICK & GEFSKY**

By:  /s/ Joseph R. Lawrence
      Joseph R. Lawrence
      Pa. I.D. No. 65709
      Christopher J. Azzara
      Pa. I.D. No. 204114

Four Gateway Center, Suite 2200
444 Liberty Avenue
Pittsburgh, PA 15222
(412) 281-5423
(412) 281-8264 (Fax)

*Counsel for Spirit Master Funding, LLC*

Jeffrey T. Wegner
**KUTAK ROCK LLP**
1650 Farnam Street
Omaha, NE 68102
Telephone:  (402) 346-6000
Facsimile:  (402) 346-1148