IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>MAX & ERMA'S RESTAURANTS, INC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-27807-MBM |

## STIPULATION AND CONSENT ORDER AUTHORIZING AND DIRECTING DEBTOR TO RETAIN A CHIEF RESTRUCTURING OFFICER

The Official Committee of Unsecured Creditors (the "Committee") and National City Bank, for itself and as agent (the "Bank" and, together with the Committee, the "Movants"), and Max & Erma's Restaurants, Inc. (the "Debtor" and together with the Movants, the "Parties") hereby agree as follows:

**WHEREAS**, Max & Erma's Restaurants, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") on October 23, 2009 (the "Petition Date") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court")

**WHEREAS**, on December 28, 2009 the Movants filed the Joint Motion of the Committee of Unsecured Creditors and PNC Bank, National Association for the Appointment of a Chapter 11 Trustee or in the Alternative Termination of the Exclusive Period to File a Chapter 11 Plan (the "Trustee Motion");

**WHEREAS**, the Court scheduled a hearing on the Trustee Motion For Friday, January 15, 2010;

**WHEREAS**, on December 1, 2009, the Court entered the Second Interim Agreed Order Authorizing Max & Erma's Restaurant, Inc.'s Limited Use of Cash Collateral and

Granting Adequate Protection to Existing Lienholders (the "Second Interim Cash Collateral Order");

**WHEREAS**, the Movants and the Debtor seek to settle and resolve the Trustee Motion on the following terms and conditions; and

**WHEREAS**, Mr. Gary L. Reinert, Sr., the owner (the "Owner") of the Debtor and affiliated companies consents to the terms and conditions set forth herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to the following:

1. The Debtor shall immediately retain the services of Mark Roberts (the "CRO") and the firm of Alvarez & Marshal North America LLC to act as its Chief Restructuring Officer. In the event that the Debtor files a separate application to retain the CRO, the terms and conditions of retention must not deviate from or be inconsistent with the terms and conditions of this Stipulation. The CRO shall be compensated as follows:

    a) $175,000 in month one from the Debtor's bankruptcy estate;

    b) $125,000 each month in months two, three, four and five from the Debtor's bankruptcy estate;

    c) Any additional compensation to the CRO: (i) will be paid from sources outside of the Debtor's bankruptcy estate; (ii) will be subject to advance, full disclosure to the Bankruptcy Court; and (iii) will not give rise to a claim against the Debtor or the Debtor's bankruptcy estate with priority any greater than a claim subordinated to general unsecured claims.

2. The CRO will be authorized and directed to act as the Debtor's most senior operating officer and will supervise and maintain the operation of the businesses of the Debtor. In connection with the operation of the Debtor's businesses, the CRO will be indemnified and held harmless by the Debtor from and against any claims against the CRO arising from the CRO's actions in compliance with these resolutions, except for gross negligence

or willful misconduct on the part of the CRO. Current management of the Debtor shall at all times act in good faith, be answerable to and cooperate with the CRO. The CRO is authorized to operate the Debtor in the following ordinary course of business capacities:

a) To employ, discharge, and fix the compensation, salaries, wages and benefits for all executives, managers, officers, agents, employees and servants of the Debtor (and those providing services on behalf of the Debtor), as he may deem necessary and advisable for the proper operation of the Debtor's businesses and the management, preservation and the protection of its assets;

b) To pay all allowable claims incurred after the Petition Date for wages and salaries of employees of the Debtor for service rendered to the Debtor, as the CRO deems necessary and appropriate;

c) Purchase or otherwise acquire for cash or on credit (in the ordinary course), such materials, equipment, machinery, supplies, services or other property as the CRO may deem necessary and advisable in connection with the operation of the Debtor's businesses and the management and preservation of the Debtor's property, and to pay for any such purchases made on credit when due;

d) Enter into any contracts incidental to the normal and usual operation of the Debtor's businesses and the management and preservation of its assets, in the ordinary course of business and subject to compliance with applicable law;

e) Pay all taxes and similar charges lawfully incurred after the Petition Date in the operation of the Debtor's businesses and the preservation and maintenance of the Debtor's assets;

f) Keep internal books and records of the Debtor and to prepare the reports, schedules, statements of financial affairs and other documents or certificates in accordance with generally accepted accounting principles and as required by orders of the Court;

g) Manage and collect accounts receivable and manage and pay accounts payable from available funds of the Debtor (subject to the terms and conditions of any cash collateral order entered of record by the Court) and to reconcile all bank accounts;

h) Formulate the Debtor's business and restructuring plans (in consultation with the Agent, the Owner, and the Committee);

i) Retain, within five days from the entry of this Stipulation, supervise and coordinate with an investment banking firm acceptable (acceptable in

terms of the firm, compensation structure/amount and other terms and conditions of engagement) to the Agent and the Committee, in their discretion, all aspects of preparation for and consummation of any transaction(s) resulting in the sale or other disposition of substantially all of the Debtor's assets within 210 days from the Petition Date, and to take such actions as are reasonably necessary to consummate such transactions; and

j) Employ, direct and oversee the work of various professionals as reasonably necessary to satisfy the responsibilities of the CRO;

k) Pursue efforts in such a manner as to obtain maximum value for the Debtor's creditors in consultation and cooperation with the Agent, Owner and Committee; *including without limitation the power to close stores and reject leases in the CRO's sole discretion*

l) Meet and confer with the Agent, Owner and Committee as they may reasonably request, and share information, findings, and recommendations with the Agent, Owner and Committee on topics including but not limited to the Debtor's assets, operations, liabilities and business dealings.

m) With respect to the ordinary course of business operations conducted by the CRO and matters outside the ordinary course of business delineated at items (h) and (i), the CRO will not seek Court approval of any transaction(s) or plan of reorganization/liquidation without either (1) prior express consent of the Agent and Committee, (2) prior express consent of the Committee and a sale transaction or plan of reorganization/liquidation that provides for payment in full of the Pre-Petition Claims (to the extent such Pre-Petition Claims are allowed and not subject to challenge by the Committee in accordance with the Second Interim Cash Collateral Order), or (3) prior express consent of the Committee and a break in Debtor's exclusivity under section 1121(b) in favor of the Agent.

3. The Debtor's use of cash collateral shall continue on an interim basis for another ten (10) days upon the same terms and conditions as set forth in the Second Interim Cash Collateral Order. During that ten (10) day period, the Bank, the CRO, and the Committee shall discuss the terms of a proposed final cash collateral order that will be filed with the Court and scheduled for a hearing in the ordinary course.

4. The CRO may not be terminated without the express written consent of the Bank and the Committee.

SO ORDERED THIS 15 DAY OF JANUARY, 2010:

_____
Judge M. Bruce McCullough
United States Bankruptcy Judge

Agreed to by:

_____
Mark E. Freedlander, Pa. I.D. No. 70593
Michael J. Roeschenthaler, Pa. I.D. No. 87647
Nicholas E. Meriwether, Pa. I.D. No. 200433
McGUIREWOODS LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Telephone: (412) 667-600
Facsimile: (412) 667-6050

**Counsel to the Official Committee of Unsecured Creditors of Max & Erma's Restaurant, Inc.**

1\15\10

_____
Robert O. Lampl, Pa. I.D. No. 19809
360 Penn Avenue
Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 392-0330
Facsimile: (412) 392-0335

-and-

Michael Kaminski, Pa. I.D. No. _____
BLUMLING & GUSKY, LLP
1200 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 227-2500
Facsimile: (412) 227-2050

**Counsel to the Debtor, Max & Erma's Restaurant's, Inc.**

_____
Robert P. Simons (PA ID No. 48892)
Amy M. Tonti (PA ID No. 33468)
Joshua C. Lewis (PA ID No. 92945)
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

**Counsel to PNC Bank, National Association, for itself and as Agent**

1\15\10

_____
Gary L. Reinert, Sr.

**For Himself and as Owner of the Debtor and Other Related Entities**

FILED

JAN 15 2010

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA