# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| MAX & ERMA'S RESTAURANT, INC., | Case No. 09-27807-MBM |
| Debtor. | |

## AFFIDAVIT OF GEOFFREY A. RICHARDS IN SUPPORT OF DEBTOR'S APPLICATION FOR ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILLIAM BLAIR & COMPANY, L.L.C. AS INVESTMENT BANKER

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Geoffrey A. Richards declares and says:

1. I am the Head of Special Situations and Restructuring for William Blair & Company, L.L.C. ("Blair"), at 222 West Adams Street, Chicago, IL 60606. I am duly authorized to make this affidavit (the "Affidavit") on behalf of Blair. I submit this Affidavit in accordance with sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 2014 in connection with the application (the "Application") of the above-captioned debtor and debtor-in-possession (the "Debtor") for an Order pursuant to sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rule 2014 authorizing the Debtor to retain and employ Blair as its investment bankers.

2. The facts set forth in this Affidavit are personally known to me and, if called as a witness, I could and would testify thereto. Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

# EXHIBIT A

## QUALIFICATIONS OF PROFESSIONALS

3. The Debtor has selected Blair based on its experience and expertise in providing investment banking services in chapter 11 cases throughout the country, and based on Blair's familiarity with the Debtor's business.

4. Blair has substantial expertise in advising troubled companies in connection with asset sales and related issues, and Blair is particularly well suited to serve as the Debtor's investment banker in this chapter 11 case. Blair is a global investment and advisory firm with expertise in mergers and acquisitions, capital raising, restructurings and other strategic advisory services. While at Blair and previous professional services firms, Blair's professionals have developed extensive experience in matters involving complex financial restructurings and its bankers have been involved as investment banker and/or advisor to a diverse group of debtors, creditors, and bondholders in the chapter 11 cases of many companies, including, among numerous others, Robbins Bros. Corporation, SCH Corp., Hartmarx Corporation, Renew Energy LLC, KLCG Property, LLC, Waterworks Holding Corp., American IronHorse Motorcycles, Inc., Ameriserve Food Distribution, Inc., Calpine Corporation, CoServ, Diamond Brands, Inc., Diamond Glass Companies, Inc., Gateway Ethanol, Inc., Harnischfeger Industries, Inc., Stations Holding Company, Inc. and UAL Corporation.

5. I will lead all of the day-to-day aspects of this assignment. I have extensive complex transaction experience in a comprehensive range of restructuring and distressed mergers and acquisition engagements, both inside and outside chapter 11. I have advised public and private companies, private equity sponsors, hedge funds, purchasers of distressed assets and businesses, key secured and unsecured creditors, debtor-in-possession lenders, and creditors' committees. I was previously a managing director at Giuliani Capital Advisors LLC and, before that, a partner in the Kirkland & Ellis LLP restructuring practice.

Since 2001, I have taught corporate restructuring as an adjunct professor at Northwestern University School of Law.

## SERVICES TO BE PROVIDED

6.  Blair has entered into an engagement agreement with the Debtor dated February 8, 2010 (the "Engagement Agreement"). If approved by the Court, Blair will provide investment banking services as requested by the Debtor and as described in the Engagement Agreement. The Engagement Agreement calls for Blair to provide the following investment banking services:

a) familiarize itself to the extent it deems appropriate with the business, operations, financial condition and prospects of the Debtor;

b) assist the Debtor's management in (i) developing a strategy for pursuing a Possible Transaction involving the Debtor and a list of possible participants in the Possible Transaction (it being understood that such participants may include parties to whom Blair has rendered or is now rendering investment banking services), (ii) preparing a descriptive memorandum that describes the Debtor's operations and financial condition and includes current financial data and other appropriate information furnished by the Debtor (as amended and supplemented from time to time, the "Descriptive Memorandum") and (iii) contacting and eliciting interest from those possible participants expressly approved by the Debtor;

c) participate with the Debtor and its counsel in negotiations relating to the Possible Transaction;

d) participate in meetings with the Official Committee of Unsecured Creditors (the "Committee") appointed in the Debtor's bankruptcy case and PNC Bank, National Association, the agent ("Agent") for the secured lenders, and the Debtor upon reasonable request of the Committee and Agent (such participation to be in person or by telephone, as appropriate) at which the Possible Transaction is to be considered;

e) participate in hearings before the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") where the Debtor commenced its case under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in order to pursue a Possible Transaction or otherwise, and provide relevant testimony with respect to the matters described herein and arising in connection with any Possible Transaction; and

f) render additional services agreed to in writing between the Debtor and Blair provided the Debtor first consults with the Committee and the Agent concerning such additional services.

7. The Debtor has indicated that the services that Blair will provide to the Debtor are necessary to enable the Debtor to maximize the value of its estate for the benefit of creditors. The Debtor also has indicated that it will coordinate with Blair and the Debtor's other retained professionals to ensure that the foregoing services do not duplicate the services rendered by such other professionals.

## **DISINTERESTEDNESS**

8. In preparing this Affidavit, I caused to be reviewed the names of significant parties in interest provided to Blair by the Debtor (collectively, the "Interested Parties"). The Interested Parties are comprised of the following categories of entities: (a) the Debtor and its affiliates, (b) the Debtor's directors, officers and majority shareholders, (c) the Debtor's material secured creditors (other than judgment lienholders, if any) (d) the 30 largest unsecured creditors, (e) the Debtor's pre- and post-petition lenders, (f) any professionals retained by the Debtor in this chapter 11 case, and (g) other significant parties-in-interest.

9. To the extent that Blair's research of its relationships with the Interested Parties indicated that Blair has been or currently is employed by any of these entities in matters unrelated to this chapter 11 case, the identities of these entities are set forth on Schedule 1 hereto.

10. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than in connection with this chapter 11 case, neither I, nor Blair, nor any of its principals, employees, agents or affiliates, have any connection with the Debtor, its creditors, the U.S. Trustee or any other party with an actual or potential interest in this chapter 11 case or their respective attorneys or accountants, except as set forth below or on Schedule 1 hereto:

a) Blair has not been employed by any entity other than the Debtor in matters related to this chapter 11 case.

b) Blair provides services in connection with numerous cases, proceedings and transactions unrelated to this chapter 11 case. These unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in this case or may represent such parties.

c) Blair's personnel may have business associations with certain creditors of the Debtor unrelated to this chapter 11 case. In addition, in the ordinary course of its business, Blair may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in this case.

11. Despite the efforts described above to identify and disclose Blair's connections with parties in interest in this case, because the Debtor is a large enterprises with hundreds of creditors and other relationships, Blair is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Blair discovers additional information that requires disclosure, Blair will file a supplemental disclosure with the Court.

12. Insofar as I have been able to determine, Blair and the employees of Blair that will work on this engagement do not hold or represent any interest adverse to the Debtor or their estates. Accordingly, Blair believes that it is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code in that Blair, its professionals and employees:

a. Are not creditors, equity security holders or insiders of the Debtor;

b. Are not and were not, within two (2) years before the date of the filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor; and

c. Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

13. I am not related or connected to and, to the best of my knowledge, no other professional of Blair who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Western District of Pennsylvania, any of the District Judges for the Western District of Pennsylvania who handle bankruptcy cases, the United States Trustee for this Region or any employee in the Office of the United States Trustee for this Region.

14. As part of the negotiations with the Agent and Committee, Reinert (as defined below), the individual who controls the Debtor's shareholder, has agreed to fund, or cause a Reinert Entity (as defined below) to fund, a $200,000 retainer to Blair. I believe Reinert agreed to fund this amount to reduce the administrative expenses to be born by the estate. This retainer will be applied to Blair's fees and expenses as set forth in the Engagement Agreement. This arrangement has been previously disclosed to counsel to the Committee and counsel to the Agent. On information and belief, neither the Committee nor the Agent object to this payment which is similar to the retainer paid to Alvarez & Marsal North America, LLC from non-estate funds.

15. If Blair discovers any additional information that requires disclosure, Blair will promptly file a supplemental affidavit with this Court.

16. Based on the foregoing, I submit that Blair is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

**PROPOSED COMPENSATION**

17. Subject to the provisions of sections 327(a) and 328(a), as incorporated in section 330 of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, the Debtor requests approval of the following (the "Fee Structure"):

i) <u>Retainer</u>. A retainer in the amount of $200,000 (the "Retainer") due, fully earned and payable on the date of the Engagement Agreement. The Retainer shall be paid by Gary Reinert, Sr. ("Reinert") and/or one of the Reinert entities not subject to a bankruptcy proceeding (each a "Reinert Entity" and collectively, the "Reinert Entities"). The Company and its estate shall not be responsible for the payment of the Retainer.

ii) <u>Monthly Fees.</u> A monthly fee in the amount of $50,000 due, fully earned and payable on the date of the Engagement Agreement and $50,000 due, fully earned and payable in advance every thirty days after the date of the Engagement Agreement (each, a "Monthly Fee" and, collectively, the "Monthly Fees").

   (a) The first three Monthly Fees shall be debited against the Retainer.

   (c) The Debtor and its estate shall not be responsible for the payment of the first three Monthly Fees.

   (d) All Monthly Fees after payment of the third Monthly Fee shall be credited once against the Financing Fee, the Minimum Financing Transaction Fee, the M&A Fee or the Minimum M&A Transaction Fee.

iii) <u>Financing Transaction</u>. Upon the consummation of a Financing Transaction, the Debtor shall pay William Blair a cash fee (the "Financing Fee") equal to the greater of (a) $375,000 (the "Minimum Financing Transaction Fee") and (b) (x) 1.5% of the aggregate principal amount of all secured notes and bank debt raised or committed, (y) 3.0% of the aggregate amount of all unsecured and subordinated debt securities raised or committed, whether structurally or contractually subordinated and whether with the same or different lender(s) or (z) 6.0% of the aggregate amount of all equity and equity equivalents (including convertible securities and preferred stock) placed or committed. For greater certainty, the exercise of any warrants provided to any financier, lender, investor or other purchaser of securities as part of a Financing Transaction shall, upon the exercise thereof, be considered equity for purposes of calculating the Financing Fee.

iv) <u>M&A Transaction</u>. Upon the consummation of any M&A Transaction, the Debtor will pay or cause to be paid to Blair a cash fee equal to 2.0% of the Aggregate Consideration (defined below) up to $20 million and 3.0% of the Aggregate Consideration above $20 million received by the Debtor and, its creditors and/or its stockholders as a result of the consummation of such M&A Transaction (the "M&A Fee"). For an M&A Transaction involving all or substantially all of the Debtor's assets, a minimum fee of $550,000 (the "Minimum M&A Transaction Fee") shall be due and payable to Blair.

18. Blair does not charge for fees on an hourly basis. The fees and expense reimbursement provisions described above are consistent with normal and customary billing practices for cases of this size and complexity which require the level and scope of services outlined.

19. I respectfully submit that this fee arrangement, which is similar to fee arrangements which have been authorized in other chapter 11 cases in which Blair and other leading investment bankers have rendered services, is reasonable in light of industry practice, market rates both in and out of chapter 11 proceedings, Blair's experience, and the scope of work to be performed pursuant to Blair's retention.

20. Blair will seek compensation and reimbursement of expenses, as specified in the Engagement Agreement as modified by the Application, with the payment of such fees and expenses to be approved in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court and pursuant to any additional procedures that may be established by the Court in this case.

21. Blair does not have any agreement with any other entity to share compensation received by Blair in connection with this engagement, except as permitted by section 504 of the Bankruptcy Code.

## **INDEMNIFICATION**

22. As more fully described in Attachment A of the Engagement Agreement (the "Indemnification Provision"), the Debtor has also agreed to indemnify, defend and hold harmless Blair and its affiliates, the respective partners, directors, officers, agents and employees of Blair and its affiliates and each other person, if any, controlling Blair or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs,

as and when incurred, to which such Indemnified Party may become subject or which are asserted against any Indemnified Party, directly or indirectly, in any way related to Blair's acting for the Debtor in connection with (i) any act or omission by Blair related to its engagement as financial advisor under the Engagement Agreement or (ii) Blair's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement, except to the extent that any losses, claims, damages, liabilities or costs resulting from Blair's acts, omissions, acceptance, performance or non-performance specified above, is found to be the product of Blair's gross negligence or willful misconduct.

23. The Indemnification Provision is typical of the indemnification provisions contained in the engagement agreements of other investment bankers retained in this District.

I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth in this Affidavit, the foregoing is true and correct.

Dated this 9 day of February, 2010.

_____
Geoffrey A. Richards
Head of Special Situations and Restructuring
William Blair & Company, L.L.C.


Subscribed and sworn to before me this 9th day of February, 2010.

_____
Notary Public, State of Illinois

My Commission Expires: 4/8/2011

"OFFICIAL SEAL"
MARY JO RICHARDSON
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 04/08/2011

Schedule 1 to

Geoffrey Richards' Affidavit

| Party in Interest | Description of Connection |
|---|---|
| Park National Bank | William Blair sells municipal bonds to Park National Bank. |
| PNC Bank, National Association | William Blair sells municipal bonds to PNC Bank, National Association. |
| The Huntington Trust Company, National Association | William Blair sells municipal bonds to The Huntington Trust Company, National Association. |
| PNC Investments LLC and PNC Capital Markets LLC | William Blair's taxable bond department has conducted transactions with PNC Investments LLC and PNC Capital Markets LLC (both broker/dealers and related entities of The PNC Financial Services Group, Inc.). |

The connections listed on this page represent, in the aggregate, considerably less than 1% annual revenue for William Blair & Company L.L.C.