## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | Related Docket Nos.: 759, 760 |
| | Hearing Date/Time: August 18, 2010 at 2:00 p.m. |

**PLAN SUPPLEMENT TO THE JOINT CHAPTER 11 PLAN PROPOSED BY THE
DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
DATED JULY 9, 2010**

**Submitted by:**

**LAW OFFICES OF ROBERT O. LAMPL**
Robert O. Lampl, Esq.
John P. Lacher, Esq.
Elsie R. Lampl, Esq.
960 Penn Avenue, Suite 1200                    -and-
Pittsburgh, PA 15222
(412) 392-0330

*Counsel to the Debtor*

**MCGUIREWOODS, LLP**
Mark E. Freedlander, Esq.
Michael J. Roeschenthaler, Esq.
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
(412) 667-6000

*Counsel to the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | Related Docket Nos.:  759, 760 |
| | Hearing Date/Time:  August 18, 2010 at 2:00 p.m. |

**EXHIBIT "A"**

**TO**

**PLAN SUPPLEMENT TO THE JOINT CHAPTER 11 PLAN PROPOSED BY THE
DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
DATED JULY 9, 2010**

**M&E TRUST AGREEMENT**

**(CLEAN AND BLACKLINE TO JULY 9, 2010 VERSION)**

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT
OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | |

**M&E TRUST AGREEMENT**

by and among

MAX & ERMA'S RESTAURANT, INC.
as Debtor and Debtor-in-possession,

and

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
as representatives of Beneficiaries

and

JLL Consultants, Inc.
as M&E Trustee

Dated:  August [__], 2010

# TABLE OF CONTENTS

**Page**

SECTION I         THE M&E TRUST ........................................................................ 2

     A.   Creation. ......................................................................................... 2

     B.   Objective and Purpose. ................................................................. 3

     C.   Acceptance. ..................................................................................... 3

     D.   Intention of Parties to Establish Grantor Trust. ....................... 3

     E.   Governance of the M&E Trust. .................................................... 3

     F.   Transfer of Assets to M&E Trust ................................................. 3

     G.   The M&E Trust Cash Consideration ........................................... 4

     H.   Termination of M&E Trust ........................................................... 5

SECTION II        M&E TRUSTEE .................................................................... 5

     A.   Appointment. .................................................................................. 5

     B.   Generally. ........................................................................................ 5

     C.   Powers and Authority. ................................................................... 6

     D.   Additional Powers. ......................................................................... 9

     E.   Limitation of M&E Trustee's Authority ..................................... 9

     F.   Liability of M&E Trustee ............................................................ 10

     G.   Reliance by M&E Trustee ........................................................... 10

     H.   Authorization to Expend M&E Trust Assets. .......................... 11

     I.   Compensation of the M&E Trustee. .......................................... 11

     J.   Exculpation; Indemnification. ..................................................... 11

     K.   Confidentiality. ............................................................................. 12

     L.   Final Decree. ................................................................................. 12

     M.   Termination. .................................................................................. 12

SECTION III       BENEFICIARIES ................................................................. 13

     A.   Identification of Beneficiaries. .................................................. 13

     B.   Withholding. ................................................................................. 13

     C.   Tax Identification Numbers. ....................................................... 13

SECTION IV       DISTRIBUTIONS ................................................................. 13

     A   Disputed Claim Reserve. ............................................................ 13

     B.   Resolution of Disputed Claims. ................................................. 14

C.   Application of M&E Trust Assets. ........................................................................ 14

D.   Distribution. ....................................................................................................... 15

E.   Undeliverable, Unclaimed and Returned Distributions. ........................................ 15

F.   Rounding ............................................................................................................ 16

G.   Setoffs ................................................................................................................ 16

H.   De minimis Distributions .................................................................................... 16

I.    Taxes .................................................................................................................. 16

J.    Compliance with Laws ........................................................................................ 16

K.   Final Disbursements of M&E Trust and Unclaimed Property After the Final
     Disbursement Date .............................................................................................. 17

L.   Estate Representatives ......................................................................................... 17

SECTION V          SUCCESSOR TRUSTEES ........................................................... 17

A.   Removal .............................................................................................................. 17

B.   Resignation ......................................................................................................... 17

C.   Appointment of Successor Trustee ...................................................................... 17

D.   Trust Continuance. .............................................................................................. 17

E.   Turnover of Documents. ...................................................................................... 18

SECTION VI         REPORTING .............................................................................. 18

A.   Tax and Other Reports ........................................................................................ 18

B.   Federal Income Tax. ............................................................................................ 18

C.   Other .................................................................................................................. 19

SECTION VII        TRANSFER OF BENEFICIARY'S INTERESTS ........................ 19

A.   Transfer of Beneficial Interests ........................................................................... 19

SECTION VIII       MISCELLANEOUS PROVISIONS ............................................. 19

A.   Amendment; Waiver ........................................................................................... 19

B.   Intention of Parties to Establish Grantor Trust .................................................... 19

C.   Preservation of Privilege ..................................................................................... 19

D.   Cooperation ........................................................................................................ 19

E.   Laws as to Construction ...................................................................................... 20

F.   Relationship to Plan. ........................................................................................... 20

**TABLE OF CONTENTS**
(continued)

G.  Severability ................................................................................................. 20

H.  Disposition of the Committee. ...................................................................... 20

I.  Professionals of the M&E Trustee................................................................ 20

J.  Retention of Jurisdiction; Venue. ................................................................ 20

K.  Notices ......................................................................................................... 20

L.  Notices if to a Beneficiary .......................................................................... 21

M.  Headings ...................................................................................................... 22

N.  Counterparts................................................................................................. 22

THIS AGREEMENT (the "Agreement") is made this _____ day of August, 2010, by and among Max & Erma's Restaurant, Inc., debtor and debtor-in-possession (the "Debtor"), the Official Committee of Unsecured Creditors of the Debtor (the "Committee") and JLL Consultants, Inc. (together with any successors, the "M&E Trustee") under the Plan (as defined below).

## RECITALS:

A.      On October 23, 2009, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Pennsylvania, Pittsburgh Division (the "Bankruptcy Court"), which case is pending before the Honorable M. Bruce McCullough at Case No. 09-27807 (the "Case").

B.      By order, dated August _____, 2010, the Bankruptcy Court confirmed the First Amended Joint Chapter 11 Plan Proposed by the Debtor and the Official Committee of Unsecured Creditors dated August 18, 2010 (as the same may have been or may be amended or modified, the "Plan").[1]

C.      Article VI of the Plan calls for, *inter alia*, the creation of the M&E Trust to hold and reduce to Cash all M&E Trust Assets, including but not limited to: (i) balance of the Cash Consideration (estimated to be approximately $5.1 million), (ii) the Excluded Assets[2], and (iii) the M&E Trust Cash Consideration. The M&E Trust is created on behalf of, and for the benefit of, the Beneficiaries. The Beneficiaries of the M&E Trust are the holders of Retained Administrative Expense Claims, Class 1 Claims and Allowed Class 5 Claims under the Plan.

---

[1] Capitalized terms used herein without definition shall have the respective meanings assigned to such terms in the Plan or Agreement, which term is defined in the Plan. To the extent terms have conflicting definitions, the definition set forth in the Plan shall control.

[2] Excluded Assets is defined in the Plan as those assets of the Estate not subject to acquisition by the Purchaser under the Agreement, including (a) Machinery and Equipment situated at restaurants that are not Purchased Stores; (b) food and alcohol inventory situated at restaurants that are not Purchased Stores; (c) furniture, fixtures, utensils, plates, cups and other instruments owned by Seller and not situated at or relating to Purchased Stores; (d) the Tax Refund and tax attributes of the Seller relating to any and all periods prior to the Closing Date; (e) all Avoidance Actions; (f) all Claims or Causes of Action against Insiders, including, without limitation, Claims against insurance policies that cover the Seller (and its officers and directors) or may be available to provide coverage for, among other things, Claims against the Seller, its officers and its directors; (g) all Claims or Causes of Action relating to Excluded Assets; (h) the subrogation rights of the Seller; (i) all corporate seals, minute books, charter documents, stock transfer records, record books, original Tax and financial records and such other files, books and records relating to any of the Excluded Assets or to the organization, existence or capitalization of Seller or of any other Person; (j) deferred taxes; (k) all Liquor Licenses or permits relating to stores that are not Purchased Stores; (l) all contracts that are not Acquired Contracts, including without limitation any of Debtor's Executory Contracts or Unexpired Leases not specifically listed on Schedule 2.3 or in Exhibit D to the Plan Supplement; (m) any Executory Contract or Unexpired Lease that was specifically listed on Schedule 2.3 or in Exhibit D to the Plan Supplement that Purchaser, by written notice to the Debtor, elects not to acquire as provided in Section 2.1(g) of the Agreement; (n) insurance receivable for closed stores; and (o) account receivable from G&R Management Company.

D.     The M&E Trust is created pursuant to, and to effectuate, the Plan for the primary purpose of liquidating and administering the M&E Trust Assets for the benefit of the Beneficiaries as a liquidating trust, in accordance with Treasury Regulation § 301.7701-4(d), and Revenue Procedure 94-45 I.R.B. 1994-28, 124, (July 11, 1994) ("<u>Revenue Procedure 94-45</u>") (or any subsequent Revenue Procedures that may be issued), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the M&E Trust.

E.     The M&E Trust provides that the Beneficiaries of the M&E Trust will be treated as the grantors of the M&E Trust and deemed owners of the M&E Trust Assets.  The M&E Trust requires the M&E Trustee to file returns for the M&E Trust as a grantor trust pursuant to Treasury Regulation § 1.671-1 through 4(a).

F.     The M&E Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as the grantors and owners of the trust.

G.     All of the M&E Trust's income and/or recoveries are to be treated as subject to tax on a current basis to the Beneficiaries who will be responsible for payment of any tax due.

H.     Subject to Section I.H hereof, the M&E Trust contains a fixed determinable termination date that is not more than five years from the date of creation of the M&E Trust and that is reasonable based on all the facts and circumstances.

I.     The investment powers of the M&E Trustee other than those reasonably necessary to maintain the value of the M&E Trust Assets and to further the liquidating purpose of the M&E Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates (or overnight swaps) of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

J.     The M&E Trust is required to distribute to the Beneficiaries its net income plus all net proceeds from the sale or other liquidation of assets, except that the M&E Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the M&E Trust Assets, to fund the Liquidation Expense Reserve Account and the Disputed Claim Reserve.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Debtor, the Committee, and the M&E Trustee agree as follows:

<div align="center">

**SECTION I**

**THE M&E TRUST**

</div>

A.     **Creation**.  In accordance with Article VI of the Plan, on the Effective Date of the Plan, the M&E Trust is hereby created and vested with all of the M&E Trust Assets.

**B.    Objective and Purpose.**  The M&E Trust will be established and maintained, in accordance with Treasury Regulation section 301.7701-4(d), for the purpose of collecting, holding, liquidating, monetizing and distributing the M&E Trust Assets, resolving and administering Claims, and prosecuting Causes of Action that are transferred to the M&E Trust pursuant to the Plan.  The M&E Trust will not continue or engage in the conduct of a trade or business.

**C.    Acceptance.**  The M&E Trustee accepts the terms, provisions and conditions of this Agreement and the Plan and agrees to observe, perform and abide hereby and thereby.

**D.    Intention of Parties to Establish Grantor Trust.**  This Agreement is intended to create a grantor trust for the United States federal income tax purposes, and to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.  The M&E Trust is not intended to constitute nor shall the formation of the M&E Trust be interpreted as creating an association, partnership or joint venture of any kind.

**E.    Governance of the M&E Trust.**  The M&E Trust will be controlled by the M&E Trustee in accordance with this Agreement, which will not be inconsistent with the Plan.  The M&E Trustee will be subject to oversight by a three member oversight committee (the "Oversight Committee").  The Oversight Committee will be comprised of (i) one representative selected by the Committee, (ii) one representative selected by the Agent, and (iii) a third representative selected by and agreed upon by the Committee and Agent representatives.  The Oversight Committee shall be compensated by the M&E Trust in amounts set forth in the Confirmation Order.

**F.    Transfer of Assets to M&E Trust.**

1.    On the Effective Date, all right, title and interest to the following assets of the Debtor and its Estate will be assigned, set over, transferred, and conveyed to the M&E Trust, free and clear of Liens, Claims or encumbrances and without action required of the M&E Trustee to effectuate the transfer of M&E Trust Assets: (a) balance of the cash consideration relating to the Sale, or approximately $5.1 million, subject to potential adjustment; (b) the Excluded Assets; and (c) the M&E Trust Cash Consideration .  The M&E Trust Assets shall not include any contractual rights of subordination, guarantees or judgments which are retained by the Pre-Petition Lenders (as defined in the Plan).

2.    To the extent that certain M&E Trust Assets, because of their nature or because they will accrue subsequent to the Effective Date, cannot be assigned, set over, transferred or conveyed to the M&E Trust on the Effective Date, these assets will be deemed assigned, set over, transferred and conveyed to the M&E Trust as soon as practical after the Effective Date.

3.    On or after the Effective Date, with respect to all Claims constituting Excluded Assets, the M&E Trustee will continue as a plaintiff in Causes of Action (on behalf of the Beneficiaries) of the M&E Trust in which the Debtor was a plaintiff prior to the Effective

Date and will be deemed the assignee of all Claims or Causes of Action that could have otherwise been asserted by the Debtor or a trustee of the Debtor if one were appointed. All recoveries and proceeds arising from litigation and Causes of Action that are Excluded Assets will be deemed assigned, set over, transferred and conveyed to the M&E Trust upon receipt thereof.

4.     All fees and costs of the M&E Trustee (and agents and professionals thereof) arising from or relating to pursuing litigation or Causes of Action or other services performed at the request of the M&E Trustee on behalf of the M&E Trust shall be paid as a first priority in right of distribution from the M&E Trust, subject, however, to the Claims of Professionals and Lender Professionals addressed in Section 2.3 of the Plan.

5.     The transfer of the M&E Trust Assets to the M&E Trust shall be made for the benefit of the Beneficiaries, in each case, but only to the extent the Beneficiaries are entitled to distributions under the Plan.

6.     For all purposes of the Internal Revenue Code of 1986 (the "IRS Code"), as amended, all Persons (including, without limitation, the Debtor, the M&E Trustee and the Beneficiaries) shall treat the transfer of the M&E Trust Assets to the M&E Trust through the Debtor and/or agents of the Debtor as set forth in this Section I.F, as the deemed transfer of such assets to the Beneficiaries followed by the deemed transfer of such assets by the Beneficiaries to the M&E Trust. Thus, the Beneficiaries shall be treated as the grantors and owners of the M&E Trust for federal income tax purposes.

G.     **The M&E Trust Cash Consideration**.  The M&E Trust Cash Consideration will be paid by the Purchaser to the M&E Trust at Closing in the amount of $2.0 million.  The M&E Trust Cash Consideration will become an M&E Trust Asset on the Effective Date.

H.     **Termination of M&E Trust**.

1.     The M&E Trust will be terminated and the M&E Trustee discharged at such time as (i) all Disputed Claims, whether classified or unclassified, have been resolved, (ii) all M&E Trust Assets have been monetized, liquidated or abandoned and (iii) all distributions required to be made by the M&E Trustee under the Plan have been made, but in no event will the M&E Trust be dissolved later than a period that would adversely affect the status of the M&E Trust as a liquidating trust for federal income tax purposes or five (5) years, whichever is sooner. The M&E Trust will only exist for a period as long as is necessary to facilitate or complete the recovery and liquidation of the M&E Trust Assets and distribution of their proceeds.

2.     Prior to and upon termination of the M&E Trust, the M&E Trust Assets will be distributed to the Beneficiaries in accordance with the Plan and subject to this Agreement.  If at any point prior to such termination date the M&E Trustee determines that further disbursements of the M&E Trust Assets are unwarranted, the M&E Trustee shall provide notice of the M&E Trustee's intention to make a final disbursement to the Beneficiaries.  Absent the filing of a timely objection thereto, the M&E Trustee shall thereafter be authorized to and

shall make the final disbursement of the M&E Trust Assets to the Beneficiaries in accordance with their distribution rights under the Plan and this Agreement. Ninety (90) days after the final disbursement, the M&E Trustee shall stop payment on any check(s) remaining unpaid and such unclaimed funds shall thereafter be used to satisfy any outstanding expenses of administering the M&E Trust and the remaining balance, if any, shall thereafter be paid to a charity to be selected by the M&E Trustee in accordance with Article VI of the Plan.

        3. The M&E Trustee shall not unduly prolong the duration of the M&E Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute M&E Trust Assets and to effect the distribution of the M&E Trust Assets to the Beneficiaries in accordance with the terms hereof and terminate the M&E Trust as soon as practicable.

## SECTION II

## M&E TRUSTEE

**A. Appointment.** The Committee has determined to appoint William Kaye, managing director of JLL Consultants, Inc., to serve as the initial M&E Trustee under the Plan, and the M&E Trustee hereby accepts such appointment and agrees to serve in such capacity, upon the Effective Date of the Plan. A Successor Trustee (as defined in Section V.C hereof) may be appointed in the event that the M&E Trustee is removed or resigns pursuant to this Agreement or the M&E Trustee otherwise vacates the position.

**B. Generally.** The M&E Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the M&E Trust and not otherwise, except that the M&E Trustee may administer the M&E Trust Assets as permitted by the provisions of Section II.D hereof. The M&E Trustee shall have the authority to bind the M&E Trust, but shall for all purposes hereunder be acting in the capacity as M&E Trustee and not personally or individually. The M&E Trustee shall not be obligated to give any bond, surety or other security for the performance of any duties or obligations hereunder. The M&E Trustee shall be entitled to engage in all such activities as the M&E Trustee deems necessary and appropriate, in the M&E Trustee's sole discretion, except where Committee approval may be required as set forth herein; provided, however, that such activities do not conflict with the purpose of the M&E Trust and are in the best interests of the Beneficiaries; and provided, further, that the M&E Trustee shall devote such time and effort as is necessary to timely and properly fulfill all such duties.

**C. Powers and Authority**.

        1. In connection with the administration of the M&E Trust, except as otherwise set forth in this Agreement or the Plan, the M&E Trustee is authorized to perform any and all acts necessary and reasonable to accomplish the purposes of the M&E Trust. Without limiting, but subject to the foregoing, and subject in all respects to the other terms and conditions of this Agreement and the Plan, the M&E Trustee shall be expressly authorized, but shall not be required, to:

(a)     pursue and prosecute Causes of Action or to refrain from pursuing any Cause of Action, based upon the M&E Trustee's assessment of the net benefit expected to be received by the M&E Trust in connection therewith (taking into account the costs and expenses projected to be incurred in connection therewith, the likelihood of success on the merits, and the range of potential recoveries to be received by the M&E Trust);

(b)     compromise, settle, resolve and collect on any Claims or Causes of Action unrelated to Acquired Assets (as defined in the Asset Purchase Agreement) to the fullest extent permitted by law without further order of the Bankruptcy Court, provided, however, that for Claims or Causes of Action asserted in amounts in excess of $250,000, prior approval by the Oversight Committee and the Bankruptcy Court is required.  All compromises and settlements shall be deemed final and binding upon all parties in interest in the Case.  The M&E Trustee shall have the right, power and authority to retain and assert all defenses, rights to setoff, recoupment, avoidance rights and counterclaims with respect to any Claim or Cause of Action;

(c)     review, analyze and, as appropriate, prosecute objections to Claims and any claims arising after the Petition Date (the "Post-Petition Date Claims"), including any Administrative Expense Claims, subject to the provisions of the Plan dealing with Post-Petition Date Claims;

(d)     compromise, settle and resolve any Disputed Claims upon such terms and conditions as the M&E Trustee deems appropriate and in the best interests of the M&E Trust without further approval of the Bankruptcy Court.  All compromises and settlements shall be deemed final and binding upon all parties in interest in the Case;

(e)     review, litigate and settle (without further approval of the Bankruptcy Court for matters equal to or less than $250,000) or otherwise resolve Claims and Post-Petition Date Claims (including any Administrative Expense Claims), Causes of Action or other disputes involving or arising out of alleged environmental contamination and/or remediation;

(f)     maintain all accounts, make distributions to Beneficiaries of the M&E Trust from the M&E Trust Assets and take other actions consistent with the Plan in the name of the M&E Trust, provided, however, that the M&E Trustee shall not be entitled to use the Debtor's bank accounts that are in existence as of the Effective Date and shall be required to open new bank or other depository accounts in the name of the M&E Trust as may be necessary or appropriate in the discretion of the M&E Trustee to enable the M&E Trustee to administer the M&E Trust in accordance with the terms of this Agreement;

(g)      the power to invest funds in and withdraw, make distributions and pay expenses, taxes, and other obligations owed by the M&E Trust from funds held by the M&E Trustee in accordance with the Plan and this Agreement;

(h)      maintain, in respect of the M&E Trust and the Beneficiaries, books and records relating to the assets and income of the M&E Trust and the payment of expenses of, and liabilities of, claims against or assumed by, the M&E Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof in accordance with this and to comply with applicable provisions of law. Except as provided herein, nothing in this Agreement requires the M&E Trust or the M&E Trustee to file any accounting or seek approval of any court with respect to the administration of the M&E Trust, or as a condition for making any payment or distribution out of the M&E Trust Assets. Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the M&E Trustee to inspect such books and records, provided that, if so requested, such Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the M&E Trustee;

(i)      retain or engage, without the necessity of obtaining any approval from the Bankruptcy Court, such employees, independent contractors, professional persons, and agents as are appropriate, necessary or desirable to complete (i) disbursements to Beneficiaries of the M&E Trust and (ii) the general administration of the M&E Trust as required by this Agreement and applicable law;

(j)      incur any reasonable and necessary expenses on behalf of the M&E Trust in carrying out the M&E Trustee's obligations and responsibilities on behalf of the M&E Trust and make ordinary and reasonable disbursements from M&E Trust Assets to pay the ordinary and necessary expenses of administering the M&E Trust, without the necessity of providing any notice or seeking or obtaining any approval of the Bankruptcy Court with respect to such disbursements;

(k)      make interim and final disbursements of the M&E Trust Assets to the Beneficiaries of the M&E Trust in accordance with the terms of this Agreement, the Plan and applicable law;

(l)      execute, deliver, file and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions, as may be necessary, desirable or appropriate to administer the M&E Trust;

(m)      prepare and file tax and informational returns on behalf of the M&E Trust as required by applicable federal, state and local law, and in accordance with the terms of this Agreement;

(n)     file with the Bankruptcy Court and/or the Office of the United States Trustee the reports and other documents required by the Plan or otherwise required to close the Case;

(o)     notwithstanding any other provisions of the Plan or this Agreement, to pay any and all fees of the Office of the United States Trustee as and when such fees become due, which payments shall be paid by the M&E Trustee from the M&E Trust Assets;

(p)     take all other actions not inconsistent with the provisions of the Plan or the Agreement that the M&E Trustee deems reasonably necessary or desirable in connection with the administration of the M&E Trust; and

(q)     expend on behalf of the Debtor such funds as are necessary for the M&E Trust, as successor to the Debtor, to fulfill the Debtor's obligations and liabilities under the Asset Purchase Agreement between the Debtor and Purchaser pursuant to which it is contemplated that Purchaser will acquire substantially all of the Debtor's assets other than Excluded Assets (the "Asset Purchase Agreement"), the Plan and the Transition Agreement (as defined in the Plan) after the Effective Date, including, without limitation, Debtor's obligation to pay a portion of certain Cure Costs pursuant to the Asset Purchase Agreement and Debtor's obligations related to the maintenance and transfer of its Liquor Licenses (as defined in the Plan) to Purchaser.

**D.     Additional Powers.**  Except as otherwise set forth in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the M&E Trustee may control and exercise authority over the M&E Trust Assets, and over the protection, conservation and disposition thereof.  No person dealing with the M&E Trust shall be obligated to inquire into the authority of the M&E Trustee in connection with the protection, conservation or disposition of the M&E Trust Assets. It is intended that a signed copy of this Agreement serve as adequate proof of the M&E Trustee's authority to act if such proof is required for any reason by any third party.

**E.     Limitation of M&E Trustee's Authority**.

1.     <u>No Trade or Business</u>.  The M&E Trustee shall not, and shall not be authorized to, engage in any trade or business with respect to the M&E Trust Assets or any proceeds therefrom except to the extent reasonably necessary or appropriate to, and consistent with, the liquidating purpose of the M&E Trust and the M&E Trustee shall take such actions consistent with the prompt orderly liquidation of the M&E Trust Assets as are required by applicable law and consistent with the treatment of the M&E Trust as a Liquidating Trust under Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45 (or any subsequent Revenue Procedures that may be issued), and such actions permitted herein.

2.      Released Claims.  The M&E Trustee shall not have any authority to pursue any Claims and/or Causes of Action waived, exculpated or released in accordance with the provisions of the Plan or Final Order of the Bankruptcy Court.

3.      Investment and Safekeeping of the M&E Trust Assets.  All M&E Trust Assets received by the M&E Trust shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated unless and to the extent required by applicable law or by the Plan.  The M&E Trustee shall be under no liability for interest or producing income on any M&E Trust Assets received by the M&E Trust hereunder and held for distribution or payment to the Beneficiaries.  Investments of any M&E Trust Assets held by the M&E Trust shall be administered in a manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the M&E Trustee to invest the M&E Trust Assets, the proceeds thereof, or any income earned by the M&E Trust, shall be limited to the right and power to invest such assets (pending periodic distributions in accordance with this Section II.E.3 hereof) in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as Treasury bills; and, provided, further, that the scope of any such permissible investments shall be limited to include only those investments that the M&E Trust, within the meaning of Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45 (or any subsequent Revenue Procedures that may be issued), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

4.      Limiting Transfers.  The M&E Trustee shall not take, or cause the M&E Trust to take, any action that would cause the interests in the M&E Trust to be considered readily tradable on a secondary market (or a substantial equivalent thereof) within the meaning of Section 7704(b)(2) of the IRS Code, and Treasury Regulations § 1.7704-1(c), and the M&E Trustee shall not permit any transfer of an interest in the M&E Trust if it would cause the M&E Trust (were it be classified as a partnership rather than a grantor trust) to be treated as a "publicly traded partnership" as defined in IRS Code § 7704.

5.      The M&E Trustee shall submit a three month budget for approval to the Oversight Committee on an ongoing basis, and approval of the three month budgets shall not unreasonably be withheld.  The M&E Trustee will not incur or expend amounts inconsistent with the budgets without Oversight Committee approval.

F.      Liability of M&E Trustee.  In no event shall the M&E Trustee, the M&E Trustee's officers, employees, independent contractors or any of the M&E Trustee's professionals, agents or representatives (or their designees) be held personally liable for any claim asserted against the M&E Trust, the M&E Trustee, the M&E Trustee's officers, employees, independent contractors and/or any of the M&E Trustee's professionals, agents or representatives (or their designees), except to the extent occasioned by or based upon their own fraud, willful misconduct or gross negligence.  Specifically, the M&E Trustee, the M&E Trustee's officers, employees, independent contractors or any of the M&E Trustee's professionals, agents or representatives (or their designees) shall not be liable for any negligence

or any error of judgment in either case made in good faith, in the exercise of its or their business judgment or with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken by the M&E Trustee, the M&E Trustee's officers, employees, independent contractors or any of the M&E Trustee's professionals, agents or representatives (or their designees) is determined by a Final Order of a court of competent jurisdiction to be due to their own respective fraud, gross negligence or willful misconduct.

G. **Reliance by M&E Trustee**. Except as otherwise provided in Section II.F hereof:

1. The M&E Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the M&E Trustee to be genuine and to have been signed or presented by the proper party or parties;

2. The M&E Trustee may consult with legal counsel, financial or accounting advisors and other professionals, and the M&E Trustee shall not be liable for any action taken or omitted to be taken by him in accordance with the advice thereof; and

3. All persons or entities hired by, retained by, doing business with or otherwise dealing with the M&E Trustee shall look only to the M&E Trust Assets to satisfy any liability incurred by the M&E Trustee on behalf of the M&E Trust to such persons or entities in carrying out the terms of this Agreement, and the M&E Trustee shall have no personal obligation to satisfy any such liability, except to the extent such liability or obligation arises as a result of the fraud, gross negligence or willful misconduct of the M&E Trustee as determined in accordance with Section II.F of this Agreement, in which case the M&E Trust Assets shall not be subject to such claims or liabilities.

H. **Authorization to Expend M&E Trust Assets.** The M&E Trustee may expend the M&E Trust Assets (i) to pay expenses of administration of the M&E Trust (including, but not limited to, the fees and expenses of the M&E Trustee, its officers, employees, and independent contractors and any of its professionals, agents or representatives, any taxes imposed on the M&E Trust or in respect of the M&E Trust Assets, and any fees and expenses incurred in connection with any Causes of Action), and (ii) to satisfy other liabilities incurred or assumed by the M&E Trust (or to which the assets are otherwise subject) in accordance with this Agreement or the Plan, including, without limitation, obligations and liabilities of the Debtor under the Asset Purchase Agreement and the Plan after the Effective Date.

I. **Compensation of the M&E Trustee**.

1. The costs and expenses of the M&E Trust, including the fees and expenses of the M&E Trustee and its retained professionals, will be paid from the proceeds of M&E Trust Assets. These costs and expenses will have a first priority in right of distribution and subordinate, however, to Compensation and Reimbursement Claims addressed in Section 2.3 of the Plan and are not subject to approval by the Bankruptcy Court. The M&E Trustee may retain or reserve amounts estimated by the M&E Trustee, based on his reasoned business judgment, to

fund the fees and expenses of the M&E Trustee and the professionals of the M&E Trustee in a Liquidation Expense Reserve Account. The M&E Trust may increase or decrease amounts held in a Liquidation Trust Reserve Account at the reasonable discretion of the M&E Trustee.

2.      The M&E Trustee is entitled to reasonable compensation, at a flat monthly fee.  The M&E Trustee intends to be paid certain contingency amounts with respect to certain Claims and Causes of Action which, along with the flat monthly fee, shall be set forth in the Plan Supplement at Exhibit "F" and approved in the Confirmation Order.

3.      All compensation and other amounts payable to the M&E Trustee shall be paid from the M&E Trust Assets.  If the cash in the M&E Trust shall be insufficient to compensate and reimburse the M&E Trustee, as the case may be, for any amounts to which he is entitled hereunder, then the M&E Trustee is hereby authorized to reduce to cash in a commercially reasonable manner that portion of the M&E Trust Assets necessary so as to effect such compensation and reimbursement.

J.      **Exculpation; Indemnification.**  From and after the Effective Date, the M&E Trustee, the Oversight Committee, the M&E Trustee's and the Oversight Committee's respective officers, employees, independent contractors, or any of the M&E Trustee's or Oversight Committee's professionals, agents or representatives (or their designees) shall be and hereby are exculpated by all persons, and entities including, without limitation, holders of Claims against the Debtor and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon the M&E Trustee by this Agreement, the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan or this Agreement, or applicable law or otherwise, except only for actions or omissions to act only to the extent determined by a Final Order of a court of competent jurisdiction to be due to the fraud, gross negligence or willful misconduct of the M&E Trustee, the Oversight Committee, the M&E Trustee's and the Oversight Committee's respective officers, employees, independent contractors, or any of the M&E Trustee's or the Oversight Committee's respective professionals, agents or representatives (or their designees) after the Effective Date. No holder of a Claim against the Debtor or any other party in interest will have or be permitted to pursue any claim or cause of action against the M&E Trustee, the Oversight Committee, the M&E Trust or the M&E Trustee's or the Oversight Committee's respective officers, employees, independent contractors, professionals, agents or representatives (or their designees) for making payments in accordance with the Plan or this Agreement or for implementing the provisions of the Plan or this Agreement except in cases of fraud, gross negligence or willful misconduct.  The M&E Trust shall indemnify, defend and hold harmless the M&E Trustee, the Oversight Committee, the M&E Trustee's officers, employees, independent contractors and any of the M&E Trustee's and the Oversight Committee's respective professionals, agents or representatives (or their designees) from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees) (except to the extent determined by a Final Order of a court of competent jurisdiction to arise out of the fraud, gross negligence or willful misconduct of the M&E Trustee, the Oversight Committee, or any of the M&E Trustee's or the Oversight Committee's respective officers, employees, independent

contractors, or any of the M&E Trustee's or the Oversight Committee's respective professionals, agents or representatives (or their designees) but this parenthetical shall only apply to those individuals or entities to which such finding or findings of fraud, gross negligence or willful misconduct shall have been made) to the fullest extent permitted by applicable law. Any action taken or omitted to be taken with the approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, gross negligence or willful misconduct.

**K.** **Confidentiality.** The M&E Trustee shall, and shall cause the M&E Trustee's and the Oversight Committee's officers, employees, independent contractors or any of the M&E Trustee's and the Oversight Committee's professionals, agents or representatives (or their designees) to, during the period that the M&E Trustee serves as M&E Trustee under this Agreement hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to the Debtor or any Beneficiary or any entity to which any of the M&E Trust Assets relate or of which the M&E Trustee has become aware in its capacity as such, other than in connection with the M&E Trustee carrying out the objectives and purposes of the M&E Trust.

**L.** **Final Decree.** It shall be the duty of the M&E Trustee to seek and obtain a final decree from the Bankruptcy Court in the Case upon full administration of the M&E Trust.

**M.** **Termination.** The duties, responsibilities and powers of the M&E Trustee will terminate on the date the M&E Trust is dissolved under applicable law in accordance with the Plan and this Agreement, or by an Order of the Bankruptcy Court or by entry of a final decree closing the Case, whichever date is later.

## SECTION III

## BENEFICIARIES

**A.** **Identification of Beneficiaries.** To determine the actual names, addresses and tax identification numbers of the Beneficiaries, the M&E Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers in the records maintained by the clerk of the Bankruptcy Court. If a Beneficiary has not filed a proof of claim or request for Administrative Expense Claim, or provided written notice indicating such information, the M&E Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers reflected in the applicable Schedules or, if more recent, contained in the Debtor's records. Each Beneficiary's right to distribution from the M&E Trust shall be that accorded to such Beneficiary under the Plan. Each distribution by the M&E Trustee to the Beneficiaries shall be made in accordance with the Plan and terms set forth herein.

**B.** **Withholding.** The M&E Trustee shall withhold from the amounts distributable to the Beneficiaries from the M&E Trust Assets at any time such sum or sums as may be required to be withheld under the applicable income tax laws of the United States or of any state or political subdivision thereof. Notwithstanding any other provision of this Agreement or the Plan, each Beneficiary receiving a distribution or payment from the M&E Trust shall have sole and

exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distribution or payment.

     **C.    Tax Identification Numbers.**  The M&E Trustee shall require any Beneficiary to furnish to the M&E Trustee its tax identification number as assigned by the IRS and the M&E Trustee may condition any distribution to any Beneficiary upon receipt of such tax identification number.

# SECTION IV

# DISTRIBUTIONS

     **A.    Disputed Claim Reserve.**  The M&E Trustee shall maintain, in accordance with the M&E Trustee's powers and responsibilities under the Plan and this Agreement, a Disputed Claim Reserve.  The M&E Trustee shall maintain the Disputed Claim Reserve at an amount equal to the aggregate of 100% of the distributable amounts to which holders of such Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or such lesser amount as required by a Final Order.  For purposes of effectuating the Plan and the distributions to holders of Allowed Claims, the Bankruptcy Court shall set, may fix or liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed the amounts of the Disputed Claims for purposes of distribution under this Plan.  In lieu of fixing or liquidating the amount of any Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claim or such amount may be fixed by agreement in writing between the M&E Trustee and the holder of a Disputed Claim.

     **B.    Resolution of Disputed Claims.**  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the M&E Trustee shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328(a), 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than one hundred and twenty (120) days after the Effective Date (subject, however, to the right the M&E Trustee to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court).

     **C.    Application of M&E Trust Assets.**  The M&E Trustee on behalf of the M&E Trust shall apply all other cash constituting M&E Trust Assets and any proceeds therefrom in the order and reflecting the priorities set forth below:

          **FIRST,** to pay all the costs and expenses of the M&E Trust including, without limitation, funding of the Liquidation Expense Reserve Account for the post-confirmation fees and expenses and any and all costs, expenses and liabilities incurred by the M&E Trustee in connection with the performance of his duties

under this Agreement, including the payment of any professionals, agents or other representatives (and designees) retained by the M&E Trustee.

**SECOND**, to the holders of Allowed Claims, classified and unclassified under the Plan in accordance with the terms and conditions of the Plan.

Notwithstanding anything to the contrary in this Section IV, prior to making any distribution to holders of Claims under the Plan, the M&E Trustee may retain such amounts (i) to pay estimated expenses of administration (including, but not limited to, the fees and expenses of the M&E Trustee, any taxes imposed on the M&E Trust or in respect of the assets of the M&E Trust, and fees and expenses in connection with litigation), (ii) to satisfy other liabilities incurred or assumed by the M&E Trust (or to which the M&E Trust Assets are otherwise subject), all for the term of the M&E Trust and in accordance with this Agreement or the Plan, and (iii) to satisfy the post-confirmation fees and expenses detailed in the Plan; provided, however, that, from the net amount distributable, the M&E Trustee may reserve, in accordance with the provisions of Sections IV.D and IV.E hereof, such amounts necessary for the Disputed Claim Reserve.

The M&E Trust hereby grants to the M&E Trustee a first-priority lien on and security interest in the M&E Trust Assets to secure the payment of all amounts owed to, accrued or reserved on account of, the M&E Trustee or any persons or entities, including, but not limited to, professionals to be retained by the M&E Trustee hereunder or otherwise due hereunder. The M&E Trust agrees to take such actions and execute such documents as the M&E Trustee deems appropriate to perfect the M&E Trustee's lien and security interest hereunder. The M&E Trustee is authorized to execute and deliver all documents on behalf of the M&E Trust and the M&E Trustee to accomplish the purposes of this Agreement and the Plan.

      **D.**    **Distribution.** The M&E Trustee will make distributions of proceeds of M&E Trust Assets or Cash transferred to the M&E Trust to Beneficiaries at the discretion of the M&E Trustee, and in accordance with the M&E Trust Agreement, beginning as soon as is practicable, except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is Allowed); (ii) as are reasonably necessary to meet future costs of administration and contingent liabilities and to maintain the value of the assets of the M&E Trust during administration of the M&E Trust and M&E Trust Assets; (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the assets of the M&E Trust or in respect of the M&E Trust); and (iv) to satisfy other obligations and liabilities incurred by the M&E Trust as authorized by the M&E Trustee or obligations and liabilities incurred by the Debtor, in accordance with the Asset Purchase Agreement, the Plan or the M&E Trust Agreement.

      **E.**    **Undeliverable, Unclaimed and Returned Distributions.**

      1.    If any distribution or payment to a Beneficiary is returned to the M&E Trust as undeliverable, no further distributions or payments will be made to such Beneficiary, and such Beneficiary will not be entitled to any further distributions or payments, unless and until the M&E Trustee is notified in writing of such Beneficiary's correct address. If any check

issued to a Beneficiary in respect of a distribution or payment from the M&E Trust remains outstanding for more than ninety (90) days following the date of such check, no further distributions or payments will be made to such Beneficiary, and such Beneficiary will not be entitled to any further distributions or payments. Nothing contained in this Agreement or the Plan shall require the Debtor, the Reorganized Debtor, the M&E Trustee, or any of their respective agents, employees, attorneys or professionals to attempt to locate any Beneficiary.

2. Notwithstanding anything in this Agreement or the Plan to the contrary, any Beneficiary of an undeliverable distribution or payment who does not assert an entitlement to such distribution or payment before ninety (90) days after the later of (i) the Effective Date and (ii) the date of mailing of the undelivered Distribution or payment shall have its remaining unpaid Claim discharged and shall be forever barred from asserting any such Claim against the M&E Trust, the Debtor, the Reorganized Debtor or the Estate. Any unclaimed Cash held by the M&E Trust on account of such unclaimed, undeliverable distributions or payments and any investment yields thereon, as of the expiration of the time limit set forth in this paragraph shall become the property of the M&E Trust to the exclusion of the Beneficiary that was the initial intended recipient of the unclaimed, undeliverable distribution(s) or payment(s).

3. **No Interest on Claims.** Except as set forth in a Final Order of the Bankruptcy Court, no Beneficiary shall be entitled to interest accruing on or after the Petition Date on a Claim; however, funds held by the M&E Trustee for the benefit of Beneficiaries will accrue interest and such interest will inure to the benefit of the Beneficiaries. Except as otherwise provided in a Final Order of the Bankruptcy Court, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Petition Date to the date a final distribution or payment is made thereon if and after any such Disputed Claim, or any part thereof, becomes an Allowed Claim, provided, however, that Reserve Income will inure to the benefit of holders of Disputed Claims that become Allowed Claims.

F. **Rounding.** Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole dollar.

G. **Setoffs.** Pursuant to section 553 of the Bankruptcy Code and applicable non-bankruptcy law, the M&E Trustee may set off or recoup against any Allowed Claim and the distributions to be made thereon pursuant to this Agreement and the Plan, the claims, rights and Causes of Action of any nature that the Estate, the Debtor or the M&E Trust may hold against such Beneficiary prior to any distribution on account of such Allowed Claim. The M&E Trustee's election not to exercise such setoff or recoupment rights, pursuant to this provision, shall not constitute a waiver of or in any way affect such claims, rights and Causes of Action which the Estate, the Debtor, the Reorganized Debtor or the M&E Trustee may possess against such Beneficiary. To the extent that the amount of the Estate's, the Debtor's, the Reorganized Debtor's or the M&E Trustee's claim, right or Cause of Action exceeds the amount of the Allowed Claim or distribution against which it is set off, the M&E Trustee shall reserve their right to recover the full amount of such excess from such Beneficiary.

**H.     De minimis Distributions.**  If the amount due any Beneficiary would result in a distribution or payment in an amount less than fifty dollars ($50.00), such Beneficiary shall not receive such distribution or payment.

**I.     Taxes.**  The M&E Trustee will comply with all tax withholding and reporting requirements imposed by all governmental entities, and all distributions or payments pursuant to this Agreement and the Plan will, to the extent applicable, be subject to such withholding and reporting requirements.  The M&E Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Agreement or the Plan, each entity receiving a distribution or payment pursuant to this Agreement or the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution or payment.  Pending the implementation of satisfactory arrangements and/or mechanisms to comply with the requirements of this Section, any distribution or payment to be made pursuant to the Plan shall be treated as undeliverable.

**J.     Compliance with Laws.**  Any and all distributions or payments of M&E Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

**K.     Final Disbursements of M&E Trust and Unclaimed Property After the Final Disbursement Date.**  The M&E Trustee is authorized to terminate the M&E Trust in accordance with the terms of this Agreement and the Plan when the M&E Trustee determines that no further disbursements of the respective assets of the M&E Trust are possible, among other conditions.

**L.     Estate Representatives.**  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the M&E Trustee shall serve as the representative of the Estate and the M&E Trust on and following the Effective Date.

## SECTION V

## SUCCESSOR TRUSTEES

**A.     Removal.**  The M&E Trustee may only be removed by the Oversight Committee upon entry of an order of the Bankruptcy Court, for cause shown, including: (a) fraud, gross negligence or willful misconduct in connection with the affairs of the M&E Trust; (b) physical or mental disability that substantially prevents the M&E Trustee from performing the duties as M&E Trustee hereunder; (c) breach of fiduciary duty; or (d) failure, in good faith judgment of the Oversight Committee, to reasonably perform the duties as M&E Trustee hereunder.

**B.     Resignation.**  The M&E Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Oversight Committee and the Bankruptcy Court.  Such resignation shall become effective on the later to occur of (i) the date specified in such notice and

(ii) the selection of a Successor Trustee (defined herein) and the acceptance by such Successor Trustee of such appointment, unless otherwise ordered by the Bankruptcy Court.

**C.    Appointment of Successor Trustee.**  In the event of the death, resignation or removal of the M&E Trustee, the Committee shall appoint a successor to the M&E Trustee (a "Successor Trustee").  Notice of any Successor Trustee shall be filed with the Bankruptcy Court and provided to the Beneficiaries.  Any Successor Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the M&E Trust's records.  Thereupon, such Successor Trustee shall, without any further act, become vested with all the M&E Trust Assets, properties, rights, powers, trusts and duties of his or her or its predecessor in the M&E Trust with like effect as if originally named herein; provided, however, that a removed or resigning trustee shall, nevertheless, when requested in writing by the Successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such Successor Trustee under the M&E Trust all of the rights in connection with the M&E Trust Assets, properties, rights, powers, trusts and duties of such predecessor trustee.

**D.    Trust Continuance**.  The death, resignation or removal of the M&E Trustee shall not operate to terminate the M&E Trust created by this Agreement or revoke any existing agency (other than the agency of such M&E Trustee as M&E Trustee) created pursuant to the terms of this Agreement or invalidate any action therefore taken by the M&E Trustee.  The M&E Trustee agrees that the provisions of this Agreement shall be binding on or inure to the benefit of any Successor Trustee.

**E.    Turnover of Documents**.  Upon the resignation or removal of the M&E Trustee, the M&E Trustee shall promptly: (a) execute and deliver, by the effective date of resignation or removal, all such documents, instruments, and other writings as may be required to effect the termination of the M&E Trustee's capacity under this Agreement and conveyance of the M&E Trust Assets there held by the M&E Trustee to the Successor Trustee; (b) deliver to the Successor Trustee all documents, instruments, books, records and other writings relating to the M&E Trust as may be in the possession or under control of the M&E Trustee; and (c) otherwise assist and cooperate in effecting the assumption of the rights, powers, duties and obligations under this Agreement by the Successor Trustee.

# SECTION VI

# REPORTING

**A.    Tax and Other Reports.**  As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the M&E Trust, the M&E Trustee shall submit to the Bankruptcy Court a written report including: (i) financial statements of the M&E Trust at the end of such calendar year or period and the receipts and disbursements of the M&E Trust for such period; and (ii) a description of any action taken by the M&E Trustee in the performance of his duties, which materially and adversely affects the M&E Trust and of which

notice has not previously been given to the Beneficiaries. The M&E Trustee shall promptly submit additional appropriate reports to the Bankruptcy Court whenever an adverse material event or change occurs which affects either the M&E Trust or the rights of the Beneficiaries hereunder.

**B.** **Federal Income Tax**.

1.     <u>Grantor Trust Status</u>.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the M&E Trustee of a private letter ruling if the M&E Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the M&E Trustee), the M&E Trustee shall file returns for the M&E Trust as a grantor trust pursuant to Treasury Regulation § 1.671-1 through 4(a).

2.     <u>Allocations of M&E Trust Taxable Income</u>.  All of the M&E Trust's income is subject to tax on a current basis, regardless of whether the M&E Trustee has established a reserve for Disputed Claims.  Subject to the provisions of Section VI.B.1 hereof, allocations of M&E Trust taxable income among Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the M&E Trust had distributed all of its other assets (valued for this purpose at their tax book value) to Beneficiaries (treating to the extent determined by the M&E Trustee in his sole discretion, any holder of a Disputed Claim against the Debtor, for this purpose, as a current Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the M&E Trust (including all distributions held in reserve pending the resolution of Disputed Claims).  Similarly, taxable losses of the M&E Trust will be allocated among Beneficiaries by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining M&E Trust Assets.

**C.     Other.**  The M&E Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the M&E Trust, that are required to be filed by any applicable governmental unit or under applicable law, guidelines, rules and regulations.  The M&E Trustee shall also provide the Oversight Committee such reporting as may be reasonably requested by the Oversight Committee.

## SECTION VII

## TRANSFER OF BENEFICIARY'S INTERESTS

**A.     Transfer of Beneficial Interests.**  The beneficial interests in the M&E Trust may not be certificated and are not transferable.

## SECTION VIII

## MISCELLANEOUS PROVISIONS

**A.** **Amendment; Waiver.** This Agreement cannot be amended, waived, modified or changed after the Effective Date without prior consent of the M&E Trustee and the Oversight Committee; provided, however, that in no event shall a change be made to this Agreement that would be inconsistent with the Plan or adversely affect the federal income tax status of the M&E Trust as a "grantor trust."

**B.** **Intention of Parties to Establish Grantor Trust**. This Agreement is intended to create a "liquidating trust", as defined in Treasury Regulations § 301.7701-4(d), to be taxed as a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grant or trust.

**C.** **Preservation of Privilege**. In connection with the rights, claims, and Causes of Action that constitute the M&E Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents, work-product or communications (whether written or oral) transferred to the M&E Trust shall vest in the M&E Trust and its representatives, and the Debtor and the M&E Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges.

**D.** **Cooperation.** The Debtor shall provide the M&E Trustee with copies of such of their books and records as the M&E Trustee shall reasonably require for the purpose of performing his duties and exercising his powers hereunder.

**E.** **Laws as to Construction.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to rules governing the conflict of law.

**F.** **Relationship to Plan**. The principal purpose of this Agreement is to aid in the implementation and effectuation of the Plan, and therefore, is subject to the provisions of the Plan. In the event of a conflict between the Plan and this Agreement, the Plan shall control.

**G.** **Severability.** If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law unless this Agreement, as modified, will no longer effectuate the intent of the parties hereto in all material respects.

**H.** **Disposition of the Committee**. The Committee shall disband and be released of its duties and obligations on the Effective Date. Any rights or duties of the Committee under this Agreement shall be exercised by the Oversight Committee. The M&E Trustee (on behalf of the M&E Trust) shall be permitted to retain the professionals of the Committee.

**I.** **Professionals of the M&E Trustee.** The M&E Trustee shall retain McGuireWoods LLP as counsel to the M&E Trust. The M&E Trustee may also employ and

retain such other professionals as the M&E Trustee deems necessary and appropriate. Such professionals shall be paid from the Liquidation Expense Reserve Account in accordance with this Agreement.

      **J.**    **Retention of Jurisdiction; Venue**. The Bankruptcy Court shall retain jurisdiction over any dispute pertaining to this Agreement to the fullest extent permitted under applicable law and the Plan. In the event that the Bankruptcy Court lacks jurisdiction or fails or refuses to exercise jurisdiction, the parties agree to bring any claims or causes of action arising out of, relating to or in connection with the Agreement in the United States District Court for the Western District of Pennsylvania, and hereby irrevocably submit to the jurisdiction of such Court. The parties hereto irrevocably waive any objection to the laying of venue in any action, suit or proceeding arising out of, relating to or in connection with this Agreement that is brought in the aforementioned Court and further waive any claim of *forum non conveniens*.

      **K.**    **Notices.** Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended at such address as set forth below or such other address as filed with the Bankruptcy Court.

If to the Debtor, the M&E Trust or the M&E Trustee, or the Committee:

**Debtor:**

Robert O. Lampl, Esq.
John P. Lacher, Esq.
Elsie R. Lampl, Esq.
960 Penn Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 392-0330

**M&E Trust or the M&E Trustee:**

William Kaye
JLL Consulting, Inc.
31 Rose Lane
East Rockaway, NY 11518
(516) 374-3705

-and-

Mark E. Freedlander, Esq.
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
(412) 667-6000

**PNC Bank, as Agent:**

Robert Simons, Esq.
Amy Tonti, Esq.
Reed Smith, LLP
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131

**L.     Notices if to a Beneficiary.**  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address determined in accordance with Section III.A hereof.

**M.    Headings.**    The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

**N.    Counterparts.**    This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

*[Remainder of this page intentionally left blank – signatures on following pages]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or members all as of the date first above written.

MAX & ERMA'S RESTAURANT, INC.


By:_____
Its:_____


OFFICIAL COMMITTEE OF UNSECURED CREDITORS


By:_____
Its:_____


M&E TRUSTEE:

By:_____
Its: _____

\10894188.8

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | |

**M&E TRUST AGREEMENT**

by and among

MAX & ERMA'S RESTAURANT, INC.
as Debtor and Debtor-in-possession,

and

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
as representatives of Beneficiaries

and

JLL Consultants, Inc.
as M&E Trustee

Dated:  August [__], 2010

# TABLE OF CONTENTS

**Page**

SECTION I      THE M&E TRUST................................................................2

    A.  Creation............................................................................2

    B.  Objective and Purpose......................................................3

    C.  Acceptance........................................................................3

    D.  Intention of Parties to Establish Grantor Trust.................3

    E.  Governance of the M&E Trust...........................................3

    F.  Transfer of Assets to M&E Trust......................................3

    G.  The M&E Trust ~~Note~~**Cash Consideration**..................4

    H.  Termination of M&E Trust................................................5

SECTION II      M&E TRUSTEE.................................................................5

    A.  Appointment......................................................................5

    B.  Generally...........................................................................5

    C.  Powers and Authority........................................................6

    D.  Additional Powers.............................................................9

    E.  Limitation of M&E Trustee's Authority............................9

    F.  Liability of M&E Trustee.................................................10

    G.  Reliance by M&E Trustee................................................10

    H.  Authorization to Expend M&E Trust Assets....................11

    I.  Compensation of the M&E Trustee..................................11

    J.  Exculpation; Indemnification..........................................11

    K.  Confidentiality.................................................................12

    L.  Final Decree....................................................................12

    M.  Termination.....................................................................12

SECTION III      BENEFICIARIES.............................................................13

    A.  Identification of Beneficiaries.........................................13

    B.  Withholding.....................................................................13

    C.  Tax Identification Numbers.............................................13

SECTION IV      DISTRIBUTIONS............................................................13

    A  Disputed Claim Reserve..................................................13

    B.  Resolution of Disputed Claims........................................14

# TABLE OF CONTENTS
(continued)

C.   Application of M&E Trust Assets......................................................14

D.   Distribution...............................................................................15

E.   Undeliverable, Unclaimed and Returned Distributions.............................15

F.   Rounding..................................................................................16

G.   Setoffs....................................................................................16

H.   De minimis Distributions...............................................................16

I.   Taxes......................................................................................16

J.   Compliance with Laws..................................................................16

K.   Final Disbursements of M&E Trust and Unclaimed Property After the Final
     Disbursement Date......................................................................17

L.   Estate Representatives..................................................................17

SECTION V          SUCCESSOR TRUSTEES..........................................17

A.   Removal..................................................................................17

B.   Resignation..............................................................................17

C.   Appointment of Successor Trustee....................................................17

D.   Trust Continuance.......................................................................17

E.   Turnover of Documents.................................................................18

SECTION VI         REPORTING........................................................18

A.   Tax and Other Reports.................................................................18

B.   Federal Income Tax.....................................................................18

C.   Other......................................................................................19

SECTION VII        TRANSFER OF BENEFICIARY'S INTERESTS.................19

A.   Transfer of Beneficial Interests.......................................................19

SECTION VIII       MISCELLANEOUS PROVISIONS...............................19

A.   Amendment; Waiver.....................................................................19

B.   Intention of Parties to Establish Grantor Trust......................................19

C.   Preservation of Privilege...............................................................19

D.   Cooperation..............................................................................19

E.   Laws as to Construction................................................................20

F.   Relationship to Plan.....................................................................20

**TABLE OF CONTENTS**
(continued)

G.   Severability...............................................................................................................20

H.   Disposition of the Committee.....................................................................................20

I.   Professionals of the M&E Trustee..............................................................................20

J.   Retention of Jurisdiction; Venue................................................................................20

K.   Notices.......................................................................................................................20

L.   Notices if to a Beneficiary.........................................................................................21

M.   Headings...................................................................................................................22

N.   Counterparts.............................................................................................................22

THIS AGREEMENT (the "Agreement") is made this _____ day of August, 2010, by and among Max & Erma's Restaurant, Inc., debtor and debtor-in-possession (the "Debtor"), the Official Committee of Unsecured Creditors of the Debtor (the "Committee") and JLL Consultants, Inc. (together with any successors, the "M&E Trustee") under the Plan (as defined below).

## RECITALS:

A.    On October 23, 2009, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Pennsylvania, Pittsburgh Division (the "Bankruptcy Court"), which case is pending before the Honorable M. Bruce McCullough at Case No. 09-27807 (the "Case").

B.    By order, dated August _____, 2010, the Bankruptcy Court confirmed the **First Amended** Joint Chapter 11 Plan Proposed by the Debtor and the Official Committee of Unsecured Creditors dated ~~July 9,~~**August 18,** 2010 (as the same may have been or may be amended or modified, the "Plan").[1]

C.    Article VI of the Plan calls for, *inter alia*, the creation of the M&E Trust to hold and reduce to Cash all M&E Trust Assets, including but not limited to: (i) balance of the Cash Consideration (estimated to be approximately $~~2.75~~**5.1** million), (ii) the Excluded Assets[2], and (iii) the M&E Trust ~~Note~~**Cash Consideration**.  The M&E Trust is created on behalf of, and for the benefit of, the Beneficiaries.  The Beneficiaries of the M&E Trust are the holders of **Retained Administrative Expense Claims, Class 1 Claims and** Allowed Class 5 Claims under the Plan.  ~~Holders of allowed Priority Tax Claims are not Beneficiaries of this M&E Trust.~~

---

[1] Capitalized terms used herein without definition shall have the respective meanings assigned to such terms in the Plan or Agreement, which term is defined in the Plan.  To the extent terms have conflicting definitions, the definition set forth in the Plan shall control.

[2] Excluded Assets is defined in the Plan as those assets of the Estate not subject to acquisition by the Purchaser under the Agreement, including (a) Machinery and Equipment situated at restaurants that are not Purchased Stores; (b) food and alcohol inventory situated at restaurants that are not Purchased Stores; (c) furniture, fixtures, utensils, plates, cups and other instruments owned by Seller and not situated at or relating to Purchased Stores; (d) the Tax Refund and tax attributes of the Seller relating to any and all periods prior to the Closing Date; (e) all Avoidance Actions; (f) all Claims or Causes of Action against Insiders, including, without limitation, Claims against insurance policies that cover the Seller (and its officers and directors) or may be available to provide coverage for, among other things, Claims against the Seller, its officers and its directors; (g) all Claims or Causes of Action relating to Excluded Assets; (h) the subrogation rights of the Seller; (i) all corporate seals, minute books, charter documents, stock transfer records, record books, original Tax and financial records and such other files, books and records relating to any of the Excluded Assets or to the organization, existence or capitalization of Seller or of any other Person; (j) deferred taxes; (k) all Liquor Licenses or permits relating to stores that are not Purchased Stores; (l) all contracts that are not Acquired Contracts, including without limitation any of Debtor's Executory Contracts or Unexpired Leases not specifically listed on Schedule 2.3 or in Exhibit D to the Plan Supplement; (m) any Executory Contract or Unexpired Lease that was specifically listed on Schedule 2.3 or in Exhibit D to the Plan Supplement that Purchaser, by written notice to the Debtor, elects not to acquire as provided in Section 2.1(g) of the Agreement; (n) insurance receivable for closed stores; and (o) account receivable from G&R Management Company.

D.     The M&E Trust is created pursuant to, and to effectuate, the Plan for the primary purpose of liquidating and administering the M&E Trust Assets for the benefit of the Beneficiaries as a liquidating trust, in accordance with Treasury Regulation § 301.7701-4(d), and Revenue Procedure 94-45 I.R.B. 1994-28, 124, (July 11, 1994) ("Revenue Procedure 94-45") (or any subsequent Revenue Procedures that may be issued), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the M&E Trust.

E.     The M&E Trust provides that the Beneficiaries of the M&E Trust will be treated as the grantors of the M&E Trust and deemed owners of the M&E Trust Assets.  The M&E Trust requires the M&E Trustee to file returns for the M&E Trust as a grantor trust pursuant to Treasury Regulation § 1.671-1 through 4(a).

F.     The M&E Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as the grantors and owners of the trust.

G.     All of the M&E Trust's income and/or recoveries are to be treated as subject to tax on a current basis to the Beneficiaries who will be responsible for payment of any tax due.

H.     Subject to Section I.H hereof, the M&E Trust contains a fixed determinable termination date that is not more than five years from the date of creation of the M&E Trust and that is reasonable based on all the facts and circumstances.

I.     The investment powers of the M&E Trustee other than those reasonably necessary to maintain the value of the M&E Trust Assets and to further the liquidating purpose of the M&E Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates (or overnight swaps) of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

J.     The M&E Trust is required to distribute to the Beneficiaries its net income plus all net proceeds from the sale or other liquidation of assets, except that the M&E Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the M&E Trust Assets, to fund the Liquidation Expense Reserve Account and the Disputed Claim Reserve.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Debtor, the Committee, and the M&E Trustee agree as follows:

## SECTION I

## THE M&E TRUST

**A.     Creation**.  In accordance with Article VI of the Plan, on the Effective Date of the Plan, the M&E Trust is hereby created and vested with all of the M&E Trust Assets.

**B.     Objective and Purpose**.  The M&E Trust will be established and maintained, in accordance with Treasury Regulation section 301.7701-4(d), for the purpose of collecting, holding, liquidating, monetizing and distributing the M&E Trust Assets, resolving and administering Claims, and prosecuting Causes of Action that are transferred to the M&E Trust pursuant to the Plan.  The M&E Trust will not continue or engage in the conduct of a trade or business.

**C.     Acceptance**.  The M&E Trustee accepts the terms, provisions and conditions of this Agreement and the Plan and agrees to observe, perform and abide hereby and thereby.

**D.     Intention of Parties to Establish Grantor Trust**.  This Agreement is intended to create a grantor trust for the United States federal income tax purposes, and to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.  The M&E Trust is not intended to constitute nor shall the formation of the M&E Trust be interpreted as creating an association, partnership or joint venture of any kind.

**E.     Governance of the M&E Trust**.  The M&E Trust will be controlled by the M&E Trustee in accordance with this Agreement, which will not be inconsistent with the Plan.  The M&E Trustee will be subject to oversight by a three member oversight committee (the "Oversight Committee").  The Oversight Committee will be comprised of (i) one representative selected by the Committee, (ii) one representative selected by the Agent, and (iii) a third representative selected by and agreed upon by the Committee and Agent representatives.  The Oversight Committee shall be compensated by the M&E Trust in amounts set forth in the Confirmation Order.

**F.     Transfer of Assets to M&E Trust**.

1.     On the Effective Date, all right, title and interest to the following assets of the Debtor and its Estate will be assigned, set over, transferred, and conveyed to the M&E Trust, free and clear of Liens, Claims or encumbrances and without action required of the M&E Trustee to effectuate the transfer of M&E Trust Assets: (a) balance of the cash consideration relating to the Sale, or approximately $2.75**5.1** million, subject to potential adjustment; (b) the Excluded Assets; and (c) the M&E Trust ~~Note~~**Cash Consideration** .  The M&E Trust Assets shall not include any contractual rights of subordination, guarantees or judgments which are retained by the Pre-Petition Lenders (as defined in the Plan).

2.     To the extent that certain M&E Trust Assets, because of their nature or because they will accrue subsequent to the Effective Date, cannot be assigned, set over, transferred or conveyed to the M&E Trust on the Effective Date, these assets will be deemed assigned, set over, transferred and conveyed to the M&E Trust as soon as practical after the Effective Date.

3. On or after the Effective Date, with respect to all Claims constituting Excluded Assets, the M&E Trustee will continue as a plaintiff in Causes of Action (on behalf of the Beneficiaries) of the M&E Trust in which the Debtor was a plaintiff prior to the Effective Date and will be deemed the assignee of all Claims or Causes of Action that could have otherwise been asserted by the Debtor or a trustee of the Debtor if one were appointed. All recoveries and proceeds arising from litigation and Causes of Action that are Excluded Assets will be deemed assigned, set over, transferred and conveyed to the M&E Trust upon receipt thereof.

4. All fees and costs of the M&E Trustee (and agents and professionals thereof) arising from or relating to pursuing litigation or Causes of Action or other services performed at the request of the M&E Trustee on behalf of the M&E Trust shall be paid as a first priority in right of distribution from the M&E Trust, subject, however, to the Claims of Professionals and Lender Professionals addressed in Section 2.3 of the Plan.

5. The transfer of the M&E Trust Assets to the M&E Trust shall be made for the benefit of the Beneficiaries, in each case, but only to the extent the Beneficiaries are entitled to distributions under the Plan.

6. For all purposes of the Internal Revenue Code of 1986 (the "IRS Code"), as amended, all Persons (including, without limitation, the Debtor, the M&E Trustee and the Beneficiaries) shall treat the transfer of the M&E Trust Assets to the M&E Trust through the Debtor and/or agents of the Debtor as set forth in this Section I.F, as the deemed transfer of such assets to the Beneficiaries followed by the deemed transfer of such assets by the Beneficiaries to the M&E Trust. Thus, the Beneficiaries shall be treated as the grantors and owners of the M&E Trust for federal income tax purposes.

**G. The M&E Trust ~~Note.~~Cash Consideration. The M&E Trust Cash Consideration will be paid by the Purchaser to the M&E Trust at Closing in the amount of $2.0 million. The M&E Trust Cash Consideration** will become an M&E Trust Asset on the Effective Date.

~~1. The M&E Trust Note will be issued by the Purchaser, as maker, to the M&E Trust, as payee and holder, for the benefit of the Beneficiaries of the M&E Trust. The M&E Trust Note will be in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) with a maturity date of thirty-nine (39) months from the Closing Date, with no amortization of principal for the first four (4) quarters and equal quarterly principal amortization payments beginning in the fifth quarter after Closing Date of one hundred and twenty-five thousand dollars ($125,000) with the balance due on the maturity date and bearing a simple interest rate of five percent (5%) per annum to be paid quarterly commencing in the first quarter after the Closing Date on the then outstanding principal balance. The M&E Trust Note will be expressly subordinated to up to no more than $12.0 million of debt financing of the Purchaser (anticipated to be a senior term loan and revolving credit facility at Closing), provided, however, that terms and conditions of subordination relating to the M&E Trust Note authorize (a) quarterly amortization payments in arrears of principal and quarterly payments of~~

- 4-

~~interest in accordance with the terms of the M&E Trust Note, and (b) payment of all outstanding amounts under the M&E Trust Note at maturity of the M&E Trust Note, each subject to the terms of customary intercreditor agreements and the requirement that there is not a default that is not waived or subject to forbearance under the contemplated debt financing. The M&E Trust Note will be substantially in the form included in the Plan Supplement as Exhibit "C".~~

~~The M&E Trust Note~~ will become an M&E Trust Asset on the Effective Date.

**H.     Termination of M&E Trust**.

1.     The M&E Trust will be terminated and the M&E Trustee discharged at such time as (i) all Disputed Claims, whether classified or unclassified, have been resolved, (ii) all M&E Trust Assets have been monetized, liquidated or abandoned and (iii) all distributions required to be made by the M&E Trustee under the Plan have been made, but in no event will the M&E Trust be dissolved later than a period that would adversely affect the status of the M&E Trust as a liquidating trust for federal income tax purposes or five (5) years, whichever is sooner. The M&E Trust will only exist for a period as long as is necessary to facilitate or complete the recovery and liquidation of the M&E Trust Assets and distribution of their proceeds.

2.     Prior to and upon termination of the M&E Trust, the M&E Trust Assets will be distributed to the Beneficiaries in accordance with the Plan and subject to this Agreement. If at any point prior to such termination date the M&E Trustee determines that further disbursements of the M&E Trust Assets are unwarranted, the M&E Trustee shall provide notice of the M&E Trustee's intention to make a final disbursement to the Beneficiaries. Absent the filing of a timely objection thereto, the M&E Trustee shall thereafter be authorized to and shall make the final disbursement of the M&E Trust Assets to the Beneficiaries in accordance with their distribution rights under the Plan and this Agreement. Ninety (90) days after the final disbursement, the M&E Trustee shall stop payment on any check(s) remaining unpaid and such unclaimed funds shall thereafter be used to satisfy any outstanding expenses of administering the M&E Trust and the remaining balance, if any, shall thereafter be paid to a charity to be selected by the M&E Trustee in accordance with Article VI of the Plan.

3.     The M&E Trustee shall not unduly prolong the duration of the M&E Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute M&E Trust Assets and to effect the distribution of the M&E Trust Assets to the Beneficiaries in accordance with the terms hereof and terminate the M&E Trust as soon as practicable.

<div align="center">

**SECTION II**

**M&E TRUSTEE**

</div>

**A.     Appointment.**    The Committee has determined to appoint William Kaye, managing director of JLL Consultants, Inc., to serve as the initial M&E Trustee under the Plan, and the M&E Trustee hereby accepts such appointment and agrees to serve in such capacity, upon the Effective Date of the Plan. A Successor Trustee (as defined in Section V.C hereof)

may be appointed in the event that the M&E Trustee is removed or resigns pursuant to this Agreement or the M&E Trustee otherwise vacates the position.

**B.** **Generally.** The M&E Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the M&E Trust and not otherwise, except that the M&E Trustee may administer the M&E Trust Assets as permitted by the provisions of Section II.D hereof. The M&E Trustee shall have the authority to bind the M&E Trust, but shall for all purposes hereunder be acting in the capacity as M&E Trustee and not personally or individually. The M&E Trustee shall not be obligated to give any bond, surety or other security for the performance of any duties or obligations hereunder. The M&E Trustee shall be entitled to engage in all such activities as the M&E Trustee deems necessary and appropriate, in the M&E Trustee's sole discretion, except where Committee approval may be required as set forth herein; provided, however, that such activities do not conflict with the purpose of the M&E Trust and are in the best interests of the Beneficiaries; and provided, further, that the M&E Trustee shall devote such time and effort as is necessary to timely and properly fulfill all such duties.

**C.** **Powers and Authority**.

1. In connection with the administration of the M&E Trust, except as otherwise set forth in this Agreement or the Plan, the M&E Trustee is authorized to perform any and all acts necessary and reasonable to accomplish the purposes of the M&E Trust. Without limiting, but subject to the foregoing, and subject in all respects to the other terms and conditions of this Agreement and the Plan, the M&E Trustee shall be expressly authorized, but shall not be required, to:

(a) pursue and prosecute Causes of Action or to refrain from pursuing any Cause of Action, based upon the M&E Trustee's assessment of the net benefit expected to be received by the M&E Trust in connection therewith (taking into account the costs and expenses projected to be incurred in connection therewith, the likelihood of success on the merits, and the range of potential recoveries to be received by the M&E Trust);

(b) compromise, settle, resolve and collect on any Claims or Causes of Action unrelated to Acquired Assets (as defined in the Asset Purchase Agreement) to the fullest extent permitted by law without further order of the Bankruptcy Court, provided, however, that for Claims or Causes of Action asserted in amounts in excess of $250,000, prior approval by the Oversight Committee and the Bankruptcy Court is required. All compromises and settlements shall be deemed final and binding upon all parties in interest in the Case. The M&E Trustee shall have the right, power and authority to retain and assert all defenses, rights to setoff, recoupment, avoidance rights and counterclaims with respect to any Claim or Cause of Action;

(c)      review, analyze and, as appropriate, prosecute objections to Claims and any claims arising after the Petition Date (the "Post-Petition Date Claims"), including any Administrative Expense Claims, subject to the provisions of the Plan dealing with Post-Petition Date Claims;

(d)      compromise, settle and resolve any Disputed Claims upon such terms and conditions as the M&E Trustee deems appropriate and in the best interests of the M&E Trust without further approval of the Bankruptcy Court. All compromises and settlements shall be deemed final and binding upon all parties in interest in the Case;

(e)      review, litigate and settle (without further approval of the Bankruptcy Court for matters equal to or less than $250,000) or otherwise resolve Claims and Post-Petition Date Claims (including any Administrative Expense Claims), Causes of Action or other disputes involving or arising out of alleged environmental contamination and/or remediation;

(f)      maintain all accounts, make distributions to Beneficiaries of the M&E Trust from the M&E Trust Assets and take other actions consistent with the Plan in the name of the M&E Trust, provided, however, that the M&E Trustee shall not be entitled to use the Debtor's bank accounts that are in existence as of the Effective Date and shall be required to open new bank or other depository accounts in the name of the M&E Trust as may be necessary or appropriate in the discretion of the M&E Trustee to enable the M&E Trustee to administer the M&E Trust in accordance with the terms of this Agreement;

(g)      the power to invest funds in and withdraw, make distributions and pay expenses, taxes, and other obligations owed by the M&E Trust from funds held by the M&E Trustee in accordance with the Plan and this Agreement;

(h)      maintain, in respect of the M&E Trust and the Beneficiaries, books and records relating to the assets and income of the M&E Trust and the payment of expenses of, and liabilities of, claims against or assumed by, the M&E Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof in accordance with this and to comply with applicable provisions of law. Except as provided herein, nothing in this Agreement requires the M&E Trust or the M&E Trustee to file any accounting or seek approval of any court with respect to the administration of the M&E Trust, or as a condition for making any payment or distribution out of the M&E Trust Assets. Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the M&E Trustee to inspect such books and records, provided that, if so requested, such Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the M&E Trustee;

(i)     retain or engage, without the necessity of obtaining any approval from the Bankruptcy Court, such employees, independent contractors, professional persons, and agents as are appropriate, necessary or desirable to complete (i) disbursements to Beneficiaries of the M&E Trust and (ii) the general administration of the M&E Trust as required by this Agreement and applicable law;

(j)     incur any reasonable and necessary expenses on behalf of the M&E Trust in carrying out the M&E Trustee's obligations and responsibilities on behalf of the M&E Trust and make ordinary and reasonable disbursements from M&E Trust Assets to pay the ordinary and necessary expenses of administering the M&E Trust, without the necessity of providing any notice or seeking or obtaining any approval of the Bankruptcy Court with respect to such disbursements;

(k)     make interim and final disbursements of the M&E Trust Assets to the Beneficiaries of the M&E Trust in accordance with the terms of this Agreement, the Plan and applicable law;

(l)     execute, deliver, file and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions, as may be necessary, desirable or appropriate to administer the M&E Trust;

(m)     prepare and file tax and informational returns on behalf of the M&E Trust as required by applicable federal, state and local law, and in accordance with the terms of this Agreement;

(n)     file with the Bankruptcy Court and/or the Office of the United States Trustee the reports and other documents required by the Plan or otherwise required to close the Case;

(o)     notwithstanding any other provisions of the Plan or this Agreement, to pay any and all fees of the Office of the United States Trustee as and when such fees become due, which payments shall be paid by the M&E Trustee from the M&E Trust Assets;

(p)     take all other actions not inconsistent with the provisions of the Plan or the Agreement that the M&E Trustee deems reasonably necessary or desirable in connection with the administration of the M&E Trust; and

(q)     expend on behalf of the Debtor such funds as are necessary for the M&E Trust, as successor to the Debtor, to fulfill the Debtor's obligations and liabilities under the Asset Purchase Agreement between the Debtor and Purchaser pursuant to which it is contemplated that Purchaser will acquire substantially all of the Debtor's assets other than Excluded Assets (the "Asset Purchase

Agreement"), the Plan and the Transition Agreement (as defined in the Plan) after the Effective Date, including, without limitation, Debtor's obligation to pay a portion of certain Cure Costs pursuant to the Asset Purchase Agreement and Debtor's obligations related to the maintenance and transfer of its Liquor Licenses (as defined in the Plan) to Purchaser.

**D.      Additional Powers.**  Except as otherwise set forth in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the M&E Trustee may control and exercise authority over the M&E Trust Assets, and over the protection, conservation and disposition thereof.  No person dealing with the M&E Trust shall be obligated to inquire into the authority of the M&E Trustee in connection with the protection, conservation or disposition of the M&E Trust Assets. It is intended that a signed copy of this Agreement serve as adequate proof of the M&E Trustee's authority to act if such proof is required for any reason by any third party.

**E.      Limitation of M&E Trustee's Authority**.

1.      No Trade or Business.  The M&E Trustee shall not, and shall not be authorized to, engage in any trade or business with respect to the M&E Trust Assets or any proceeds therefrom except to the extent reasonably necessary or appropriate to, and consistent with, the liquidating purpose of the M&E Trust and the M&E Trustee shall take such actions consistent with the prompt orderly liquidation of the M&E Trust Assets as are required by applicable law and consistent with the treatment of the M&E Trust as a Liquidating Trust under Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45 (or any subsequent Revenue Procedures that may be issued), and such actions permitted herein.

2.      Released Claims.  The M&E Trustee shall not have any authority to pursue any Claims and/or Causes of Action waived, exculpated or released in accordance with the provisions of the Plan or Final Order of the Bankruptcy Court.

3.      Investment and Safekeeping of the M&E Trust Assets.  All M&E Trust Assets received by the M&E Trust shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated unless and to the extent required by applicable law or by the Plan.  The M&E Trustee shall be under no liability for interest or producing income on any M&E Trust Assets received by the M&E Trust hereunder and held for distribution or payment to the Beneficiaries.  Investments of any M&E Trust Assets held by the M&E Trust shall be administered in a manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the M&E Trustee to invest the M&E Trust Assets, the proceeds thereof, or any income earned by the M&E Trust, shall be limited to the right and power to invest such assets (pending periodic distributions in accordance with this Section II.E.3 hereof) in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as Treasury bills; and, provided, further, that the scope of any such permissible investments shall be limited to include only those investments that the M&E Trust, within the meaning of Treasury Regulation

§ 301.7701-4(d) and Revenue Procedure 94-45 (or any subsequent Revenue Procedures that may be issued), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

4. _Limiting Transfers_. The M&E Trustee shall not take, or cause the M&E Trust to take, any action that would cause the interests in the M&E Trust to be considered readily tradable on a secondary market (or a substantial equivalent thereof) within the meaning of Section 7704(b)(2) of the IRS Code, and Treasury Regulations § 1.7704-1(c), and the M&E Trustee shall not permit any transfer of an interest in the M&E Trust if it would cause the M&E Trust (were it be classified as a partnership rather than a grantor trust) to be treated as a "publicly traded partnership" as defined in IRS Code § 7704.

5. The M&E Trustee shall submit a three month budget for approval to the Oversight Committee on an ongoing basis, and approval of the three month budgets shall not unreasonably be withheld. The M&E Trustee will not incur or expend amounts inconsistent with the budgets without Oversight Committee approval.

**F. Liability of M&E Trustee**. In no event shall the M&E Trustee, the M&E Trustee's officers, employees, independent contractors or any of the M&E Trustee's professionals, agents or representatives (or their designees) be held personally liable for any claim asserted against the M&E Trust, the M&E Trustee, the M&E Trustee's officers, employees, independent contractors and/or any of the M&E Trustee's professionals, agents or representatives (or their designees), except to the extent occasioned by or based upon their own fraud, willful misconduct or gross negligence. Specifically, the M&E Trustee, the M&E Trustee's officers, employees, independent contractors or any of the M&E Trustee's professionals, agents or representatives (or their designees) shall not be liable for any negligence or any error of judgment in either case made in good faith, in the exercise of its or their business judgment or with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken by the M&E Trustee, the M&E Trustee's officers, employees, independent contractors or any of the M&E Trustee's professionals, agents or representatives (or their designees) is determined by a Final Order of a court of competent jurisdiction to be due to their own respective fraud, gross negligence or willful misconduct.

**G. Reliance by M&E Trustee**. Except as otherwise provided in Section II.F hereof:

1. The M&E Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the M&E Trustee to be genuine and to have been signed or presented by the proper party or parties;

2. The M&E Trustee may consult with legal counsel, financial or accounting advisors and other professionals, and the M&E Trustee shall not be liable for any action taken or omitted to be taken by him in accordance with the advice thereof; and

3.     All persons or entities hired by, retained by, doing business with or otherwise dealing with the M&E Trustee shall look only to the M&E Trust Assets to satisfy any liability incurred by the M&E Trustee on behalf of the M&E Trust to such persons or entities in carrying out the terms of this Agreement, and the M&E Trustee shall have no personal obligation to satisfy any such liability, except to the extent such liability or obligation arises as a result of the fraud, gross negligence or willful misconduct of the M&E Trustee as determined in accordance with Section II.F of this Agreement, in which case the M&E Trust Assets shall not be subject to such claims or liabilities.

**H.     Authorization to Expend M&E Trust Assets.**  The M&E Trustee may expend the M&E Trust Assets (i) to pay expenses of administration of the M&E Trust (including, but not limited to, the fees and expenses of the M&E Trustee, its officers, employees, and independent contractors and any of its professionals, agents or representatives, any taxes imposed on the M&E Trust or in respect of the M&E Trust Assets, and any fees and expenses incurred in connection with any Causes of Action), and (ii) to satisfy other liabilities incurred or assumed by the M&E Trust (or to which the assets are otherwise subject) in accordance with this Agreement or the Plan, including, without limitation, obligations and liabilities of the Debtor under the Asset Purchase Agreement and the Plan after the Effective Date.

**I.     Compensation of the M&E Trustee**.

1.     The costs and expenses of the M&E Trust, including the fees and expenses of the M&E Trustee and its retained professionals, will be paid from the proceeds of M&E Trust Assets.  These costs and expenses will have a first priority in right of distribution and subordinate, however, to Compensation and Reimbursement Claims addressed in Section 2.3 of the Plan and are not subject to approval by the Bankruptcy Court.  The M&E Trustee may retain or reserve amounts estimated by the M&E Trustee, based on his reasoned business judgment, to fund the fees and expenses of the M&E Trustee and the professionals of the M&E Trustee in a Liquidation Expense Reserve Account. The M&E Trust may increase or decrease amounts held in a Liquidation Trust Reserve Account at the reasonable discretion of the M&E Trustee.

2.     The M&E Trustee is entitled to reasonable compensation, at a flat monthly fee.  The M&E Trustee intends to be paid certain contingency amounts with respect to certain Claims and Causes of Action which, along with the flat monthly fee, shall be set forth in the Plan Supplement at Exhibit "F" and approved in the Confirmation Order.

3.     All compensation and other amounts payable to the M&E Trustee shall be paid from the M&E Trust Assets.  If the cash in the M&E Trust shall be insufficient to compensate and reimburse the M&E Trustee, as the case may be, for any amounts to which he is entitled hereunder, then the M&E Trustee is hereby authorized to reduce to cash in a commercially reasonable manner that portion of the M&E Trust Assets necessary so as to effect such compensation and reimbursement.

**J.     Exculpation; Indemnification.**  From and after the Effective Date, the M&E Trustee, the Oversight Committee, the M&E Trustee's and the Oversight Committee's respective

officers, employees, independent contractors, or any of the M&E Trustee's or Oversight Committee's professionals, agents or representatives (or their designees) shall be and hereby are exculpated by all persons, and entities including, without limitation, holders of Claims against the Debtor and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon the M&E Trustee by this Agreement, the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan or this Agreement, or applicable law or otherwise, except only for actions or omissions to act only to the extent determined by a Final Order of a court of competent jurisdiction to be due to the fraud, gross negligence or willful misconduct of the M&E Trustee, the Oversight Committee, the M&E Trustee's and the Oversight Committee's respective officers, employees, independent contractors, or any of the M&E Trustee's or the Oversight Committee's respective professionals, agents or representatives (or their designees) after the Effective Date. No holder of a Claim against the Debtor or any other party in interest will have or be permitted to pursue any claim or cause of action against the M&E Trustee, the Oversight Committee, the M&E Trust or the M&E Trustee's or the Oversight Committee's respective officers, employees, independent contractors, professionals, agents or representatives (or their designees) for making payments in accordance with the Plan or this Agreement or for implementing the provisions of the Plan or this Agreement except in cases of fraud, gross negligence or willful misconduct. The M&E Trust shall indemnify, defend and hold harmless the M&E Trustee, the Oversight Committee, the M&E Trustee's officers, employees, independent contractors and any of the M&E Trustee's and the Oversight Committee's respective professionals, agents or representatives (or their designees) from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees) (except to the extent determined by a Final Order of a court of competent jurisdiction to arise out of the fraud, gross negligence or willful misconduct of the M&E Trustee, the Oversight Committee, or any of the M&E Trustee's or the Oversight Committee's respective officers, employees, independent contractors, or any of the M&E Trustee's or the Oversight Committee's respective professionals, agents or representatives (or their designees) but this parenthetical shall only apply to those individuals or entities to which such finding or findings of fraud, gross negligence or willful misconduct shall have been made) to the fullest extent permitted by applicable law. Any action taken or omitted to be taken with the approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, gross negligence or willful misconduct.

**K.    Confidentiality.** The M&E Trustee shall, and shall cause the M&E Trustee's and the Oversight Committee's officers, employees, independent contractors or any of the M&E Trustee's and the Oversight Committee's professionals, agents or representatives (or their designees) to, during the period that the M&E Trustee serves as M&E Trustee under this Agreement hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to the Debtor or any Beneficiary or any entity to which any of the M&E Trust Assets relate or of which the M&E Trustee has become aware in its capacity as such, other than in connection with the M&E Trustee carrying out the objectives and purposes of the M&E Trust.

**L.** **Final Decree.** It shall be the duty of the M&E Trustee to seek and obtain a final decree from the Bankruptcy Court in the Case upon full administration of the M&E Trust.

**M.** **Termination.** The duties, responsibilities and powers of the M&E Trustee will terminate on the date the M&E Trust is dissolved under applicable law in accordance with the Plan and this Agreement, or by an Order of the Bankruptcy Court or by entry of a final decree closing the Case, whichever date is later.

## SECTION III

## BENEFICIARIES

**A.** **Identification of Beneficiaries.** To determine the actual names, addresses and tax identification numbers of the Beneficiaries, the M&E Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers in the records maintained by the clerk of the Bankruptcy Court. If a Beneficiary has not filed a proof of claim or request for Administrative Expense Claim, or provided written notice indicating such information, the M&E Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers reflected in the applicable Schedules or, if more recent, contained in the Debtor's records. Each Beneficiary's right to distribution from the M&E Trust shall be that accorded to such Beneficiary under the Plan. Each distribution by the M&E Trustee to the Beneficiaries shall be made in accordance with the Plan and terms set forth herein.

**B.** **Withholding.** The M&E Trustee shall withhold from the amounts distributable to the Beneficiaries from the M&E Trust Assets at any time such sum or sums as may be required to be withheld under the applicable income tax laws of the United States or of any state or political subdivision thereof. Notwithstanding any other provision of this Agreement or the Plan, each Beneficiary receiving a distribution or payment from the M&E Trust shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distribution or payment.

**C.** **Tax Identification Numbers.** The M&E Trustee shall require any Beneficiary to furnish to the M&E Trustee its tax identification number as assigned by the IRS and the M&E Trustee may condition any distribution to any Beneficiary upon receipt of such tax identification number.

## SECTION IV

## DISTRIBUTIONS

**A.** **Disputed Claim Reserve.** The M&E Trustee shall maintain, in accordance with the M&E Trustee's powers and responsibilities under the Plan and this Agreement, a Disputed Claim Reserve. The M&E Trustee shall maintain the Disputed Claim Reserve at an amount equal to the aggregate of 100% of the distributable amounts to which holders of such Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims in their

Disputed Claim Amounts or such lesser amount as required by a Final Order.  For purposes of effectuating the Plan and the distributions to holders of Allowed Claims, the Bankruptcy Court shall set, may fix or liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed the amounts of the Disputed Claims for purposes of distribution under this Plan.  In lieu of fixing or liquidating the amount of any Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claim or such amount may be fixed by agreement in writing between the M&E Trustee and the holder of a Disputed Claim.

        **B.**     **Resolution of Disputed Claims.**  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the M&E Trustee shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328(a), 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than one hundred and twenty (120) days after the Effective Date (subject, however, to the right the M&E Trustee to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court).

        **C.**     **Application of M&E Trust Assets.**  The M&E Trustee on behalf of the M&E Trust shall apply all other cash constituting M&E Trust Assets and any proceeds therefrom in the order and reflecting the priorities set forth below:

        **,** to pay all the costs and expenses of the M&E Trust including, without limitation, funding of the Liquidation Expense Reserve Account for the post-confirmation fees and expenses and any and all costs, expenses and liabilities incurred by the M&E Trustee in connection with the performance of his duties under this Agreement, including the payment of any professionals, agents or other representatives (and designees) retained by the M&E Trustee.

        , to the holders of Allowed Claims, classified and unclassified under the Plan in accordance with the terms and conditions of the Plan.

Notwithstanding anything to the contrary in this Section IV, prior to making any distribution to holders of Claims under the Plan, the M&E Trustee may retain such amounts (i) to pay estimated expenses of administration (including, but not limited to, the fees and expenses of the M&E Trustee, any taxes imposed on the M&E Trust or in respect of the assets of the M&E Trust, and fees and expenses in connection with litigation), (ii) to satisfy other liabilities incurred or assumed by the M&E Trust (or to which the M&E Trust Assets are otherwise subject), all for the term of the M&E Trust and in accordance with this Agreement or the Plan, and (iii) to satisfy the post-confirmation fees and expenses detailed in the Plan; provided, however, that, from the net amount distributable, the M&E Trustee may reserve, in accordance with the provisions of Sections IV.D and IV.E hereof, such amounts necessary for the Disputed Claim Reserve.

The M&E Trust hereby grants to the M&E Trustee a first-priority lien on and security interest in the M&E Trust Assets to secure the payment of all amounts owed to, accrued or reserved on account of, the M&E Trustee or any persons or entities, including, but not limited to, professionals to be retained by the M&E Trustee hereunder or otherwise due hereunder. The M&E Trust agrees to take such actions and execute such documents as the M&E Trustee deems appropriate to perfect the M&E Trustee's lien and security interest hereunder. The M&E Trustee is authorized to execute and deliver all documents on behalf of the M&E Trust and the M&E Trustee to accomplish the purposes of this Agreement and the Plan.

D. **Distribution.** The M&E Trustee will make distributions of proceeds of M&E Trust Assets or Cash transferred to the M&E Trust to Beneficiaries at the discretion of the M&E Trustee, and in accordance with the M&E Trust Agreement, beginning ~~six (6) months after the Effective Date or~~ as soon ~~thereafter~~ as is practicable, except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is Allowed); (ii) as are reasonably necessary to meet future costs of administration and contingent liabilities and to maintain the value of the assets of the M&E Trust during administration of the M&E Trust and M&E Trust Assets; (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the assets of the M&E Trust or in respect of the M&E Trust); and (iv) to satisfy other obligations and liabilities incurred by the M&E Trust as authorized by the M&E Trustee or obligations and liabilities incurred by the Debtor, in accordance with the Asset Purchase Agreement, the Plan or the M&E Trust Agreement.

E. **Undeliverable, Unclaimed and Returned Distributions.**

1. If any distribution or payment to a Beneficiary is returned to the M&E Trust as undeliverable, no further distributions or payments will be made to such Beneficiary, and such Beneficiary will not be entitled to any further distributions or payments, unless and until the M&E Trustee is notified in writing of such Beneficiary's correct address. If any check issued to a Beneficiary in respect of a distribution or payment from the M&E Trust remains outstanding for more than ninety (90) days following the date of such check, no further distributions or payments will be made to such Beneficiary, and such Beneficiary will not be entitled to any further distributions or payments. Nothing contained in this Agreement or the Plan shall require the Debtor, the Reorganized Debtor, the M&E Trustee, or any of their respective agents, employees, attorneys or professionals to attempt to locate any Beneficiary.

2. Notwithstanding anything in this Agreement or the Plan to the contrary, any Beneficiary of an undeliverable distribution or payment who does not assert an entitlement to such distribution or payment before ninety (90) days after the later of (i) the Effective Date and (ii) the date of mailing of the undelivered Distribution or payment shall have its remaining unpaid Claim discharged and shall be forever barred from asserting any such Claim against the M&E Trust, the Debtor, the Reorganized Debtor or the Estate. Any unclaimed Cash held by the M&E Trust on account of such unclaimed, undeliverable distributions or payments and any investment yields thereon, as of the expiration of the time limit set forth in this paragraph shall

become the property of the M&E Trust to the exclusion of the Beneficiary that was the initial intended recipient of the unclaimed, undeliverable distribution(s) or payment(s).

3. **No Interest on Claims.** Except as set forth in a Final Order of the Bankruptcy Court, no Beneficiary shall be entitled to interest accruing on or after the Petition Date on a Claim; however, funds held by the M&E Trustee for the benefit of Beneficiaries will accrue interest and such interest will inure to the benefit of the Beneficiaries. Except as otherwise provided in a Final Order of the Bankruptcy Court, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Petition Date to the date a final distribution or payment is made thereon if and after any such Disputed Claim, or any part thereof, becomes an Allowed Claim, provided, however, that Reserve Income will inure to the benefit of holders of Disputed Claims that become Allowed Claims.

F. **Rounding.** Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole dollar.

G. **Setoffs.** Pursuant to section 553 of the Bankruptcy Code and applicable non-bankruptcy law, the M&E Trustee may set off or recoup against any Allowed Claim and the distributions to be made thereon pursuant to this Agreement and the Plan, the claims, rights and Causes of Action of any nature that the Estate, the Debtor or the M&E Trust may hold against such Beneficiary prior to any distribution on account of such Allowed Claim. The M&E Trustee's election not to exercise such setoff or recoupment rights, pursuant to this provision, shall not constitute a waiver of or in any way affect such claims, rights and Causes of Action which the Estate, the Debtor, the Reorganized Debtor or the M&E Trustee may possess against such Beneficiary. To the extent that the amount of the Estate's, the Debtor's, the Reorganized Debtor's or the M&E Trustee's claim, right or Cause of Action exceeds the amount of the Allowed Claim or distribution against which it is set off, the M&E Trustee shall reserve their right to recover the full amount of such excess from such Beneficiary.

H. **De minimis Distributions.** If the amount due any Beneficiary would result in a distribution or payment in an amount less than fifty dollars ($50.00), such Beneficiary shall not receive such distribution or payment.

I. **Taxes.** The M&E Trustee will comply with all tax withholding and reporting requirements imposed by all governmental entities, and all distributions or payments pursuant to this Agreement and the Plan will, to the extent applicable, be subject to such withholding and reporting requirements. The M&E Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Agreement or the Plan, each entity receiving a distribution or payment pursuant to this Agreement or the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution or payment. Pending the implementation of satisfactory arrangements and/or

mechanisms to comply with the requirements of this Section, any distribution or payment to be made pursuant to the Plan shall be treated as undeliverable.

**J.** **Compliance with Laws.** Any and all distributions or payments of M&E Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

**K.** **Final Disbursements of M&E Trust and Unclaimed Property After the Final Disbursement Date.** The M&E Trustee is authorized to terminate the M&E Trust in accordance with the terms of this Agreement and the Plan when the M&E Trustee determines that no further disbursements of the respective assets of the M&E Trust are possible, among other conditions.

**L.** **Estate Representatives.** Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the M&E Trustee shall serve as the representative of the Estate and the M&E Trust on and following the Effective Date.

## SECTION V

## SUCCESSOR TRUSTEES

**A.** **Removal.** The M&E Trustee may only be removed by the Oversight Committee upon entry of an order of the Bankruptcy Court, for cause shown, including: (a) fraud, gross negligence or willful misconduct in connection with the affairs of the M&E Trust; (b) physical or mental disability that substantially prevents the M&E Trustee from performing the duties as M&E Trustee hereunder; (c) breach of fiduciary duty; or (d) failure, in good faith judgment of the Oversight Committee, to reasonably perform the duties as M&E Trustee hereunder.

**B.** **Resignation.** The M&E Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Oversight Committee and the Bankruptcy Court. Such resignation shall become effective on the later to occur of (i) the date specified in such notice and (ii) the selection of a Successor Trustee (defined herein) and the acceptance by such Successor Trustee of such appointment, unless otherwise ordered by the Bankruptcy Court.

**C.** **Appointment of Successor Trustee.** In the event of the death, resignation or removal of the M&E Trustee, the Committee shall appoint a successor to the M&E Trustee (a "Successor Trustee"). Notice of any Successor Trustee shall be filed with the Bankruptcy Court and provided to the Beneficiaries. Any Successor Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the M&E Trust's records. Thereupon, such Successor Trustee shall, without any further act, become vested with all the M&E Trust Assets, properties, rights, powers, trusts and duties of his or her or its predecessor in the M&E Trust with like effect as if originally named herein; provided, however, that a removed or resigning trustee shall, nevertheless, when requested in writing by the Successor Trustee, execute and deliver an instrument or instruments conveying and

transferring to such Successor Trustee under the M&E Trust all of the rights in connection with the M&E Trust Assets, properties, rights, powers, trusts and duties of such predecessor trustee.

**D.** **Trust Continuance**. The death, resignation or removal of the M&E Trustee shall not operate to terminate the M&E Trust created by this Agreement or revoke any existing agency (other than the agency of such M&E Trustee as M&E Trustee) created pursuant to the terms of this Agreement or invalidate any action therefore taken by the M&E Trustee. The M&E Trustee agrees that the provisions of this Agreement shall be binding on or inure to the benefit of any Successor Trustee.

**E.** **Turnover of Documents**. Upon the resignation or removal of the M&E Trustee, the M&E Trustee shall promptly: (a) execute and deliver, by the effective date of resignation or removal, all such documents, instruments, and other writings as may be required to effect the termination of the M&E Trustee's capacity under this Agreement and conveyance of the M&E Trust Assets there held by the M&E Trustee to the Successor Trustee; (b) deliver to the Successor Trustee all documents, instruments, books, records and other writings relating to the M&E Trust as may be in the possession or under control of the M&E Trustee; and (c) otherwise assist and cooperate in effecting the assumption of the rights, powers, duties and obligations under this Agreement by the Successor Trustee.

## SECTION VI

## REPORTING

**A.** **Tax and Other Reports.** As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the M&E Trust, the M&E Trustee shall submit to the Bankruptcy Court a written report including: (i) financial statements of the M&E Trust at the end of such calendar year or period and the receipts and disbursements of the M&E Trust for such period; and (ii) a description of any action taken by the M&E Trustee in the performance of his duties, which materially and adversely affects the M&E Trust and of which notice has not previously been given to the Beneficiaries. The M&E Trustee shall promptly submit additional appropriate reports to the Bankruptcy Court whenever an adverse material event or change occurs which affects either the M&E Trust or the rights of the Beneficiaries hereunder.

**B.** **Federal Income Tax**.

1. <u>Grantor Trust Status</u>. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the M&E Trustee of a private letter ruling if the M&E Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by

the M&E Trustee), the M&E Trustee shall file returns for the M&E Trust as a grantor trust pursuant to Treasury Regulation § 1.671-1 through 4(a).

2.      <u>Allocations of M&E Trust Taxable Income</u>. All of the M&E Trust's income is subject to tax on a current basis, regardless of whether the M&E Trustee has established a reserve for Disputed Claims. Subject to the provisions of Section VI.B.1 hereof, allocations of M&E Trust taxable income among Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the M&E Trust had distributed all of its other assets (valued for this purpose at their tax book value) to Beneficiaries (treating to the extent determined by the M&E Trustee in his sole discretion, any holder of a Disputed Claim against the Debtor, for this purpose, as a current Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the M&E Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable losses of the M&E Trust will be allocated among Beneficiaries by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining M&E Trust Assets.

**C.**     **Other.** The M&E Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the M&E Trust, that are required to be filed by any applicable governmental unit or under applicable law, guidelines, rules and regulations. The M&E Trustee shall also provide the Oversight Committee such reporting as may be reasonably requested by the Oversight Committee.

<div align="center">

**SECTION VII**

**TRANSFER OF BENEFICIARY'S INTERESTS**

</div>

**A.**     **Transfer of Beneficial Interests.** The beneficial interests in the M&E Trust may not be certificated and are not transferable.

<div align="center">

**SECTION VIII**

**MISCELLANEOUS PROVISIONS**

</div>

**A.**     **Amendment; Waiver.** This Agreement cannot be amended, waived, modified or changed after the Effective Date without prior consent of the M&E Trustee and the Oversight Committee; <u>provided</u>, <u>however</u>, that in no event shall a change be made to this Agreement that would be inconsistent with the Plan or adversely affect the federal income tax status of the M&E Trust as a "grantor trust."

**B.**     **Intention of Parties to Establish Grantor Trust**. This Agreement is intended to create a "liquidating trust", as defined in Treasury Regulations § 301.7701-4(d), to be taxed as a

grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grant or trust.

      **C.**      **Preservation of Privilege**.  In connection with the rights, claims, and Causes of Action that constitute the M&E Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents, work-product or communications (whether written or oral) transferred to the M&E Trust shall vest in the M&E Trust and its representatives, and the Debtor and the M&E Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges.

      **D.**      **Cooperation.**  The Debtor shall provide the M&E Trustee with copies of such of their books and records as the M&E Trustee shall reasonably require for the purpose of performing his duties and exercising his powers hereunder.

      **E.**      **Laws as to Construction.**  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to rules governing the conflict of law.

      **F.**      **Relationship to Plan**.  The principal purpose of this Agreement is to aid in the implementation and effectuation of the Plan, and therefore, is subject to the provisions of the Plan.  In the event of a conflict between the Plan and this Agreement, the Plan shall control.

      **G.**      **Severability.**  If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law unless this Agreement, as modified, will no longer effectuate the intent of the parties hereto in all material respects.

      **H.**      **Disposition of the Committee**.  The Committee shall disband and be released of its duties and obligations on the Effective Date.  Any rights or duties of the Committee under this Agreement shall be exercised by the Oversight Committee.  The M&E Trustee (on behalf of the M&E Trust) shall be permitted to retain the professionals of the Committee.

      **I.**      **Professionals of the M&E Trustee.**  The M&E Trustee shall retain McGuireWoods LLP as counsel to the M&E Trust.  The M&E Trustee may also employ and retain such other professionals as the M&E Trustee deems necessary and appropriate.  Such professionals shall be paid from the Liquidation Expense Reserve Account in accordance with this Agreement.

      **J.**      **Retention of Jurisdiction; Venue**.  The Bankruptcy Court shall retain jurisdiction over any dispute pertaining to this Agreement to the fullest extent permitted under applicable law and the Plan.  In the event that the Bankruptcy Court lacks jurisdiction or fails or refuses to exercise jurisdiction, the parties agree to bring any claims or causes of action arising

out of, relating to or in connection with the Agreement in the United States District Court for the Western District of Pennsylvania, and hereby irrevocably submit to the jurisdiction of such Court.  The parties hereto irrevocably waive any objection to the laying of venue in any action, suit or proceeding arising out of, relating to or in connection with this Agreement that is brought in the aforementioned Court and further waive any claim of *forum non conveniens*.

      **K.**      **Notices.**  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended at such address as set forth below or such other address as filed with the Bankruptcy Court.

If to the Debtor, the M&E Trust or the M&E Trustee, or the Committee:

**Debtor:**

Robert O. Lampl, Esq.
John P. Lacher, Esq.
Elsie R. Lampl, Esq.
960 Penn Avenue, Suite 1200
Pittsburgh, PA  15222
(412) 392-0330


**M&E Trust or the M&E Trustee:**

William Kaye
JLL Consulting, Inc.
31 Rose Lane
East Rockaway, NY  11518
(516) 374-3705

-and-

Mark E. Freedlander, Esq.
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA  15222
(412) 667-6000


**PNC Bank, as Agent:**

Robert Simons, Esq.
Amy Tonti, Esq.
Reed Smith, LLP
225 Fifth Avenue
Pittsburgh, PA  15222
(412) 288-3131

  **L.**  **Notices if to a Beneficiary.** Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address determined in accordance with Section III.A hereof.

**M.** **Headings.** The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

**N.** **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

*[Remainder of this page intentionally left blank – signatures on following pages]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or members all as of the date first above written.

MAX & ERMA'S RESTAURANT, INC.


By:_____
Its:_____


OFFICIAL COMMITTEE OF UNSECURED CREDITORS


By:_____
Its:_____


M&E TRUSTEE:

By:_____
Its: _____

Document comparison by Workshare Professional on Tuesday, August 17, 2010 11:14:29 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMSPROXY/Active/10894188/6 |
| Description | #10894188v6<Active> - Trust Agreement |
| Document 2 ID | interwovenSite://DMSPROXY/Active/10894188/8 |
| Description | #10894188v8<Active> - Trust Agreement |
| Rendering set | MW Standard |

| Legend: | |
|---|---|
| **Insertion** | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 11 |
| Deletions | 13 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 26 |

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | Related Docket Nos.:  759, 760 |
|  | Hearing Date/Time:  August 18, 2010 at 2:00 p.m. |

**EXHIBIT "B"**

**TO**

**PLAN SUPPLEMENT TO THE JOINT CHAPTER 11 PLAN PROPOSED BY THE
DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
DATED JULY 9, 2010**

**M&E TRUST NOTE**

**(REMOVED FROM PLAN)**

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | Related Docket Nos.:  759, 760 |
| | Hearing Date/Time:  August 18, 2010 at 2:00 p.m. |

**EXHIBIT "C"**

**TO**

**PLAN SUPPLEMENT TO THE JOINT CHAPTER 11 PLAN PROPOSED BY THE
DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
DATED JULY 9, 2010**

**SCHEDULE OF ASSUMED EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

**(CURE AMOUNTS TO BE FILED SEPERATELY)**

Max Erma's Restaurant, Inc.
Acquired Contracts
Schedule 2.1(g)

| | | |
|---|---|---|
| UNEXPIRED LEASES (pursuant to amendments executed by landlord and Fidelity Newport Holdings LLC, where applicable): | | |
| **Landlord** | **Store Name** | **Store No.** |
| Continental Real Estate | Evanswood | Corporate Office |
| Meadowbrook Association | Rochester Hills | 25 |
| Mango Investments | Dublin | 28 |
| Laurel Park Retail Properties | Livonia | 29 |
| RLV Hunters Square | Farmington Hills | 30 |
| Greenwood Investors | Greenwood | 31 |
| HFT Holdings/H-squared Properties | South Hills | 38 |
| Essco Of Birmingham | Birmingham | 39 |
| First Concord Properties | Ann Arbor | 41 |
| Rosemont Commons | Akron | 44 |
| Promenade Delaware | Westlake | 45 |
| MFC Beavercreek | Beavercreek | 47 |
| Twelve Oaks Mall | Novi | 49 |
| Cole Mt. Woodridge | Woodridge | 50 |
| Sage Dayton, Ltd | Miller Lane | 53 |
| Spirit Master Fund | Cranberry (Marshall Township) | 54 |
| Morse & Hamilton | Gahanna | 56 |
| Spirit Master Fund | Parkway West | 61 |
| Spirit Master Fund | Canton | 62 |
| NP Max & Erma's LLC | Polaris | 66 |
| Spirit Master Fund | Hilliard | 68 |
| Parkview Terrace | Middleburg Heights | 71 |
| ERMAX | Monroeville | 72 |
| Millcreek Pavilion | Erie | 74 |
| MacArthur Shopping Center, LLC | Norfolk | 76 |
| ERMAX | Sterling Heights | 77 |
| KRG Hamilton Crossing | Carmel | 79 |
| ERMAX | Sawmill Road | 80 |
| ERMAX II | Fox Chapel | 81 |
| CLP-SPF Rockwood Commons, LLC | Hyde Park | 84 |
| M & E Restaurant LLC | Peter's Township | 86 |
| ERMAX [as verbally agreed] | Mentor | 89 |
| Easton Town Center | Easton Towne Centre | 90 |
| ERMAX [as verbally agreed] | Gibsonia | 91 |
| Inland Us Management LLC | Lansing | 92 |
| SRK Sylvania Assoc | Sylvania | 93 |
| Weis Investments | Auburn Hills | 94 |
| Carmel Centres | Eastgate Mall | 97 |
| Pembroke Square Assoc | Pembroke | 98 |
| Marvin & Ursula Seisel | Broad Street | 99 |
| Terrance/Roxanna Johnson | Westland | 100 |
| Levis Commons LLC | Perrysburg | 101 |
| Northridge Crossing LP | Westerville | 102 |
| Wea Belden LLC | Belden Village | 103 |
| J B Beck LLC | Plymouth | 104 |
| Crestview Hills Town Center LLC | Crestview Hills | 105 |
| Bridgewater Falls LLc | Fairfield Township | 106 |
| Mango Investments | Springboro | 107 |
| Cornerstone Max Pickerington | Pickerington | 108 |
| Foundry at South Strabane, LLC | Washington | 109 |
| Partridge Creek Fashion Park | Partridge Creek | 110 |

Max Erma's Restaurants, Inc.
Acquired Contracts
Schedule 2.1 (g)

**FRANCHISE AGREEMENTS:**

| Owner | Opening Date | End of Term | Location |
|---|---|---|---|
| Anton Airfood/HMS Host | 12/21/1997 | 12/21/2028 | Columbus Airport |
| Primo Restaurant Group | 10/23/2000 | 10/23/2002 | The Arch |
| HMS Host | 03/05/2001 | 03/5/2011 | Dayton Airport |
| Schuster Concepts | 04/16/2001 | 04/16/2021 | Sandusky |
| Columbus Hospitality | 09/04/2001 | 09/04/2011 | Crown Plaza |
| RLR Investments | 03/04/2002 | 03/04/2022 | Wilmington |
| Primo Restaurant Group | 05/06/2002 | 05/06/2022 | Mid-Rivers |
| Casino Aztar | 06/17/2002 | 12/01/2010 | Tropicana-Overseen by State of IN |
| Intechfinity | 11/04/2002 | 11/04/2022 | Downingtown |
| Jen-Fre | 11/18/2002 | 11/18/2022 | Edinburgh |
| PREMAir / Host International | 05/19/2003 | 12/31/2013 | Cleveland Air ( B & C ) |
| Intechfinity | 12/15/2003 | 12/15/2023 | The Oaks |
| Anton Airfood/HMS Host | 01/26/2004 | 02/01/2013 | Cincinnati Airport |
| Denti Restaurants | 06/28/2004 | 06/28/2024 | Chillicothe |
| Kolo Dining | 06/13/2005 | 06/13/2025 | Mishawaka |
| Denti Restaurants | 10/17/2005 | 10/17/2025 | Huntington |
| Midfield Concessions | 04/23/2006 | 09/01/2015 | Detroit Airport |
| Harmony Investments | 11/16/2006 | 11/16/2016 | Norfolk Hilton |
| Denti Restaurants | 01/22/2007 | 01/22/2027 | Findlay |
| Harmony Investments | 02/12/2007 | 02/12/2017 | VB Doubletree |
| Coastal Dining | 12/10/2007 | 12/10/2027 | Myrtle Beach |
| Midfield Concessions | 01/15/2008 | 09/01/2018 | Dulles Airport |
| Hauck Hospitality | 02/22/2008 | 02/22/2028 | Sharonville |
| Denti Restaurants | 05/21/2008 | 05/21/2028 | Lancaster |
| Primo Restaurant Group | 05/11/2009 | 05/11/2029 | Lake St Louis |
| JT Restaurants LLC | 02/23/2010 | 02/23/2020 | Aberdeen SD |

**FRANCHISE AREA DEVELOPMENT AGREEMENTS:**

| Developer | Start Date | Expiration Date | Market |
|---|---|---|---|
| Cornett | 02/10/2004 | 02/10/2011 | Virginia |
| Coastal Dining | 02/01/2007 | 02/01/2013 | Carolinas |
| Denti Restaurants | 09/18/2003 | 09/18/2011 | Small market Ohio, Kentucky, West Virginia |
| Jen-Fre | 05/23/2002 | 05/23/2008 | Indiana, Illinois |
| Kolo Dining | 05/2004 | 05/2010 | Northern Indiana |
| Solara, Inc. | 12/27/2001 | 12/27/2009 | Pennsylvania |
| Intechfinity of Southeast Florida, LLC | 02/15/2007 | 02/15/2017 | Southeast Florida |
| Primo Restaurant Management, Inc | 03/29/2000 | 03/30/2005 | Missouri |

**PARTNERSHIP AGREEMENTS:**

| | | | |
|---|---|---|---|
| Max & Erma's, Ltd | December, 1971 | December, 2011 | Represents approximate 50% interest in Max & Erma's German Village |

**EXECUTORY CONTRACTS:**

| VENDOR NAME | ADDRESS | PHONE # | PURPOSE | Potential Estimated Cure |
|---|---|---|---|---|
| ADP | Department 651 Denver, CO 80271 | 614-895-7700 | Payroll | |
| Alentus | 750 Assoc Engineering Place Edmonton, Alberta Canada, T5J3L9 | | Maxandermas.com Website Hosting | |
| American Express | P. O. Box 360001 Ft. Lauderdale, FL 33336 | | Credit Card Services | 368.28 |
| Avizent | P.O. Box 182364 Columbus, OH | 614-793-8000 | Worker's Comp & Unemployment Review Services | |
| Blackhawk Marketing Services, Inc. | 4918 Stone Ridge Mall Rd Pleasanton, CA 94588 | 925-226-9990 | Third Party Gift Card Sales (Kroger, Meijer, Giant Eagle, etc..) | |
| Discover | | | Credit Card Services | |
| Fifth Third | P. O. Box 630756 Cincinnati, OA 45263 | 513-534-6914 | Credit Card Processing & MC / Visa Services | |
| IBM | P.O. Box 643600 Pittsburgh, PA 15264 | 800-456-6006 | Maintenance On The As400 | 1,485.00 |
| iControl Enterprise | 6445 Barwick Lane Duluth, GA 30097 | 678-464-5725 | Software Services | 3,555.00 |
| JD Edwards & Company | Department 770 Denver, CO 80271 | | Software Services | |
| Michigan Logos | 5030 Northwind Dr., East Lansing, MI 48823 | | Michigan Highway Logos | 1,700.00 |
| Network Soulutions | 13861 Sunrise Valley Drive Herndon, VA 20171 | | Domain Registration (max-ermas.com jexp 4/3/13) max-ermas.net (exp 08/30/09, maxandermas.com (exp 2/16/13) | |
| Network Soulutions | 13861 Sunrise Valley Drive Herndon, VA 20171 | | SSL Certificate | |
| Ohio Logos | 4381 Tuller Rd Dublin, OH 43017 | | Ohio Highway Logos | |
| Orange Tree Employment | VB Box 105 Minneapolis, MN 55480 | | Employment Processing | 1,872.75 |
| PA Food & Logo | 902 N. Second Street Harrisburg, PA 17102 | | Pennsylvania Highway Logos | 1,040.00 |
| PA Signing Trust | P.O. Box 1205 Harrisburgh, PA 17108 | | Pennsylvania Highway Logos | |
| Paytronic | 307 Waverley Oak Rd. Waltham, MA 02452 | | Good Neighbor Rewards loyalty software vendor | 19,050.00 |
| Pitney Bowes Inc. | P.O. Box 856460 Louisville, KY 40285 | 800-228-1071 | Postage Machines Lease | |
| Stored Value Solutions | | | Gift Card Processing | |
| The SYGMA Network | 5551 Blazer Pkwy, #300 Dublin, OH 43017 | | Food and Supplies Distribution Service | 30,973.78 |
| United Health Care | 22561 Network Place Chicago, IL 60673 | 614-410-7400 | Third party Health & Dental Service | |
| 361 Studio | 551 South Front Street Columbus, OH 43215 | | Maintenance / Design for www.maxandermas.com | |
| XO Communications | 13855 Sunrise Valley Drive Herndon, VA 20171 | | Communications Contract | 495.05 |
| Wells Fargo Foothill Inc. | P.O. Box 6434 Carol Stream, IL 60197 | 866-497-6661 | Panasonic Copier Lease-Stores #67 Maumee #93 Sylvania | |
| Confidentiality Agreements | (various) | | Any contractual Rights to Max & Erma's to protect its confidential information | |
| | | | | $60,539.86 |

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | Related Docket Nos.:  759, 760 |
| | Hearing Date/Time:  August 18, 2010 at 2:00 p.m. |

**EXHIBIT "D"**

**TO**

**PLAN SUPPLEMENT TO THE JOINT CHAPTER 11 PLAN PROPOSED BY THE
DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
DATED JULY 9, 2010**

**TRANSITION AGREEMENT**

**EXHIBIT D TO PLAN SUPPLEMENT**

<u>**MANAGEMENT AGREEMENT**</u>


THIS AGREEMENT is made this _____ day of _____, 2010, ("Effective Date") by and between [NAME], a _____ [CORPORATE FORM] ("Manager"), with principal offices located at _____, and Max & Erma's Restaurants, Inc., a Delaware corporation ("Owner"), with principal offices located at 4849 Evanswood Drive, Columbus, OH 43229.

The circumstances pursuant to which this Agreement is made are as follows:

A.       Owner owns, operates and maintains a number of liquor licensed restaurant businesses (collectively "Licensed Business") located at various locations (collectively the "Premises"), and known as Max & Erma's.

B.       Owner and [NAME] have entered into an Asset Purchase Agreement ("Purchase Agreement") dated _____ in which Owner shall sell to [NAME], or its designee ("Purchaser"), shall purchase from Owner, the Licensed Business.

C.       In some states the sale of the Licensed Business cannot be consummated until Owner is duly authorized to transfer to Purchaser the liquor licenses for the Licensed Business in each applicable state.  A list of such Licensed Businesses is attached as Schedule 1.

D.       From the Effective Date until the date of issuance of new liquor licenses to the applicable Premises, Owner desires to retain Manager to manage the Licensed Business and Manager is willing to manage the Licensed Business on the terms and conditions hereinafter set forth.

NOW, THEREFORE, it is hereby agreed as follows:

1.       <u>Retention of Manager</u>.  From and after Effective Date, Owner retains Manager as general operating manager of the Licensed Business with authority, subject to the limitations and conditions herein set forth, to direct, supervise, and manage the entire operations of each Licensed Business until such time as the applicable state authority ("State Authority") approves the transfer of the liquor licenses and permits and the new licenses and permits are issued.

2.	<u>Manager's Duties</u>.	Manager shall supervise and direct the general operations of the Licensed Business in accordance with reasonable and prudent business practices.

3.	<u>Manager's Authority</u>.	Manager shall, in the ordinary course of business, have the power and authority on behalf of the Owner to make all contracts and disbursements necessary to carry out the duties conferred and imposed upon it by this Agreement, including, but not limited to, the authority on behalf of the Owner to pay all expenses of operating the Licensed Business from receipts derived from the operations of the Licensed Business and collecting the accounts receivable. Manager shall employ, supervise, direct the work of, promote and discharge such employees and personnel as are necessary for the proper operations of the business.

4.	<u>Regulatory Compliance</u>.	Manager shall operate the Licensed Business in full compliance with all the rules and regulations pertaining to the conduct of the business under federal, state or local laws, regulations or ordinances, including, without limitation, the rules and regulations of the applicable State Agency concerning the operation of a retailer with an on-premise liquor license, all applicable health codes, all rules and regulations of the Occupational Safety and Health Acts, and in accordance with the applicable state and/or Federal Fair Labor Standards and Wage and Hour Acts.

5.	<u>Duties of Owner</u>.	Owner shall make such purchases of inventory from Gross Receipts as Manager requests which are consistent with the terms of this Agreement. If requested by Manager, Owner shall cooperate with Manager in establishing bank accounts in Owner's name on which Manager and Owner are the only authorized parties to make deposits and withdrawals. Where the Owner's consent is required under this Agreement, the Owner shall not unreasonably withhold such consent.

6.	<u>Deposit of Receipts</u>.	During the term of this Agreement, all receipts derived from the operation of the Licensed Business, excluding receipts from accounts receivable as of the Effective Date, and credit card receipts as of the Effective Date, shall be deposited in a bank account established for the Licensed Business. The Manager shall use Gross Receipts to pay expenses of the Licensed Business.

7.      Payment of Expenses.  Manager shall pay from the Gross Receipts of the Licensed Business all operating expenses of the Licensed Business incurred or accrued on or after the date hereof and through the termination of this Agreement, including, without limitation:  (a) wages and fringe benefits of employees; (b) the cost of inventory, silverware, equipment and furniture; (c) utilities; (d) sales tax and payroll taxes or taxes of any nature; (e) entertainment; (f) advertising and promotion; (g) repairs and maintenance; (h) personal and real property taxes; (i) insurance premiums of any nature; and (j) rents and other charges required under any applicable lease.

8.      Books and Records.  During the term of this Agreement, Manager shall maintain for Owner, proper and suitable records and books of account to be kept in accordance with generally accepted accounting principles, and in which there shall be properly recorded all receipts and expenses in the operation of the Licensed Business.

9.      Owner Responsibilities.  There shall be no transfer of the responsibilities or liabilities of the Owner insofar as utility bills, rental or lease agreements, and other necessary license and tax requirements incidental to the operation of the Licensed Business, but all of these items shall be expenses for purposes of Paragraph 7.

10.     Term.  This Agreement shall remain in full force and effect until the applicable State Agency either rejects or accepts the Application for Transfer of Owner's Liquor Licenses to Purchaser. If the Application is accepted and the Liquor Licenses transferred, the separate Agreements simultaneously executed by the parties shall become effective, thereby superseding and terminating this Management Agreement.  If the Application is rejected, or if a State Agency withholds acceptance unless and until material changes are made which are unacceptable to Manager, the Manager may terminate this Agreement.

11.     Licensed Business Independence.  Each Licensed Business is, for the purposes of this Management Agreement, independent of the others.  This Agreement may be terminated as to one or more of the Licensed Businesses without affecting the other Licensed Businesses.  Operations by

Manager of the Licensed Business may be conducted collectively or independently in such a manner, as the Manager considers appropriate.

12.     <u>Co-Operation</u>.  Manager and Owner shall co-operate with each other and take such actions as are necessary or helpful to accomplish the purposes of this Management Agreement and maintain the continued operations of the Licensed Business.

13.     <u>Approval</u>.  This Agreement may be subject to the approval of the applicable State Agency.

14.     <u>Assignability</u>.  This Agreement is not assignable by Owner but may be assigned by the Manager to a related entity.

15.     <u>Governing Law</u>.  This Agreement shall be construed in accordance with and governed by the laws of the applicable state as to compliance with Liquor License Laws.

16.     <u>Notices</u>.  All notices, claims, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when delivered or mailed by registered or certified mail, return receipt requested, or via first-class mail with postage fully prepaid, or when forwarded by a nationally recognized overnight courier service as follows:

<div style="padding-left:2em;">

If to Owner:                               Max & Erma's Restaurants, Inc.
Attn: _____
4849 Evanswood Drive
Columbus, OH  43229
Ph: _____
Fx: _____

With a Copy to:                        _____
_____
_____
Ph: _____
Fx: _____

If to Manager:                         [NAME]
Attn: _____
_____
Ph: _____
Fx: _____

</div>

With a Copy to:
                                  _____

                                    _____

                                    _____

                                    Ph: _____

                                    Fx: _____

17.      <u>Complete Agreement</u>.  This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein and may be amended by a written instrument, dated subsequently, and executed by Owner and Manager.

18.      <u>Binding Effect</u>.  This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

19.      <u>Relationship and Authority</u>.  Manager and Owner shall not be construed as joint venturers, partners or agents of each other, and neither shall have the power to bind or obligate the other, except only to the extent expressly set forth in this Agreement.

20.      <u>Severability</u>.  If any provision of this Agreement or the application hereof is held to be invalid or unenforceable, and if Owner and Manager so agree, the remaining provisions shall be unaffected and shall remain in full force and effect, and such invalid or unenforceable provision shall be severed in whole or in part.

IN WITNESS WHEREOF, the parties hereto have executed this Management Agreement on the day and year first above written.

**OWNER**

MAX & ERMA'S RESTAURANTS, INC.,
a Delaware corporation

By: _____

Its: _____

**MANAGER**

[NAME], a _____ [CORPORATE FORM]

By: _____

Its: _____

\15579712.2

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 09-27807-MBM |
| MAX & ERMA'S RESTAURANT, INC., | Chapter 11 |
| Debtor. | Related Docket Nos.:  759, 760 |
| | Hearing Date/Time:  August 18, 2010 at 2:00 p.m. |

**EXHIBIT "E"**

**TO**

**PLAN SUPPLEMENT TO THE JOINT CHAPTER 11 PLAN PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED JULY 9, 2010**

**SCHEDULE OF M&E TRUSTEE FEE SCHEDULE**



# J<sub>L</sub><sub>L</sub> Consultants, Inc.

Telephone 516.374.3705
Telecopier 516.569.6531
e-mail: billkaye@jllconsultants.com

**William Kaye**
Managing Director

August 8, 2010

Mark Freelander, Esq.
McGuireWoods
Dominion Tower
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222-3142

Dear  Mark:

JLL Consultants, Inc. proposes the following fee schedule:

|  |  |
|---|---|
| months 1 -  6 following the Effective Date - | $ 10,000 per month |
| months 7 -12 following the Effective Date - | $  7,500 per month |
| months 13 -18 following the Effective Date - | $  5,000 per month |
| months 19 - until closing of case | $  3,500 per month |
| except for any month where a distribution is to be made – for that month | $  7,500 |

Litigation contingencies for Trustee:

1.  D& O Litigation:    five (5%) on the first $2,000,000 of recovery by settlement or litigation
two-and-ne-half (2 1/2%) on any recovery by settlement or litigation
over $2,000,000

2.  Preference recoveries w/o litigation:   15% on amounts recovered and on the "value" of
Claim Waivers and waiver of 502(h) Waivers

3.  Preference recoveries w/ litigation:    5% on amounts recovered and on the "value" of
Claim Waivers and waiver of 502(h) Waivers

If you have any questions, please call.

Yours truly,

William Kaye



# William Kaye
**Managing Director**

## JLL Consultants, Inc.

31 Rose Lane
East Rockaway, New York 11518

Telephone  516.374.3705
Facsimile   516.569.6531
e-mail: billkaye@jllconsultants.com

William Kaye is the Managing Director of JLL Consultants, Inc., through which he acts as a bankruptcy/insolvency consultant in various capacities, primarily in connection with chapter 11 cases.  In addition to representing various clients on chapter 11 committees, Mr. Kaye also serves in various post-confirmation wind-down capacities.

***Current and Recent Chapter 11 and Post-Confirmation Assignments***

1. ***Assignments as Plan Administrator, Liquidating Trustee or Litigation Trustee***

   *ATA Airlines, Inc.* – US Bankruptcy Court, Indianapolis, IN.  Selected by Creditors' Committee to serve as Trustee of Unsecured Creditors Trust established pursuant to the confirmed First Amended Plan of the Debtor.

   *Avado Brand, Inc.* – US Bankruptcy Court, Dallas, TX.  Selected by Committee to serve as Litigation Trustee under Joint Plan of Reorganization.

   *Bonus Stores, Inc.* – US Bankruptcy Court, Wilmington, DE.  Selected by Committee as the Liquidating Trustee pursuant to confirmed Liquidating Chapter 11 Plan. Selected by Committee as the Liquidating Trustee pursuant to confirmed Liquidating Chapter 11 Plan.

   *BFW Liquidation, Inc. (Bruno's Supermarkets)* – US Bankruptcy Court, Birmingham, AL.

   *Chi-Chi's, Inc.* – US Bankruptcy Court, Wilmington, DE. Selected by Committee as the Liquidating Trustee pursuant to confirmed Liquidating Chapter 11 Plan.

   *Furr's Restaurant Group, Inc.* – US Bankruptcy Court, Dallas, TX. Designated by Committee as Trustee for the Liquidating Trust created pursuant to the Plan of Liquidation.

   *Gadzooks, Inc.* – Dallas, TX.  Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

   *Heartland Technology, Inc.* – US Bankruptcy Court, Chicago, IL.  Served as Plan Administrator upon emergence of company from Chapter 11.

   *Kiel Bros.* – US Bankruptcy Court, Indianapolis, IN.  Selected by Committee to serve as Liquidating Agent under confirmed Plan of Liquidation.

   *Movie Gallery, Inc. [Hollywood Video]* – US Bankruptcy Court, Richmond, VA.  Selected by Committee to serve as Litigation Trustee and Plan Administrator (relating to claims administration)

   *Murray, Inc.* – US Bankruptcy Court, Nashville, TN.  Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

   *Neumann Homes, Inc.* – US Bankruptcy Court, Chicago, IL.  Liquidating Trustee under confirmed Plan.

   *Nutritional Sourcing Corporation* – US Bankruptcy Court, Wilmington DE.  JLL Consultants, Inc. selected as Liquidating Trustee under confirmed Plan of Liquidation

   *Oceanaire Seafood Restaurants, Inc.* –  Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Reorganization.

   *One-to One Interactive, LLC* – US Bankruptcy Court, Boston, MA. Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

   *Recycled Paperboard, Inc.* – US Bankruptcy Court, Newark, NJ.  Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

   *United Artists Theatre Circuit, Inc.* – US Bankruptcy Court, Wilmington, DE. Selected by Committee and Debtor to serve as Plan Coordinator under Plan of Reorganization to handle preference recoveries and oversight responsibility for claims reconciliation and reduction process.

   *United Petroleum Corp.* – US Bankruptcy Court, Miami, FL.  Selected by Committee to be Liquidating Trustee under confirmed Plan of Liquidation.

   *Value Music, Inc.* – US Bankruptcy Court, Baltimore, MD. Selected by Committee to act post-confirmation to manage pursuit of Chapter 5 claims and make distribution to General Unsecured Creditors.

2. ***Chapter 11 Assignments as Restructuring Officer of Board Member***

   *Globe Manufacturing Corp.* – US Bankruptcy Court Tuscaloosa, AL.  Retained as Special Restructuring Officer during Chapter 11 Case.  After confirmation of the Plan, continued as Plan Administrator.

   *Heartland Technology, Inc.* – US Bankruptcy Court, Chicago, IL.  Retained as Chief Restructuring Officer (CRO) prior to filing of Chapter 11 Cases for a technology company.  Took company into Chapter 11 abd ontinued as CRO during case.

   *Neumann Homes, Inc.* – U.S Bankruptcy Court , Chicago, IL.  Elected as sole director of one of the largest home builders to file chapter 11.



**J L L Consultants, Inc.**

*Current and Recent Chapter 11 and Post-Confirmation Assignments, con't.*

3. **Assignments as Collateral Trustee Post-Effective Chapter 11 Cases**

*Factory Card Outlets, Inc.* – Collateral Agent under confirmed Plan of Reorganization for Secured Trade Creditor Program established under Plan.

*Friedman's Jewelry* – Collateral Agent under confirmed Plan of Reorganization for Secured Trade Creditor Program established under Plan.

*Kmart, Inc.* – Collateral Agent under confirmed Plan of Reorganization for Secured Trade Creditor Program established under Plan.

*Current and Recent Chapter 11 Committee Assignments in Major Cases*

AmeriKing, Inc. – USBC NY, NY.  Committee Chairman
AmeriServe Food Distribution Corp. – USBC, Wilmington, DE. Committee Chairman
AmeriStop, *et al.* – USBC, Cincinnati, OH.  Committee Co-Chairman
Ames Department Stores, Inc. – USBC New York, NY.  Alternate to Committee Co-Chairman
AMF Bowling Centers, Inc. – USBC, NY, NY. Committee Co-Chairman
Appalachian Oil Company, Inc. – USBC, Greenville, TN.  Committee Chairman
Avado Brand, Inc. – USBC Dallas, TX.  Committee Co-Chairman
Bashas', Inc. – US Bankruptcy Court, Phoenix, AZ. Committee Chairman
Big "A" Drug Stores, Inc. – USBC, Los Angeles, CA. Committee Member
Bonus Stores, Inc. – USBC, Wilmington, DE.  Committee Chairman
Brown & Cole Supermarkets – USBC, Seattle, WA.  Committee Chairman
Bruno's Supermarkets, Inc. – USBC, Birmingham, AL.  Committee Chairman
Buehler Foods, Inc. – USBC, Indianapolis, IN.  Committee Member
Buffets, Inc. – USBC, Wilmington, DE.  Committee Co-Chairman
Carmike Cinemas, Inc. – USBC, Wilmington, DE.  Committee Chairman
CCI of West Palm Beach  – USBC West Palm Beach, FL.  Committee Member
Chi-Chi's, Inc. – USBC, Wilmington, DE.  Committee Chairman
Clark Retail Group – USBC, Chicago, IL.  Committee Member
Commissary Operations, Inc. –  USBC, Nashville, TN. Committee Vice Chairman
Convenience USA, Inc. – USBC, Wilmington, DE.  Committee Chairman
Crescent Oil Co., Inc. – USBC, Kansas City, KS.  Committee Chairman
Delta Airlines, Inc. – USBC, New York, NY.  Committee Member
Eagle Food Centers, Inc. – USBC, Chicago, IL. Committee Chairman
Fas Mart Convenience Stores, Inc. – USBC, Richmond, VA.  Committee Chairman
Flying J Oil Co, Inc. – USBC, Wilmington, DE.  Committee Member
Furr's Restaurant Group, Inc. – USBC, Dallas, TX.  Committee Chairman
GC Companies [General Cinemas] – USBC, Wilmington, DE.  Committee Chairman
ICH Corp., Inc. – USBC, New York, NY. Committee Co-Chairman
Kiel Bros. Oil Co. – USBC Indianapolis, IN.  Committee Co-Chairman
Kmart – USBC, Chicago, IL.  Consultant to Committee Member
Lechters, Inc. – USBC, New York, NY.  Committee Co-Chairman
Loews Cineplex Theatre Co., Inc. – USBC, New York, NY.  Committee Chairman
Max & Erma's, Inc. – USBC, Pittburg, PA.  Committee Chairman
Movie Gallery, Inc. – USBC Richmond, VA.  Committee Chairman
Murray, Inc. – USBC, Nashville, TN.  Committee Chairman
Nutritional Sourcing Corporation – USBC, Wilmington DE.  Committee Member
Oceanaire Seafood Restaurants, Inc. – US Bankruptcy Court, Dallas, TX.  Committee Chairman
One-to-One Interactive – USBC, Boston, MA. Committee Chairman
Penn Traffic Company – Consultant to Committee Member and Alternate
Phar-Mor, Inc.  – USBC, Youngstown, OH.  Committee Co-Chairman
Piccadilly Cafeterias, Inc. – Committee Vice Chairman
Premier International Holdings, Inc. (Six Flags Amusement Parks) -  USBC New York, NY. Committee Co-Chair
]Roadhouse Grills, Inc., USBC West Palm Beach, FL – Committee Member
RSM BFS Partners (A *Burger King* franchisee) USBC, Santa Ana, CA Committee Chairman



J L L Consultants, Inc.

***Current and Recent Chapter 11 Committee Assignments in Major Cases, con't.***

Sam Seltzer's Streakhouses, Inc. – USBC, Tampa, FL.  Committee Chairman
Schlotzskys, Inc. – USBC, San Antonio, TX.  Committee Co-Chairman
Snyder's Drug Stores, Inc. / Drug Emporium, Inc. – USBC Youngstown, OH. Committee Member
Souper Salad, Inc. – Committee Co-Chairman
Southwest Waffles (a *Waffle House* Ffranchisee) – USBC, Nashville, TN.  Committee Chairman
Trans World Airlines, Inc. – USBC, Wilmington, DE.  Committee Chairman
Twin Cities Avanti, Inc. – USBC, Central Dist. of CA.  Committee Co-Chairman
U.S. Airways, Inc. – USBC, Alexandria, VA.  Alternate and consultant to Committee Member
United Air Lines, Inc. – USBC, Chicago, IL.  Committee Member
United Artists Theatre Circuit, Inc. – USBC, Wilmington, DE. Committee Chairman
US Airways Group, Inc. – USBC, Alexandria, VA.  Consultant and Alternate to Committee Member
Valu Food, Inc. – USBC, Baltimore, MD.  Committee Chairman
Value Music, Inc. – USBC, Atlanta, GA.  Committee Chairman
Vicorp, Inc. (vi Acquisition Corp.) – USBC, Wilmington, DE.  Committee Co-Chair
Wherehouse Entertainment, Inc. – USBC, Wilmington, DE.  Committee Member
Wherenberg Theatres, Inc. – USBC, St. Louis, MO.  Committee Chairman

***Assignments as Chairman or Member of Post-Confirmation Oversight Committees or Board of Directors of a Reorganized Debtor***

*AmeriServe Food Distribution Corp.* – US Bankruptcy Court, Wilmington, DE. Chairman of Creditors' Committee during the pendency of Chapter 11 Case.  Chairman of the Post-Confirmation Oversight Committee.

*Eagle Food Centers, Inc.* – US Bankruptcy Court, Chicago, IL.  Chairman of Creditors' Committee during pendency of Chapter 11 Case and then selected by Committee as the unsecured creditors' representative of the Company's post-emergence board of directors.

*GC Companies, Inc. (General Cinemas)* – US Bankruptcy Court, Wilmington, DE.  Chairman of Creditors Committee during the pendency of the Chapter 11 Case. Chairman of Post-Confirmation Oversight Committee.

*Phar-Mor, Inc.* – Member of Creditors' Committee during pendency of Chapter 11 Case.  Member, Post-Confirmation Oversight Committee.

*Schlotzskys, Inc.* - Chairman of Creditors' Committee during Chapter 11 Case.  Member of Post-Confirmation Oversight Committee.

*Trans World Airlines, Inc.* – US Bankruptcy Court, Wilmington, DE.  Chairman of Creditors' Committee during Chapter 11 Case.  Member of Post-Confirmation Oversight Committee.

*U.S. Airways, Inc.* – US Bankruptcy Court, Alexandria, VA.  Member of Creditors Committee during Chapter 11 Case. Member of Post-Confirmation Committee charged with review and recommendation on various issues including claims resolution and final fee application review.



### References

*Attorneys:*

Paul Aronzon, Milbank Tweed, Los Angeles, CA [Tel. 213. 892.4377]
Robert Feinstein, Esq. – Pachulski, Stang, Ziehl & Jones, NY, NY  [Tel. 212.624.9431]
Charles Gibbs, Esq. – Akin Gump Strauss Hauer & Feld, LLP, Dallas, TX [Tel. 214.969.4710]
Scott Hazan, Esq. – Otterbourg Steindler Houston & Rosen, NY, NY  [Tel. 212.661.9100]
Fred Hodara, Esq. – Akin Gump Strauss Hauer & Feld, LLP, NY, NY  [Tel. 212.872.8040]
James Carr, - Kelley, Drye & Warren, New York, NY [Tel. 212.808.7955]
William McKenna, Esq. – Foley & Lardner LLP, Chicago, IL [Tel. 312.832.4541]
Holland O'Neil, Esq. – Gardere Wynne Sewell LLP, Dallas, TX [Tel. 214.999.4961]
George Panagakis, Esq. – Skadden, Arps, Slate, Meagher & Flom, LLP, Chicago, IL [Tel. 312-3-407-0638
Keith Shapiro, Esq. – Greenberg Traurig, LLP, Chicago, IL [Tel. 312.456.8405]
James Sprayragen, Esq. – Kirkland & Ellis [312.862-2481]
Samuel Stricklin, Esq. – Bracewell & Giuliani, Dallas, TX [Tel. 214.758.1095]

*Financial Advisors:*

Michael Atkinson – PROTIVITI, Baltimore, MD [Tel. 410.454.6836]
Russ Belinski – Chanin Capital Partners, Los Angeles, CA  [Tel. 310.445.2511]
Michael Eisenband – FTI Financial Services, New York, NY  [Tel. 212.499.3647]
Irwin Gold – Houlihan Lokey Howard & Zubin, Los Angeles, CA  [Tel. 310.788.5337]
Lawrence Lattig – Mesirow Financial Consulting, Dallas, TX  [Tel. 214.954.1444]
Steven Sims – FTI Financial Services, New York, NY  [Tel. 212.841.9369]
Teri Stratton, CPA – Giuliani Capital Partners, Los Angeles, Ca [Tel. 213.977.4464]

*Clients:*

American Greetings Co. – Art Tuttle, Exec. Director, Retail Financial Services [Tel. 216.252.7300 ext 1635]
Buffalo Rock Company – Roger Barker, Chief Financial Officer [Tel. 205.912.2230]
Coca-Cola Enterprises, Inc. – Richard Stiteler, Credit Advisor [Tel. 813.569.3708]
Pepsi Bottling Group – Michael Bevilacqua, Senior Group Manager [Tel. 336.896.5577]
The Coca-Cola Company – John Lewis, Jr., Esq., Sr. Managing Attorney [Tel. 404.676.4016]