**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re

MAX & ERMA'S RESTAURANT, INC.,

    Debtor.

Case No. 09-27807-MBM

Chapter 11

**<u>FIRST AMENDED </u>JOINT CHAPTER 11 PLAN PROPOSED BY THE DEBTOR**
**AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**DATED ~~JULY 9,~~<u>AUGUST 18,</u> 2010**

**Submitted by:**

**LAW OFFICES OF ROBERT O. LAMPL**
Robert O. Lampl, Esq.
John P. Lacher, Esq.
Elsie R. Lampl, Esq.
960 Penn Avenue, Suite 1200      -and-
Pittsburgh, PA 15222
(412) 392-0330

*Counsel to the Debtor*

**MCGUIREWOODS, LLP**
Mark E. Freedlander, Esq.
Michael J. Roeschenthaler, Esq.
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
(412) 667-6000

*Counsel to the Official Committee*
*of Unsecured Creditors*

# TABLE OF CONTENTS

ARTICLE I        DEFINITIONS AND INTERPRETATION ...................................................... 1

ARTICLE II       ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ................................................................................................. 11

ARTICLE III      CLASSIFICATION OF CLAIMS AND INTERESTS ................................ 13

ARTICLE IV      TREATMENT OF CLAIMS AND EQUITY INTERESTS ......................... 14

ARTICLE V       PROVISIONS GOVERNING DISTRIBUTIONS ....................................... 17

ARTICLE VI      MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN ........................................................................................................ 19

ARTICLE VII     PROCEDURES FOR DISPUTED CLAIMS ................................................ 29

ARTICLE VIII    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................................................................................... 30

ARTICLE IX      CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN ...... 34

ARTICLE X       EFFECT OF CONFIRMATION ................................................................. 34

ARTICLE XI      RETENTION OF JURISDICTION ............................................................. 38

ARTICLE XII     CRAMDOWN RESERVATION .................................................................. 40

ARTICLE XIII    MISCELLANEOUS PROVISIONS ............................................................ 40

## INTRODUCTION AND SUMMARY OF PLAN[1]

Max & Erma's Restaurant, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), and the Official Committee of Unsecured Creditors (the "Committee", with the Debtor are the "Plan Proponents"), propose the following chapter 11 plan pursuant to section 1121(a) of title 11 of the United States Code.

## SUMMARY

The following summary is provided to you by the Plan Proponents for informational purposes only. The terms of the Plan control any inconsistencies between this summary and the Plan.

The Plan provides for the Sale of substantially all of the assets of the Debtor to Concept Development Partners, LLC (the "Purchaser") under the Plan.

If the Plan is confirmed, the Purchaser, which will be owned and controlled by ~~CIC II LP and CDP Management Partners~~**Fidelity Newport Holdings**, LLC, will acquire substantially all of the Debtor's assets and manage more than 75% of the company-owned stores. The Sale consideration includes the following: (a) Purchaser's Cash payment of approximately $~~14.75~~**17.10** million, including credit for the Deposit (subject to potential adjustment for the Working Capital Adjustment Amount and/or Allowed Cure Claims relating to Acquired Contracts; (b) Purchaser's assumption and payment of Allowed Cure Claims relating to Unexpired Leases up to the amounts set forth on Schedule 2.3 to the **Restated Purchase** Agreement and ~~up to $90,000 relating to~~ Executory Contracts that are Acquired Contracts; (c) Purchaser's assumption of Gift Card Claims no more than $2.5 million; (d) Purchaser's assumption and installment payment of Allowed Priority Tax Claims not otherwise provided for in the Plan and Allowed Secured **funding of an escrow in the amount of $2.6 million (the "Priority Tax Escrow")[2] for payment of** Personal Property Tax Claims relating to Acquired Assets, which shall not exceed $~~2,507,926~~**2.6 million** in the aggregate plus statutory post-Effective Date interest; (e) Purchaser's ~~issuance~~**payment** of the M&E Trust ~~Note~~**Cash Consideration** to the M&E Trust in the ~~original principal~~ amount of $~~2.5 million (subject, however, to potential adjustment for the Working Capital Adjustment Amount and/or Cure Claims relating to Acquired Contracts that exceed limits as Assumed Liabilities~~**2.0 million**; and (f) Purchaser's assumption and payment in the ordinary course of Allowed Administrative Expense Claims excluding Retained Administrative Expense Claims~~. The source of payment for the M&E Trust Note will be the operating revenues of Max & Erma's restaurants owned and operated by the Purchaser.~~

The Plan provides for payment in full of all Allowed Claims other than potentially Class 1 Claims, Allowed Class 5 Claims and Claims of Insiders. The holders of subordinated General Unsecured Claims and the holders of Equity Interests will not receive any distributions under the

---

[1] All Capitalized terms not otherwise defined in this Summary shall have the meaning ascribed to them in the Article I of the Plan or the Agreement.

**[2] Priority Tax Escrow is the first source of payment for these Allowed Claims. If the Priority Tax Escrow is not sufficient to pay such Allowed Claims, then the M&E Trust will pay the balance of the Allowed amount of such Claims.**

Plan.  The Claims of Insiders are Disputed Claims.  All Equity Interests will be cancelled without further action by the Debtor on the termination date of the ~~Transition~~**Management** Agreement.

## <u>NOTICE OF IMPORTANT PLAN DATES AND DEADLINES</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING DATES AS THEY PERTAIN TO THIS <u>FIRST AMENDED</u> JOINT CHAPTER 11 PLAN PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED ~~JULY 9,~~<u>AUGUST 18,</u> 2010 (THE "<u>PLAN</u>") AND THE DISCLOSURE STATEMENT TO ACCOMPANY THE JOINT CHAPTER 11 PLAN PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED JULY 9, 2010 (THE "<u>DISCLOSURE STATEMENT</u>").**

The Disclosure Statement was approved on an interim basis as containing adequate information by order of the Bankruptcy Court dated July ~~___,~~<u>12,</u> 2010.  In connection with interim approval of the Disclosure Statement by the Bankruptcy Court, the Bankruptcy Court entered a scheduling order relating to final approval of the Disclosure Statement and Confirmation of the Plan (the "<u>Scheduling Order</u>").   The Scheduling Order establishes ~~___:___ __.m. (EST) on~~ August ~~___,~~<u>12,</u> 2010 as the deadline for filing objections to the Disclosure Statement and/or Plan and <u>**August 11, 2010 for**</u> submitting ballots to accept or reject the Plan.

Ballots should be submitted to the following address:

> **MCGUIREWOODS LLP**
> Attention:  Michael J. Roeschenthaler
> 625 Liberty Avenue, 23rd Floor
> Pittsburgh, PA  15222
> Facsimile:  (412) 667-6050

# ARTICLE I
## DEFINITIONS AND INTERPRETATION

**DEFINITIONS.**   The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

      **1.1**    **Acquired Assets** mean substantially all assets of the Debtor**, as defined in Section 2.1 of the Restated Purchase Agreement,** other than the Excluded Assets.  Acquired Assets will be sold, transferred and conveyed by the Debtor to the Purchaser pursuant to the **Restated Purchase** Agreement and the Plan on the Effective Date.

      **1.2**    **Administrative Expense Claim** means a Claim constituting a cost or expense of administration of the Case allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate; any actual and necessary costs and expenses of operating the Debtor's business; any indebtedness or obligations incurred or assumed by the Debtor, as a debtor-in-possession, during the Case other than Retained Administrative Expense Claims.

      **1.3**    **Affiliate** has the meaning set forth in section 101(2) of the Bankruptcy Code.

      **1.4**    **Agent** means PNC Bank, as successor agent under the Pre-Petition Lender Note.

      ~~**1.5**~~    ~~**Agreement** means the Asset Purchase Agreement between the Debtor and Purchaser pursuant to which it is contemplated that Purchaser will acquire substantially all of the Debtor's assets other than Excluded Assets.  The Agreement is attached to the Plan as Exhibit 1.~~

      **1.5**    ~~**1.6**~~**Allowed** means, with reference to any Claim except as otherwise provided in the Plan, (i) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

      **1.6**    ~~**1.7**~~**Assumed Liabilities** means those liabilities and obligations of Seller assumed by the Purchaser pursuant to Section 2.3 of the **Restated Purchase** Agreement and in accordance with Schedule 2.3 of the **Restated Purchase** Agreement and pursuant to the Plan.

      **1.7**    ~~**1.8**~~**Avoidance Actions** means any avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

**1.8** ~~1.9~~ **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to this Case.

**1.9** ~~1.10~~ **Bankruptcy Court** means the United States District Court for the Western District of Pennsylvania, having jurisdiction over this Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the District Court having jurisdiction over this Case under section 151 of title 28 of the United States Code.

**1.10** ~~1.11~~ **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to this Case, and any Local Rules of the Bankruptcy Court.

**1.11** ~~1.12~~ **Bar Date** as applicable, (a) March 30, 2010 (unless otherwise stated herein), (b) the Government Bar Date, or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing Claims.

**1.12** ~~1.13~~ **Beneficiaries** mean all Persons with Allowed Claims entitled to receive distributions from the M&E Trust pursuant to the Plan and the M&E Trust Agreement.

**1.13** ~~1.14~~ **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in Pittsburgh, Pennsylvania are required or authorized to close by law or executive order.

**1.14** ~~1.15~~ **Case** means the within captioned chapter 11 bankruptcy case, case no. 07-24256, filed on the Petition Date.

**1.15** ~~1.16~~ **Cash** means legal tender of the United States of America and all Cash equivalents.

**1.16** ~~1.17~~ **Causes of Action** mean any and all Claims, motions, causes of action, choses of action, suits, debts, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, remedies, rights of setoff, third party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counter-claims and crossclaims (including all claims and any avoidance, recovery, subordination or other actions against Insiders and/or any other Persons under the Bankruptcy Code, including Avoidance Actions) of the Debtor, the debtor-in-possession and/or the Estate, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or instituted by the M&E Trust after the Effective Date against any Person, based in law or in equity, including under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order. Causes of Action shall not include any contractual rights of subordination, guarantees or judgments held by the Pre-Petition Lenders.

**1.17** ~~1.18~~ **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

2

**1.18** ~~1.19~~ **Claims Register** means the official list maintained by the Bankruptcy Court listing all Proofs of Claim filed in the Case.

**1.19** ~~1.20~~ **Class** means any group of Claims or Equity Interests classified by the Plan in accordance with section 1122 of the Bankruptcy Code.

**1.20** ~~1.21~~ **Collateral** means any property or interest in property of the Estate subject to a lien, charge, interest or other encumbrance to secure the payment or performance of a Claim, which lien, charge, interest or other encumbrance is ultimately not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law.

**1.21** ~~1.22~~ **Committee** means the statutory committee of unsecured creditors appointed by the Office of the United States Trustee in this Case pursuant to section 1102 of the Bankruptcy Code on November 9, ~~2010.~~**2009.**

**1.22** ~~1.23~~ **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.23** ~~1.24~~ **Consolidated Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding final approval of the Disclosure Statement and confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.24** ~~1.25~~ **Confirmation Order** means the order of the Bankruptcy Court approving the Disclosure Statement on a final basis and confirming the Plan and approving the **Restated Purchase** Agreement pursuant to section 1129 of the Bankruptcy Code.

**1.25** ~~1.26~~ **Credit Card Rights** mean all Claims of the Debtor against its merchant bank for authorized credit card or debit card sales occurring at the Debtor's stores prior to the Effective Date for which the Debtor's merchant bank has not remitted payment to the Debtor.

**1.26** ~~1.27~~ **Cure** means a Claim for all unpaid monetary obligations, or other amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed (or assumed and assigned) by the Debtor pursuant to section 365 of the Bankruptcy Code or the Plan.

**1.27** ~~1.28~~ **Cure Claim** means a Claim for a Cure, which must be asserted in accordance with Section 8.2 of the Plan, by each alleged holder of such a Claim that does not agree with the respective amounts listed in <u>Schedule 2.3</u> of the **Restated Purchase** Agreement.

**1.28** ~~1.29~~ **Debtor** means Max & Erma's Restaurants, Inc.

**1.29** ~~1.30~~ **Disallowed Claim** means a Claim, or any portion thereof, that (a) is scheduled at zero or as contingent, unliquidated or disputed and as to which a Bar Date has been established but no Proof of Claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; (b) is not scheduled and as to which a Bar Date has been established but no proof of Claim has been filed or deemed timely filed with the

3

Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (c) has been disallowed by a Final Order.

**1.30** ~~1.31~~ **Disclosure Statement** means the disclosure statement relating to the Plan, including, without limitation, all exhibits, schedules and attachments thereto, as modified and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.31** ~~1.32~~ **Disputed** means, with respect to any Claim which has not been Allowed pursuant to the Plan or a Final Order:

(a) if no Proof of Claim has been filed by the applicable Bar Date: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b) if a Proof of Claim or request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtor, which has not been withdrawn or determined by a Final Order.

**1.32** ~~1.33~~ **Disputed Claim Amount** means (i) the amount set forth in the Proof of Claim relating to a Claim that is Disputed; (ii) an amount estimated pursuant to an order of the Bankruptcy Court regarding a Claim that is Disputed in accordance with section 502(a) of the Bankruptcy Code and Bankruptcy Rule 3018; or (iii) the amount of a Claim as listed on the Schedules for which an objection has been interposed.

**1.33** ~~1.34~~ **Disputed Claim Reserve** shall have the meaning set forth in section 7.3 hereof.

**1.34** ~~1.35~~ **Effective Date** means the Closing Date, a Business Day on or after the Confirmation Date specified by the Plan Proponents on which (i) no stay of the Confirmation Order is in effect, (ii) the conditions to the effectiveness of the Plan specified in section 9.1 of the Plan have been satisfied or waived, (and, if applicable, provided that the stay imposed by Bankruptcy Rule 3020(e) has been waived by the Bankruptcy Court), (iii) the conditions precedent under Section 8.1 and 8.2 of the **Restated Purchase** Agreement have been satisfied or waived by the applicable party, but in no event later than August 31, 2010, or such later date as agreed to in writing by Debtor, Purchaser, Committee and the Agent.

~~\12851557.3~~
\12851557.9

**1.35** ~~1.36~~ **Entity** means an entity as described in section 101(15) of the Bankruptcy Code.

**1.36** ~~1.37~~ **Equity Security** has the meaning set forth in section 101(16) of the Bankruptcy Code.

**1.37** ~~1.38~~ **Estate** means the bankruptcy estate of Max & Erma's Restaurants, Inc. in this Case pursuant to section 541 of the Bankruptcy Code.

**1.38** ~~1.39~~ **Excluded Assets** mean those assets of the Estate not subject to acquisition by the Purchaser under ~~the~~**Section 2.2 of the Restated Purchase** Agreement, including (i) the Tax Refund; (ii) all Avoidance Actions; (iii) all Claims or Causes of Action against Insiders, including Claims against Insurance Policies; (iv) all Claims or Causes of Action relating to Excluded Assets; (v) all subrogation rights of the Debtor; (~~vii) Liquor Licenses~~**vi) all corporate seals, minute books, charter documents, stock transfer records, record books, original Tax and financial records and such other files, books and records relating to any of the Excluded Assets or to the organization, existence or capitalization of the Debtor or of any other Person; (vii) Liquor Licenses and permits** relating to stores that are not Purchased Stores; (~~vii~~**viii**) contracts or leases that are not Acquired Contracts (as defined in the **Restated Purchase** Agreement); ~~and (ix) personal property of the Debtor that is situated at restaurants that are not Purchased Stores~~**(ix) insurance receivables for closed stores; and (x) account receivables from G&R Management Company**.

**1.39** ~~1.40~~ **Exculpated Parties** means (a) members of the Committee, their agents and representatives, (b) William Niegsch, (c) Alvarez & Marsal (including but not limited to Mark A. Roberts and Jonathan Tibus), (d) William Blair and Company, (e) the Law Offices of Robert O. Lampl, (f) McGuireWoods LLP, and (g) Walker Nell Partners, Inc. and representatives of each of the foregoing Persons and Entities.

**1.40** ~~1.41~~ **Final Cash Collateral Order** means the Final Agreed Order Authorizing Max & Erma's Restaurant, Inc.'s Limited Use of Cash Collateral and Granting Adequate Protection to Existing Lienholders dated February 16, 2010, and supported by order of the Bankruptcy Court dated April 5, 2010 and June 8, 2010, respectively, and as may be further amended or modified from time to time.

**1.41** ~~1.42~~ **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Case that has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

5

**1.42** ~~1.43~~ **General Unsecured Claim** means any Claim against the Debtor that is (i) not a Secured Claim, Administrative Expense Claim, Priority Tax Claim or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.43** ~~1.44~~ **Gift Card Claim** means any Claim of a Person arising from the redemption of a valid gift card, valid gift certificate or valid promotional code redeemable at the Debtor's businesses.

**1.44** ~~1.45~~ **Government Bar Date** means April 21, 2010.

**1.45** ~~1.46~~ **Governmental Unit** has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.46** ~~1.47~~ **Impaired** has the meaning set forth in section 1124 of the Bankruptcy Code.

**1.47** ~~1.48~~ **Initial M&E Trust Pre-Petition Lender Payment** means seventy five (75%) percent of the first $1.3 million distributed to Beneficiaries of the M&E Trust.

**1.48** ~~1.49~~ **Initial Pre-Petition Lender Payment** means $12.0 million payable from proceeds of Sale on the Effective Date to PNC Bank as Agent.

**1.49** ~~1.50~~ **Insider** has the meaning set forth in section 101(31) of the Bankruptcy Code.

**1.50** ~~1.51~~ **Insurance Claim** means any Claim against the Debtor to the extent it may be covered and payable under any Insurance Policy.

**1.51** ~~1.52~~ **Insurance Policy** means any policy of insurance and agreements relating thereto covering the Debtor and its assets or that may be available to provide coverage for, among other things, Claims against the Debtor, its officers and its directors.

**1.52** ~~1.53~~ **Insurer** means any entity that has issued an Insurance Policy covering the Debtor or providing coverage that may be available for, among other things, Claims against the Debtor, its officers and directors.

**1.53** ~~1.54~~ **Interest** means any Equity Security of the Debtor existing immediately prior to the Effective Date.

**1.54** ~~1.55~~ **Interim Compensation Order** shall mean the Order establishing procedures for interim compensation and reimbursement of expenses of professionals, entered by the Bankruptcy Court on March 10, 2010 [Docket No. 439].

**1.55** ~~1.56~~ **Lien** means a judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section 101(51) of the Bankruptcy Code; a statutory lien as defined in section 101(53) of the Bankruptcy Code; and any other lien, interest, charge or encumbrance.

~~\12851557.3~~
**\12851557.9**

**1.56** ~~1.57~~ **Liquidation Expense Reserve Account** means the bank account or investment(s) established pursuant to the Plan, the M&E Trust Agreement and the M&E Trustee to pay and reserve for all reasonable costs, expenses and fees incurred in connection with administering the M&E Trust and the M&E Trust Assets.

**1.57** ~~1.58~~ **Liquor Licenses** means those licenses or permits authorizing the Debtor to sell alcoholic beverages which relate to Purchased Stores~~.~~.

**1.58** **Management Agreement has the meaning ascribed to it in the Restated Asset Purchase Agreement.**

**1.59** **M&E Trust** means the trust established pursuant to section 6.2 of the Plan into which the M&E Trust Assets will be transferred on the Effective Date and which will be formed and administered in accordance with the M&E Trust Agreement.

**1.60** **M&E Trust Agreement** means the agreement included in the Plan Supplement as Exhibit A that will govern the M&E Trust.

**1.61** **M&E Trust Assets** mean all Excluded Assets, the M&E Trust ~~Note~~**Cash Consideration** and all rights and interest to the Judgment.

**1.62** **M&E Trust Unsecured Payment** means twenty five (25%) percent of the first $1.3 million distributed to Beneficiaries of the M&E Trust.

**1.63** **M&E Trustee** means JLL Consultants, the Person selected pursuant to section 6.2(a)(iv) of the Plan to serve as the trustee of the M&E Trust, appointed in accordance with the M&E Trust Agreement and subject to Bankruptcy Court approval.

**1.64** **M&E Trust Note** ~~means the unsecured promissory note to be issued by the Purchaser to the M&E Trust on the Closing Date for the benefit of unsecured creditors in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) with a maturity date of thirty-nine (39) months from the Closing Date, with no amortization of principal for the first four (4) quarters and equal quarterly principal amortization payments beginning in the fifth quarter after Closing Date of one hundred and twenty five thousand dollars ($125,000) with the balance due on the maturity date and bearing a simple interest rate of five percent (5%) per annum to be paid quarterly commencing in the first quarter after the Closing Date on the then outstanding principal balance. The M&E Trust Note will be expressly subordinated to up to no more than $12.0 million of debt financing of the Purchaser (anticipated to be a senior term loan and revolving credit facility at Closing), provided, however, that terms and conditions of subordination relating to the M&E Trust Note authorize (a) quarterly amortization payments in arrears of principal and quarterly payments of interest in accordance with the terms of the M&E Trust Note, and (b) payment of all outstanding amounts under the M&E Trust Note at maturity of the M&E Trust Note, each subject to the terms of customary intercreditor agreements and the requirement that there is not default that is not waived or subject to forbearance under the contemplated debt financing. The M&E Trust Note will be substantially in the form included in the Plan Supplement as Exhibit B.~~**Cash Consideration means $2.0 million.**

7

**1.65    Order for Relief** means the commencement of the Case on the Petition Date in accordance with section 301(b) of the Bankruptcy Code.

**1.66    Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.67    Petition Date** means October 23, 2009.

**1.68    Plan** means this chapter 11 plan, including exhibits, schedules, supplements and/or attachments annexed hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the terms hereof.

**1.69    Plan Proponents** mean the Debtor and the Committee, collectively, as the parties proposing the Plan.

**1.70    Plan Supplement** means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan, to be field with the Bankruptcy Court by the Plan Proponents, and as may be amended prior to the Effective Date.

**1.71    PNC Bank** means PNC Bank, National Association, successor by merger to National City Bank.

**1.72    Post-Petition** means the period commencing on the entry of the Order for Relief and continuing through the Effective Date.

**1.73    Post-Confirmation Order and Notice** means the Post-Confirmation Order and Notice entered by the Bankruptcy Court following the entry of the Confirmation Order.

**1.74    Pre-Petition** means the period of time before the entry of the Order for Relief.

**1.75    Pre-Petition Bank Debt** means the indebtedness owed by the Debtor to the Prepetition Lenders as of the Petition Date on account of the Pre-Petition Lender Note in the approximate amount of $16.282 million plus costs and expenses through the Effective Date.

**1.76    Pre-Petition Lender Note** means that certain note, as amended, with all related loan documentation evidencing the Pre-Petition Bank Debt.

**1.77    Prepetition Lenders** mean PNC Bank, as successor by merger to National City Bank, The Huntington National Bank and Park National Bank.

**1.78    Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**<u>1.79    Priority Tax Escrow means an escrow account in a form and substance acceptable to Purchaser and the M&E Trust in the total amount of $2.6 million funded by Purchaser on the Closing Date which shall be used to pay Seller's pre-petition tax liabilities entitled to priority under the Bankruptcy Code.</u>**

\12851557.3
\12851557.9

**1.80**  ~~1.79~~ **Pro Rata** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.81**  ~~1.80~~ **Professional Claim** means a Claim by a (i) non-Lender Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, and 503(b)(2-5) of the Bankruptcy Code; or (ii) a Lender Professional submitting invoices for services rendered or costs incurred.

**1.82**  ~~1.81~~ **Professional Compensation** means all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date to the extent that any such fees and expenses have not been paid.

**1.83**  ~~1.82~~ **Professionals** mean any (i) Bankruptcy Court-approved professional person employed by the applicable entity in this Case at any time before the Confirmation Date; and (ii) the professionals engaged by the Agent in connection with the Plan and the payment of the Pre-Petition Bank Debt ("Lender Professionals").

**1.84**  ~~1.83~~ **Proof of Claim** means a proof of Claim filed against the Debtor in this Case.

**1.85**  ~~1.84~~ **Purchased Stores** means the Debtor's restaurant locations to be acquired by Purchaser on the Effective Date pursuant to the **Restated Purchase** Agreement and specifically identified in Schedule 1.1. to the **Restated Purchase** Agreement and subject to change at Purchaser's sole discretion in accordance with Section 2.1(g) of the **Restated Purchase** Agreement, subject to the final determination by the Bankruptcy Court, prior to entry of the Continuation Order, of the Cure Cost associated with any Unexpired Lease for such restaurant location to be assumed by the Debtor and assigned to the Purchaser which determination, if not acceptable to the Purchaser, shall entitle the Purchaser to elect not to acquire such restaurant location, which shall not reduce the Purchase Price.

**1.86**  ~~1.85~~ **Purchaser** means ~~Concept Development Partners~~**Fidelity Newport Holdings**, LLC, a Delaware limited liability company, the buyer of Acquired Assets under the **Restated Purchase** Agreement.

**1.87**  ~~1.86~~ **Reinert Entities** mean any entity or company owned directly, indirectly or partly by, associated/affiliated with, or controlled directly, indirectly or partly by Gary L. Reinert, Sr., other than the Debtor.

**1.88**  ~~1.87~~ **Released Pre-Petition Lender Parties** mean the Pre-Petition Lenders and their respective agents, professionals, employees and representatives.

**1.89**  ~~1.88~~ **Reserve Income** means the interest earned on all funds maintained in the Disputed Claim Reserve on account of a Claim that is Disputed prior to the distribution of such

~~\12851557.3~~
\12851557.9

funds (based upon the average rate of interest earned on all accounts and investments in which the Disputed Claim Reserve are invested as estimated by the M&E Trustee).

**1.90** ~~1.89~~ **Responsible Distribution Agent** means the respective Persons responsible for making distributions under the Plan, as identified in section 5.2 of the Plan.

**1.91** **Restated Purchase Agreement** means the Asset Purchase Agreement between the Debtor and Purchaser pursuant to which it is contemplated that Purchaser will acquire substantially all of the Debtor's assets other than Excluded Assets.  The **Restated Purchase Agreement is attached to the Plan as Exhibit 1.**

**1.92** ~~1.90~~ **Retained Administrative Expense Claims** means Professional Claims, Section 503(b)(9) Claims and fees payable in the Case under 28 U.S.C. § 1930.

**1.93** ~~1.91~~ **Sale** means the sale of the Acquired Assets.

**1.94** ~~1.92~~ **Sale Documents** means the **Restated Purchase** Agreement, the Plan and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their respective terms.

**1.95** ~~1.93~~ **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time through the Effective Date.

**1.96** ~~1.94~~ **Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtor, or (c) as determined by a Final Order in accordance with section 506 of the Bankruptcy Code; or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.97** ~~1.95~~ **Seller** means the Debtor, Max & Erma's Restaurant, Inc.

**1.98** ~~1.96~~ **Subsequent M&E Trust Pre-Petition Lender Payments** means distributions to the Agent of sixty (60%) of every dollar distributed to Beneficiaries by the M&E Trust after the first $1.3 million distributed to Beneficiaries by the M&E Trust, until such time as the Pre-Petition Bank Debt has been paid in full.

**1.99** ~~1.97~~ **Subsequent M&E Trust Unsecured Payments** means distributions to Beneficiaries that are not Prepetition Lenders of forty (40%) percent of every dollar distributed by the M&E Trust after the first $1.3 million distributed to Beneficiaries by the M&E Trust, until such time the Pre-Petition Bank Debt is paid in full, and then 100% of each dollar distributed to Beneficiaries by the M&E Trust.

**1.100** ~~1.98~~ **Tax Code** means title 26 of the United States Code, as amended from time to time.

\12851557.3
\12851557.9

**1.101** ~~1.99~~ **Tax Refund** means approximately $1,300,000 refund from the Internal Revenue Service attributable to the Debtor's 2009 tax year held in a segregated account by the Debtor and which is an Excluded Asset.

~~**1.100 Transition Agreement** means an agreement between Purchaser and Seller, in a form that is reasonably acceptable to Purchaser, Seller and the Committee, that will enable the Purchaser to operate the Acquired Assets after Closing in the ordinary course of business, including the uninterrupted authority to sell alcoholic beverages in the Purchased Stores pending the transfer of the Permits to, or acquisition of new Permits by, Purchaser and that will provide, among other things, that (a) the Purchaser will bear the expenses of obtaining and will use commercially reasonable efforts to promptly obtain the Liquor Licenses that are required for the operation of the Purchased Stores after Closing, (b) the Seller will continue to perform such services as are necessary for the continued sale of alcohol in the Purchased Stores, (c) the Seller and the Purchaser will equally share (50/50) the Seller's incremental expenses directly related to Seller's performance of its obligations under the Transition Agreement during the term of the Transition Agreement, provided that the Purchaser's share of such expenses shall not exceed $100,000 (in other words, Seller shall bear 100% of such expenses in excess of the aggregate amount of $200,000), and (d) the term of the Transition Agreement will extend until Purchaser has acquired all Liquor Licenses that are necessary for the operation of the Purchased Stores in the ordinary course and consistent with past practices. For the avoidance of doubt, if all the assets of the Seller other than its liquor licenses are transferred to a liquidating trust immediately after the Closing, then the incremental expenses of the Seller referenced in the preceding sentence will be just the expenses to maintain the Seller to the minimum extent necessary to preserve such Liquor Licenses and comply with its obligations under the Transition Agreement and applicable law. The Transition Agreement will be substantially in the form of Exhibit D to the Plan Supplement.~~

**1.102** ~~1.101~~ **Unclaimed Distribution** means any distribution under the Plan on account of an Allowed Claim or Interest to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Purchaser or the M&E Trustee, as applicable, of an intent to accept a particular distribution; (c) responded to the Debtor's, or the M&E Trustee's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

**1.103** ~~1.102~~ **Voting Class** means a Class of Creditors designated in Article III of the Plan as being entitled to Vote.

## INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or

11

substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code apply; and (h) any term used in capitalized form herein or the **Restated Purchase** Agreement that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

The provisions of Bankruptcy Rule 9006(a) will apply in computing any period of time prescribed or allowed pursuant to the Plan.

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder will be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws thereof.

## ARTICLE II
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims identified in Article III of the Plan. Claims treated under Article II of the Plan are not Claims subject to classification and are not Voting Claims.

**2.1** **Administrative Expense Claims.** Other than Retained Administrative Expense Claims and Cure Claims and except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment or as otherwise expressly provided for in the Plan, the Purchaser will on the Effective Date assume all current and not materially past due (of which the Debtor submits there are none) Administrative Expense Claims and pay each holder of an Allowed Administrative Expense Claim in Cash in the ordinary course as and when they become due. Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor or Purchaser, as applicable, each holder of an Allowed Administrative Claim (other than of a Professional Claim) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (a) in the ordinary course following the Effective Date, or (b) if the Administrative Claim is not Allowed as of the Effective Date, within thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter. The M&E Trust will pay Retained Administrative Expense Claims as soon as practicable after the Effective Date once such Claims are Allowed.

(a) **Administrative Expense Claim Bar Date.** All requests for allowance and payment of Administrative Expense Claims other than Cure Claims, but including Claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code ("Section 503(b)(9) Claims"), must be filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules within Forty-Five (45) days after entry of the Post-Confirmation Order and Notice. Administrative Expense Claims that are not timely filed will be disallowed automatically and deemed forever barred, estopped, and enjoined from assertion, and without the need for any objection by the Purchaser or the M&E Trustee or any further notice to or action, order, or approval of the Bankruptcy Court, and are not enforceable against the Purchaser or the M&E Trust, as the case may be.

2.2     **Section 503(b)(9) Claims**. The holders of Allowed Section 503(b)(9) Claims will be paid in full by the M&E Trustee in Cash within twenty (20) days after the date on which an order Allowing any Section 503(b)(9) Claim becomes a Final Order, or as soon as reasonably practicable thereafter. Section 503(b)(9) Claims are not Administrative Expense Claims to be assumed by the Purchaser on the Effective Date. Section 503(b)(9) Claims are Retained Administrative Expense Claims.

2.3     **Compensation and Reimbursement Claims**. All Professionals or other Persons seeking Bankruptcy Court approval of Professional Compensation incurred through and including the Effective Date, other than Lender Professionals, must file, where applicable, their respective final applications for allowance of Professional Compensation within thirty days following the Effective Date; and Allowed Professional Claims be paid in full by the M&E Trustee on the date when the order relating to any such Administrative Expense Claim is a Final Order, or on such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the M&E Trustee. Lender Professional Claims are to be submitted to the M&E Trust for consideration and payment. Professional Claims for Professional Compensation are not Administrative Expense Claims to be assumed by Purchaser on the Effective Date. Allowed Claims for Professional Compensation are Retained Administrative Expense Claims.

2.4     **Priority Tax Claims**. Allowed Priority Tax Claims will be paid in full in Cash, ~~including statutory interest by the Purchaser in equal monthly installments commencing in the first full month following the Effective Date such that Allowed Priority Tax Claims will be paid in sixty (60) months from the Effective Date. The Purchaser may, in its sole discretion, at any time, pre-pay Allowed Priority Tax Claims. In the event of objection by a holder of a Priority Tax Claim to the treatment of Allowed Priority Tax Claims under section 2.4 of the Plan, Purchaser and the applicable objecting holder of a Priority Tax Claim will reach agreement on acceptable treatment of such Priority Tax Claim prior to the Effective Date. Notwithstanding the foregoing, the ability of Purchaser to reach an agreement on payment terms with holders of Allowed Priority Tax Claims shall be a condition precedent to the Effective Date. The deferred payment of Priority Tax Claims shall not serve as a basis for the prohibition of transfers of Liquor Licenses from Debtor to Purchaser.~~**as soon as practicable after each such Claim becomes an Allowed Claim. The source of payment will be the Priority Tax Escrow does not hold sufficient funds to pay all such Allowed Claims, in which event the source of**

13

**payment will be the M&E Trust (for purposes of clarity, the M&E Trust will pay the difference, if any, between the aggregate Allowed amount of Priority Tax Claims and $2.6 million).**

**2.5    Fees Under 28 U.S.C. § 1930**.  All fees payable in the Case under 28 U.S.C. § 1930, as agreed by the Debtor or as determined by the Bankruptcy Court, will, if not previously paid, be paid in full in Cash on the Effective Date and will continue to be paid by the M&E Trust as required under 28 U.S.C. § 1930 until such time as an order is entered by the Bankruptcy Court closing the Case.  Fees referred to in this section 2.5 are Retained Administrative Expense Claims except to the extent that Purchaser is required to make contributions pursuant to the ~~Transition~~**Management** Agreement.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) Impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Secured Lender Claims | Impaired | Yes |
| Class 2 | Secured Personal Property Tax Claims | Impaired | Yes |
| Class 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Priority Gift Card Claims | Unimpaired | No (deemed to accept) |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Subordinated Unsecured Claims | Impaired | No (deemed to reject) |
| Class 7 | Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1    Class 1 – Secured Lender Claims**.

*Impairment and Voting.*  Class 1 is Impaired under the Plan and each holder of a Class 1 Claim is entitled to vote to accept or reject the Plan.

*Treatment.*  Class 1 consists of Claims of the holders of Pre-Petition Bank Debt.  On the Effective Date, the Agent will be paid the Initial Pre-Petition Lender Payment.  ~~At~~**Upon the earlier of (a) the Final Closing under the Restated Purchase Agreement or (b)** the time of the first distribution by the M&E Trust to Beneficiaries, PNC Bank, in its capacity as Agent, will be paid at least the Initial M&E Trust Pre-Petition Lender Payment ~~as soon as practical~~**if not**

14

**sooner**.  To the extent that the Final Adjustment Statement, as such term is defined in section 3.3.d of the **Restated Purchase** Agreement, reflects an overpayment by the Purchaser at closing, thus requiring the payment of an adjustment amount by the M&E Trust to Purchaser, the adjustment amount will be funded by the M&E Trust in the following order of priority:  the first $3,075,000 disbursed will reduce the general cash fund of the M&E Trust.  If the adjustment exceeds $3,075,000, then an additional sum equal to the lesser of $950,000 or the difference between $950,000 and the amount approved by the Bankruptcy Court for payment to Professionals for services provided prior to the Effective Date, will be disbursed to the Purchaser from a separate account which will hold $950,000 for the benefit of the Agent ("**"Agent Account""**").  As soon as practical after payment of the amount that the M&E Trust is required to pay pursuant to the Final Adjustment Statement, if any, the funds held in the Agent Account will be distributed **to the Agent on account of the Prepetition Bank Debt**.  If funds in the M&E Trust general account are not sufficient to pay approved Professional fees incurred prior to the Effective Date, such amounts due may be paid from Agent Account.  Any funds remaining in the Agent Account after payment of the Approved professional fees incurred prior to the Effective Date will be paid to the Agent **on account of the Prepetition Bank Debt**.  With respect to all other distributions to Beneficiaries by the M&E Trust, until such time as the Pre-Petition Bank Debt is paid in full, PNC Bank, in its capacity as Agent, will be paid Subsequent M&E Trust Pre-Petition Lender Payments.  All contractual rights of subordination, guarantees and judgments granted to Agent will remain in effect and not be altered or impaired in any manner by this Plan before or after the Effective Date.  Judgments of the Agent against Persons (including, without limitation, Insiders), to the extent collected, will be applied by Agent to the outstanding balance of the Pre-Petition Bank Debt, after payment of fees and costs associated with collection of the judgments.

**4.2**    **Class 2 – Secured Personal Property Tax Claims**.

*Impairment and Voting.*  Class 2 is Impaired under the Plan and each holder of a Class 2 Claim is entitled to vote to accept or reject the Plan.

*Treatment.*  Except to the extent that a holder of an Allowed Class 2 Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of Allowed Class 2 Claims, such Claim will, ~~at Purchaser's election, either be~~ **treated in the same manner as Claims in section 2.4 of the Plan**:

      ~~(a)    be paid Cash by Purchaser on the Effective Date in an amount equal to such Allowed Class 2 Claim; or~~

      ~~(b)    be assumed by Purchaser and for a period of sixty (60) months from the Effective Date, paid equal quarterly Cash payments commencing in the first full month following the Effective Date, that in the aggregate are equal to the Allowed Class 2 Claims, together with interest at the applicable statutory rate (with no accruing penalty), which at the sole discretion of the Purchaser may be prepaid.~~

Each holder of an Allowed Class 2 Claim shall retain its lien **in proceeds of the Priority Tax Escrow** until its respective Allowed Class 2 Claim is paid in full.

15

**4.3** **Class 3 - Other Secured Claims**

*Impairment and Voting.* Class 3 is not Impaired under the Plan. Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Class 3 is deemed to have accepted the Plan.

*Treatment.* Except to the extent that a holder of an Allowed Class 3 Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of Allowed Class 3 Claims, holders of Allowed Class 3 Claims will receive from the Purchaser either:

        (a)     payment pursuant to contract terms;

        (b)     Cash on the Effective Date in an amount equal to such Allowed Class 3 Claims required to be paid pursuant to section 506(b) of the Bankruptcy Code; or

        (c)     the Collateral of the holder of such Allowed Class 3 Claim within ten (10) days following the Effective Date, in which case the holder of such Allowed Class 3 Claim will have thirty (30) days from the date of surrender of such Collateral to file a General Unsecured Claim representing any deficiency.

**4.4** **Class 4 – Priority Gift Card Claims**.

*Impairment and Voting.* Class 4 is not Impaired under the Plan. Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Class 4 is deemed to have accepted the Plan.

*Treatment.* On the Effective Date, Purchaser will assume all Gift Card Claims and Gift Card Claims will be honored by Purchaser after the Effective Date according to standard terms and conditions in the ordinary course of business on presentment/redemption of valid gift cards/gift certificates at Max & Erma's restaurants that are Purchased Stores.

**4.5** **Class 5 - General Unsecured Claims**.

*Impairment and Voting.* Class 5 is Impaired under the Plan and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan

*Treatment.* The holders of Allowed Class 5 Claims will receive from the M&E Trustee a Pro Rata share of the initial M&E Trust Unsecured Payment and Subsequent M&E Trust Unsecured Payments. Distributions to the holders of Allowed Class 5 Claims will be made at the discretion of the M&E Trustee in accordance with the M&E Trust Agreement.

**4.6** **Class 6 – Subordinated Unsecured Claims**.

*Impairment and Voting.* Class 6 is Impaired under the Plan. Because the holders of Allowed Class 6 Claims will not receive a distribution on account of their Claims, the holders of Allowed Class 6 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the

16

Bankruptcy Code. Holders of Allowed Class 6 Claims are not entitled to vote to accept or reject the Plan. If, however, holders of Allowed Class 6 Claims vote to accept treatment as outlined in this Plan, that Ballot shall be counted in the vote tabulation.

*Treatment.* Class 6 consists of (i) contractually subordinated Claims of Gary L. Reinert, Sr., the Reinert Entities and/or any Insider that paid funds to Alvarez & Marsal North America, LLC and/or William Blair & Company in conjunction with their respective retentions in this Case, and (ii) Claims subordinated pursuant to Final Order. The holders of Allowed Class 6 Claims will not receive any distributions on account of such Claims.

### 4.7    Class 7 - Equity Interests

*Impairment and Voting.* Class 7 is Impaired under the Plan. Because the holders of Allowed Class 7 Interests will not receive a distribution on account of their Interests, the holders of Allowed Class 7 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Allowed Class 7 Interests are not entitled to vote to accept or reject the Plan.

*Treatment.* On the termination date of the ~~Transition~~**Management** Agreement, Allowed Class 7 Interests will be deemed automatically cancelled without further action by the Debtor. The holders of Class 7 Interests will receive no distribution under the Plan. The Confirmation Order will enjoin the holders of Class 7 Interests from taking any action that may in any way interfere with or impede the provisions of the ~~Transition~~**Management** Agreement. Bill Neigsch will be appointed on the Effective Date to take all actions required of the Debtor under the ~~Transition~~**Management** Agreement.

### ARTICLE V
### PROVISIONS GOVERNING DISTRIBUTIONS

5.1    **Distribution Record Date**. Unless closed earlier by order of the Bankruptcy Court, forty-six (46) days after entry of the Post-Confirmation Order and Notice (the "Distribution Record Date"), the Claims Register will be deemed closed, and no further changes in the record holders of any Claim or Equity Interests will be recognized unless otherwise specifically provided under the Plan or agreed to in writing by the applicable Responsible Distribution Agent. Neither the M&E Trustee, nor the Purchaser will have any obligation to recognize any transfer of any Claim or Equity Interest occurring on or after the Distribution Record Date. The M&E Trustee and the Purchaser, as applicable, will be authorized and entitled to recognize for all purposes under the Plan only with those record holders identified on the Claims Register as of the close of business on the Distribution Record Date.

5.2    **Distributions Under the Plan**.

(a)    **Parties Responsible for Disbursements.**

The M&E Trustee and the Purchaser each respectively are responsible for making Plan disbursements to holders of Allowed Claims entitled to receive distributions under the Plan.

Unless otherwise stated in the Plan (in which case the other provision in the Plan shall control), Chart 5.2(a) below identifies the party responsible for making Plan disbursements to each Class or by category of non-classified Claims:

**Chart 5.2(a)**

| Claimant/Class of Creditor | Receiving a Distribution? Y/N | Responsible Distribution Agent |
|---|---|---|
| Class 1 - Secured Lender Claims | Y | Purchaser and M&E Trustee |
| Class 2 - Secured Personal Property Tax Claims | Y | ~~Purchaser~~**Priority Trust Escrow and M&E Trustee** |
| Class 3 - Other Secured Claims | Y | Purchaser **and M&E Trustee** |
| Class 4 - Priority Gift Card Claims | Y | ~~Purchaser*~~**Priority Trust Escrow and M&E Trustee** |
| Class 5 - General Unsecured Claims | Y | M&E Trustee |
| Class 6 - Subordinated Unsecured Claims | N | n/a |
| Class 7 - Equity Interests | N | n/a |
| Contract/Lease Cure Claims | Y | Purchaser and M&E Trustee |
| Administrative Expense Claims | Y | Purchaser **and M&E Trustee** |
| Retained Administrative Expense Claims | Y | M&E Trustee |
| Priority Tax Claims (excluding Class 2 Claims) | Y | ~~Purchaser~~**Priority Trust Escrow and M&E Trustee** |
| Post-Petition Sales Tax Claims | Y | Purchaser **and M&E Trustee** |

(b) **Form of Distributions.** At the option of the Responsible Distribution Agent, as applicable, any Cash payment required by the Plan may be made by check or wire transfer or as otherwise agreed by the applicable Responsible Distribution Agent and holder of the Claim.

(c) **Delivery of Distributions.** All distributions and other written communications to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules or, if a Proof of Claim has been filed, as listed in such Proof of Claim, unless the holder of such Claim has notified the applicable Responsible Distribution Agent in writing of a change of address before the Distribution Record Date. Section 13.13 of the Plan provides addresses to where notices can be sent.

---

[2] ~~No distribution of cash to holders of Class 4 Claims is contemplated in the Plan. Treatment of such claims is as set forth in Section 4.4 of the Plan.~~

18

(d) **Undeliverable Distributions.** In the event that any distribution to any holder of an Allowed Claim entitled to distribution is returned as undeliverable, no distribution will be made to the holders of such Claim unless the Responsible Distribution Agent (<u>see</u> Chart 5.2(a)), has been notified of the then-current address of such holder, at which time or as soon as reasonably practicable thereafter, the applicable distribution will be made to the holder of the affected Claim without interest; provided, however, that, such undeliverable distributions will be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the date of distribution in accordance with section 5.4 of the Plan. There is no obligation of any Responsible Distribution Agent to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules and the Claims Register.

**5.3** **Withholding and Reporting Requirements**. All distributions made under the Plan by any Responsible Distribution Agent is required to comply with applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and distributions under the Plan will be subject to applicable withholding or reporting requirements.

**5.4** **Unclaimed Distributions**. Checks issued in accordance with the Plan to holders of Allowed Claims will be null and void if not negotiated within sixty (60) days after the date of issuance. Requests for reissuance of any check must be made to the Responsible Distribution Agent (<u>see</u> Chart 5.2(a)) by the holder of the Allowed Claim to whom such check was originally issued within 120 days following the date of original issuance of the affected payment. Thereafter, the amount represented by such voided check will irrevocably revert to the Responsible Distribution Agent that issued the non-negotiated check and the Claim for which the non-negotiated payment was made will be discharged and forever barred from asserting such Claim against the Debtor, the M&E Trust, and the Purchaser and each entities' respective assets.

**5.5** **Minimum Distributions**. No payment of Cash less than $100 will be made by the M&E Trustee. Any M&E Trust Assets that cannot be distributed in accordance with this section 5.5 will vest in the M&E Trust for the benefit of its Beneficiaries. There are no other restrictions associated with minimum distributions.

**5.6** **Setoffs**. The applicable Responsible Distribution Agent may, but will not be required, to set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any Claims of any nature whatsoever that the Debtor or the M&E Trust may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan constitutes a waiver or release by the Debtor, the M&E Trust, or the Priority Tax Trust of any such claim the Debtor may have had against the holder of such Claim.

**5.7** **Transactions on Business Days**. If the Effective Date or any other date on which a transaction may occur under the Plan occurs on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day will instead occur on the next Business Day, but will be deemed to have been completed as of the required date.

**5.8** **Allocation of Plan Distribution Between Principal and Interest**. All distributions in respect of any Allowed Claim will be allocated first to the principal amount of

19

such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim). Other than to the extent allowed by the Bankruptcy Court in accordance with section 506(b) or as otherwise provided in the Plan, interest will not accrue on any Claims after the Petition Date or after the Effective Date.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1    Source of Consideration for Plan Distributions**.

(a)    Distribution Sources.  Distributions under the Plan will be funded from two sources: the Purchaser with respect to Cash consideration under the **Restated Purchase** Agreement, Assumed Liabilities and the M&E Trust with respect to M&E Trust Assets.

(b)    The Sale.  On the Effective Date, pursuant to the **Restated Purchase** Agreement which will be deemed approved by the Bankruptcy Court on entry of the Confirmation Order, the Purchaser will acquire the Acquired Assets, which include all of the Debtor's assets other than the Excluded Assets.  A significant component of Purchaser's consideration for the Sale is the assumption by Purchaser and payment of certain Allowed Claims as follows:

(i)    Priority Tax Claims and Allowed Class 2 Claims relating to Acquired Assets in an amount not to exceed $~~2,507,926~~**2.6 million** plus post-Effective Date interest;

(ii)    Allowed Class 3 Claims;

(iii)    Allowed Class 4 Claims;

(iv)    Allowed Cure Claims up to the amount identified in Schedule 2.3 to the **Restated Purchase** Agreement with respect to Unexpired Leases for the subset of leases ~~that are ultimately assumed by Purchaser and up to $90,000 with respect to~~**and** Executory Contracts ~~for the subset of contracts~~ that are ultimately assumed by Purchaser, each with respect to Purchased Stores; and

(v)    Allowed Administrative Expense Claims other than Retained Administrative Expense Claims.

As additional consideration for the Acquired Assets under the **Restated Purchase** Agreement, on the Effective Date, Purchaser will (i) pay $~~14.75~~**17.10** million, subject to adjustment for any Working Capital Adjustment Amount and Cure Claims as set forth above; and (iii) ~~issue~~**pay** the M&E Trust ~~Note~~**Cash Consideration**.

(c)    The Cash Consideration.  At the time of Closing on the Effective Date, the $~~14.75~~**17.10** million of Cash consideration, subject to adjustment, will be disbursed as follows:

20

(i)      $12.0 million to PNC Bank, as Agent, in accordance with Section 4.1 of the Plan; and

(ii)      The balance totaling ~~Two~~**Five** Million ~~Seven~~**One** Hundred Fifty Thousand Dollars ($~~2,750,000~~**5,100,000**), subject to adjustment, will be paid to the M&E Trust for distribution in accordance with the M&E Trust Agreement and the Plan.

(d)      The ~~Notes.~~**M&E Trust Cash Consideration.  At the time of Closing on the Effective Date, the M&E Trust Cash Consideration will be paid to the M&E Trust.**

**(e)**      ~~*The M&E Trust Note.*~~  The M&E**Priority** Trust ~~Note~~**Escrow** will be ~~issued by the Purchaser, as maker, to the M&E Trust, as payee and holder, for the benefit of holders of Allowed General Unsecured Claims who are the Beneficiaries of the M&E Trust.~~ **funded by the Purchaser on the Closing Date.**

**6.2      The M&E Trust**

(a)      Creation of the M&E Trust.  On the Effective Date, the M&E Trust will be formed.  The M&E Trust Agreement, in substantially the same form as included in the Plan Supplement at Exhibit A, will be approved by the Bankruptcy Court pursuant to the Confirmation Order and executed by the M&E Trustee, and all other necessary steps shall be authorized by the Bankruptcy Court and taken to establish the M&E Trust.

(i)      Purpose of M&E Trust.  The M&E Trust will be established and maintained, in accordance with Treasury Regulation section 301.7701-4(d), for the purpose of collecting, holding, liquidating, monetizing and distributing the M&E Trust Assets, resolving and administering Claims, and prosecuting Causes of Action that are transferred to the M&E Trust pursuant to the Plan.  The M&E Trust will not continue or engage in the conduct of a trade or business.

(ii)      M&E Trust Assets.  On the Effective Date, all right, title and interest to the following assets of the Debtor and its Estate will be assigned, set over, transferred, and conveyed to the M&E Trust, free and clear of Liens, Claims or encumbrances and without action required of the M&E Trustee to effectuate the transfer of M&E Trust Assets:

(A)      Balance of the cash consideration relating to the Sale, or approximately $~~2.75~~**5.10** million, subject to potential adjustment;

(B)      the Excluded Assets; and

(C)      the M&E Trust ~~Note~~**Cash Consideration**.

To the extent that certain M&E Trust Assets, because of their nature or because they will accrue subsequent to the Effective Date, cannot be assigned, set over, transferred or conveyed to the M&E Trust on the Effective Date, these assets will be deemed assigned, set over, transferred and conveyed to the M&E Trust as soon as practical after the

21

Effective Date. The M&E Trust Assets shall not include any contractual rights of subordination, guarantees or judgments, which are retained by the Pre-Petition Lenders On or after the Effective Date, with respect to all Claims constituting Excluded Assets, the M&E Trustee will continue as a plaintiff in Causes of Action (on behalf of the Beneficiaries) of the M&E Trust in which the Debtor was a plaintiff prior to the Effective Date and will be deemed the assignee of all Claims or Causes of Action that could have otherwise been asserted by the Debtor or a trustee of the Debtor if one were appointed. All recoveries and proceeds arising from litigation and Causes of Action that are Excluded Assets will be deemed assigned, set over, transferred and conveyed to the M&E Trust upon receipt thereof.

(iii)     Governance of the M&E Trust. The M&E Trust will be controlled by the M&E Trustee in accordance with the M&E Trust Agreement, which will not be inconsistent with the Plan. The M&E Trustee will be subject to oversight by a three member oversight committee (the "Oversight Committee"). The Oversight Committee will be comprised of (i) one representative selected by the Committee, (ii) one representative selected by the Agent, and (iii) a third representative selected by and agreed upon by the Committee and Agent representatives. The Oversight Committee shall be compensated by the M&E Trust in amounts set forth in the Confirmation Order.

(iv)     The M&E Trustee. The M&E Trustee will be JLL Consultants, as selected by the Committee and the Agent. The designation of the M&E Trustee will be approved by the Bankruptcy Court and effective on the Effective Date without the need for a further order of the Bankruptcy Court. The M&E Trustee will exercise reasonable business judgment to administer the M&E Trust Assets and make timely distributions from the M&E Trust to the Beneficiaries of the M&E Trust.

(v)     Costs and Expenses of the M&E Trustee. The costs and expenses of the M&E Trust, including the fees and expenses of the M&E Trustee and its retained professionals, will be paid from the proceeds of M&E Trust Assets. These costs and expenses will have a first priority in right of distribution subordinate, however, to Compensation and Reimbursement Claims addressed in Section 2.3 of the Plan and are not subject to approval by the Bankruptcy Court. The M&E Trustee may retain or reserve amounts estimated by the M&E Trustee, based on his reasoned business judgment, to fund the fees and expenses of the M&E Trustee and the professionals of the M&E Trustee in a Liquidation Expense Reserve Account. The M&E Trust may increase or decrease amounts held in a Liquidation Trust Reserve Account at the reasonable discretion of the M&E Trustee. The M&E Trustee shall submit a three month budget for approval to the Oversight Committee on an ongoing basis, which approval by the Oversight Committee shall not be unreasonably withheld. The M&E Trustee will not incur or expend amounts inconsistent with the budgets without Oversight Committee approval.

(vi)     Compensation of the M&E Trustee. The M&E Trustee intends to be paid a monthly flat fee and certain contingency amounts, which shall be set forth in the Plan Supplement at Exhibit E and approved in the Confirmation Order.

\12851557.3
\12851557.9

(vii)  Distribution of Trust Assets.  The M&E Trustee will make distributions of proceeds of M&E Trust Assets to Beneficiaries at the discretion of the M&E Trustee and in accordance with the M&E Trust Agreement, and this Plan, except such amounts (i) that would otherwise be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is Allowed); (ii) that are reasonably necessary to meet future costs of administration and contingent liabilities and to maintain the value of the assets of the M&E Trust during administration of the M&E Trust and M&E Trust Assets; (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the assets of the M&E Trust or in respect of the M&E Trust); and (iv) to satisfy other obligations and liabilities incurred by the M&E Trust as authorized by the M&E Trustee, or obligations and liabilities incurred by the Debtor, in accordance with this Plan or the M&E Trust Agreement**.  The M&E Trustee shall make distributions from the Trust to the Beneficiaries as soon as practible.  Nothing shall prohibit the M&E Trustee from making distributions to the Class 1 Beneficiaries prior to distributions to the Class 5 Beneficiaries, as long as the pro-rata allocation between Class 1 and Class 5 is maintained**.

(viii)  Retention of Professionals by the M&E Trustee.  The M&E Trustee will retain McGuireWoods LLP as primary counsel to the M&E Trust and may retain and reasonably compensate such additional counsel and other professionals (subject to approval by the Oversight Committee) to assist in its duties as the M&E Trustee.  The M&E Trustee may retain any professional who represented parties in interest (including the Debtor or the Committee) in the Case.  The M&E Trustee will retain legal counsel on a contingency fee basis to pursue certain Causes of Action that constitute M&E Trust Assets.

(ix)  Authority to Settle and Grant Releases.  The M&E Trustee is authorized to compromise, settle, release and discharge Claims against the Estate (that are unrelated to Acquired Assets) or Causes of Action to the fullest extent permitted by law without further order of the Bankruptcy Court; provided, however, that for Claims or Causes of Action asserted in amounts in excess of $250,000, prior approval by the Oversight Committee and Bankruptcy Court is required.

(x)  Attorney-Client Privilege.  On the Effective Date, any attorney-client privilege, work-product privilege or other privilege or immunity that the Debtor or the Estate are entitled to assert will vest in the M&E Trust (and the attorneys and agents of the M&E Trust) and the M&E Trustee shall be entitled to assert or waive privileges and immunities to the same extent that the Debtor was entitled to do so prior to the Effective Date.

(xi)  Transfer of Claims of Debtor and the Estate to M&E Trust.  A full investigation of potential Claims and Causes of Action has not been undertaken by either the Debtor or the Committee.  Potential Claims and Causes of Action may exist as against, among others, (i) Persons (and/or subsidiaries and affiliates thereof) identified in items 3(a) and 3(b) of the Debtor's Statement of Financial Affairs (and other Persons subsequently discovered by the Debtor, the Committee or M&E Trustee as having received payments that should have been listed and identified in item 3(a) or 3(b) of the Debtor's Statement of Financial Affairs, but were not); and (ii) other Claims and Causes of Action identified by the M&E Trustee in the course of his post-Effective Date due diligence.  On the Effective Date, the M&E Trustee will be

23

substituted for the Debtor or Committee as party in any pending Cause of Action, adversary proceeding, contested matter, motion or action pending in the Bankruptcy Court or any other court arising from or relating to an Excluded Asset.

(xii)    Reservation of Causes of Action.   All Claims and Causes of Action constituting an Excluded Asset are expressly reserved for the benefit of the M&E Trust and its Beneficiaries, including, without limitation, potential Claims and Causes of Action against, among others:

(A)    **Unless otherwise released in the Plan,** Persons (and/or subsidiaries and affiliates thereof) identified in the Debtor's items 3(a) and 3(b) of the Debtor's Statement of Financial Affairs (and other Persons subsequently discovered by the Debtor, the Committee or M&E Trustee as having received payments that should have been listed and identified in item 3(a) or 3(b) of the Debtor's Statement of Financial Affairs but were not);

(B)    Gary L. Reinert, Sr., in his personal capacity and in the capacity as director and/or officer of the Debtor. Without limiting the scope of this reservation, all Claims and Causes of Action relating to actions/inactions committed, directed or authorized by Gary L. Reinert, Sr., in any capacity with the Debtor are expressly reserved as well as all Causes of Action relating to Pre-Petition and Post-Petition transfers from the Debtor to Gary L. Reinert, Sr. and/or the Reinert Entities, potential Causes of Action under applicable corporate/business/fiduciary law, and other Claims and Causes of Action arising from or relating to ownership, management, control and other interactions and transactions among the Debtor, Gary Reinert, Sr. and/or the Reinert Entities;

(C)    the Reinert Entities and all Persons related thereto or associated therewith.  Without limiting the scope of this reservation, all Causes of Action relating to the aforementioned parties' involvement with the Debtor, including, without limitation Post-Petition and Pre-Petition transfers from the Debtor to or for the benefit of the Reinert Entities, are expressly reserved;

(D)    all Claims and Causes of Action against "insiders" as that term is defined in 11 U.S.C. § 101, including, but not limited to any and all Claims that may be covered under an Insurance Policy; and

(E)    all creditors that secured judgments or liens within ninety days prior to the Petition Date, or may otherwise be subject to an Avoidance Action, including, without limitation, the judgments of Donal H. Malenick.

(xiii)   Federal Income Tax Treatment of M&E Trust.   For all federal income tax purposes, all parties (including, without limitation, the Debtor, the M&E Trustee and the Beneficiaries) are required to treat the transfer of the M&E Trust Assets to the M&E Trust for the benefit of the Beneficiaries of the M&E Trust, whether the Claims of such Beneficiaries are allowed prior to the Effective Date, as (A) a transfer of the M&E Trust Assets directly to the

24

Beneficiaries (other than to the extent allocable to Disputed General Unsecured Claims) followed by (B) the transfer by the Beneficiaries of M&E Trust Assets to the M&E Trust in consideration of beneficial interests in the M&E Trust. Beneficiaries of the M&E Trust will be treated for federal income tax purposes as the grantors and owners of their respective interests of the M&E Trust Assets.

(xiv)   <u>Tax Reporting</u>.   The M&E Trustee will file any necessary tax returns for the Debtor for the period prior to the Effective Date and for the M&E Trust as a grantor trust pursuant to Treasury Regulation section 1.671-1 through 4(a) and in accordance with this section 6.1(o).

(xv)   Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the M&E Trustee of a private letter ruling if the M&E Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the M&E Trustee), the M&E Trustee will (i) treat any M&E Trust Assets allocable to, or retained on account of, Disputed Claims as held by one or more discrete trusts for federal income tax purposes (the "<u>Disputed Claim Reserve</u>") in accordance with the trust provisions of the Tax Code (section 641 et seq.); (ii) treat as taxable income or loss of the Disputed Claim Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the M&E Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved); (iii) treat as a distribution from any reserve established under the M&E Trust any increased amounts distributed by the M&E Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the M&E Trust determined in accordance with the provisions hereof; and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All holders of Allowed General Unsecured Claims shall report, for tax purposes, consistent with the foregoing.

(xvi)   The M&E Trustee will be responsible for payments, out of, and only to the extent of, the M&E Trust Assets, of any taxes imposed on the Debtor, the Estate, the M&E Trust or the M&E Trust Assets, including any Disputed Claim Reserve established under the M&E Trust. In the event, and to the extent, any Cash retained on account of Disputed General Unsecured Claims in any Disputed Claim Reserve established under the M&E Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed General Unsecured Claims, such taxes may be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed General Unsecured Claims, or (ii) to the extent such Disputed General Unsecured Claims have subsequently been resolved, deducted from any amounts distributable by the M&E Trustee as a result of the resolutions of such Disputed General Unsecured Claims.

(xvii)   <u>Reservation for the United States</u>.   The United States Internal Revenue Service right to challenge the tax treatment of the M&E Trust as stated in the Plan is reserved.

\12851557.3
\12851557.9

(xviii) <u>Dissolution</u>.  The M&E Trust will be dissolved and the M&E Trustee discharged at such time as (i) all Disputed Claims, whether classified or unclassified of potential Beneficiaries of the M&E Trust have been resolved, (ii) all M&E Trust Assets have been monetized, liquidated or abandoned and (iii) all distributions required to be made by the M&E Trustee under the Plan and M&E Trust Agreement have been made.  In no event will the M&E Trust be dissolved after a period that would adversely affect the status of the M&E Trust as a liquidating trust for federal income tax purposes.  The M&E Trust will only exist as long as is necessary to facilitate or complete the recovery and liquidation of the M&E Trust Assets and distribution of their proceeds to Beneficiaries of the M&E Trust.  The M&E Trustee will not unduly prolong the duration of the M&E Trust and will at all times endeavor to resolve, settle or otherwise dispose of all Claims that constitute M&E Trust Assets and effect the distribution of the M&E Trust Assets in accordance with the terms of the Plan and the M&E Trust Agreement.  M&E Trust Assets will be distributed to the Beneficiaries of the M&E Trust pursuant to the provisions set forth in Section IV of the M&E Trust and sections 4.5 and 6.2(a)(vii) of the Plan.

(xix)  <u>Indemnification of M&E Trustee</u>.  The M&E Trustee and the M&E Trustee's agents and professionals will not be liable for actions taken or omitted in their capacity as, or on behalf of, the M&E Trustee, except those acts or omissions arising out of willful misconduct or gross negligence, and each of the M&E Trustee, the M&E Trustee's agents and the M&E Trustee's professionals will be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the M&E Trustee, except for any actions or inactions involving willful misconduct or gross negligence. Any indemnification claim of the M&E Trustee (and the other parties entitled to indemnification under this subsection) will be satisfied from M&E Trust Assets prior to distributions to Beneficiaries of the M&E Trust.  The M&E Trustee will be entitled to rely, in good faith, on the advice of its retained professionals.

**6.3**     <u>**Effectuating the Sale**</u>.

(a)     <u>Approval of the Sale and Authorization to Perform</u>.  The filing of the Plan will be deemed to constitute a motion for an order of the Bankruptcy Court approving, pursuant to Bankruptcy Code sections 105, 365, 1123 and 1129(b)(2)(A)(ii), the **Restated Purchase** Agreement and actions contemplated thereunder, including without limitation, the sale of the Acquired Assets free and clear of all Liens, Claims, encumbrances, and any and all other interests, except as otherwise provided in the Plan and **Restated Purchase** Agreement. The Plan and the Confirmation Order shall be presumptively deemed to comply with all requirements of the Bankruptcy Code, and the Bankruptcy Rules.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the **Restated Purchase** Agreement and authorization for the Debtor, the Purchaser, and the M&E Trustee to effectuate all transactions contemplated therein.

(i)     On the Effective Date, the Debtor, Purchaser, and M&E Trustee, as applicable, will each execute all documents and take other actions necessary or required to transfer, sell and convey, and where applicable, assume and assign, all of the Acquired Assets to the Purchaser and otherwise effectuate all transactions contemplated under the **Restated Purchase** Agreement and the Plan.

\12851557.3
\12851557.9

(b)     Sale Consideration.  On the Effective Date, the Purchaser will pay the Total Consideration, with an aggregate value of approximately $24.6~~~~**28.022** million, taking into account Cash consideration, Assumed Liabilities and the M&E Trust ~~Note~~**$27,113,981 Cash Consideration**

(c)     Transfer of Acquired Assets.  On the Effective Date, the Sale will be consummated and the Acquired Assets sold, transferred, conveyed, assumed and assigned from the Debtor to the Purchaser, free and clear of Liens, Claims and encumbrances except as otherwise provided in the Plan and the **Restated Purchase** Agreement.  The Debtor will execute all documents necessary to sell, transfer, convey, assume and assign the Acquired Assets as contemplated under the **Restated Purchase** Agreement.

In consideration of the sale, transfer, conveyance, assumption and assignment of the Acquired Assets by the Debtor to the Purchaser, the Purchaser will:

(i)     Pay the Cash consideration, subject to adjustment, to the M&E Trust or as otherwise directed under the **Restated Purchase** Agreement and Plan;

(ii)     ~~Execute~~**Pay** the M&E Trust ~~Note~~**Cash Consideration**;

(iii)     Accept assignment of the Acquired Contracts;

(iv)     Assume and pay Allowed Cure Claims in accordance with the **Restated Purchase** Agreement;

(v)     Assume and pay amounts required to be paid by Purchaser on the Effective Date (or when otherwise due) in accordance with the **Restated Purchase** Agreement with respect to Assumed Liabilities identified in sections 4.2, 4.3 and 4.4 of the Plan and Administrative Claims other than Retained Administrative Expense Claims as provided under section 2.1 of the Plan; and

(vi)     Execute all documentation necessary to evidence the assumption of obligations with respect to Classes 2, 3 and 4, Administrative Expense Claims other than Retained Administrative Expense Claims and Allowed Cure Claims as provided under section 2.1 of the Plan that are not paid on the Effective Date.

**6.4     Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the consummation of the transactions contemplated by the **Restated Purchase** Agreement and Plan, including but not limited to the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument of transfer (including, without limitation, any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan) will be deemed to be in furtherance of or in connection with the Plan and will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**6.5     Corporate Action**.  On the Effective Date, all actions contemplated to be performed by the Debtor pursuant to the Sale Documents are authorized and approved in all

respects. All actions required of the Debtor under the Sale Documents or the M&E Trust Agreement will not require any action by the holders of Equity Interests or directors of the Debtor. Mark A. Roberts, the Chief Restructuring Officer and Chief Executive Officer of the Debtor, is authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Sale Documents (including the **Restated Purchase** Agreement) necessary to effectuate the transactions contemplated therein, without approval of the Debtor's board of directors, any individual officer or director, or any holder of Equity Interests in the Debtor. All Persons, the Purchaser, Governmental Units, title agencies, licensing agencies and offices of recordation may rely upon the authority vested in Mark A. Roberts to act on the Debtor's behalf in order to effectuate the Plan and the transactions contemplated in the **Restated Purchase** Agreement.

6.6 **Vesting of Assets in the M&E Trust**. Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, on the Effective Date, all property of the Estate constituting Excluded Assets will vest in the M&E Trust free and clear of all Liens, Claims, charges, or other encumbrances. Notwithstanding the foregoing, the Pre-Petition Bank Debt and related loan documents shall remain in full force and effect except as expressly modified in the Plan.

6.7 **Distributions**. Distributions will be made in accordance with the Plan.

6.8 **Subrogation Claims**. All Subrogation Claims of the Debtor and the Estate will be assigned and transferred to the M&E Trust on the Effective Date.

6.9 **Cancellation of Notes, Instruments, Certificates and Other Documents**. On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Interests will be cancelled and the obligations of the Debtor discharged in accordance with section 1141(d)(1) of the Bankruptcy Code. Subordination agreements in favor of the Agent shall survive the Effective Date. Notwithstanding the foregoing, the Pre-Petition Bank Debt and related loan documents shall remain in full force and effect, except as expressly modified in the Plan.

6.10 **Cancellation of Existing Securities and Agreements**. On the Effective Date, except as expressly provided in this Plan, the securities, promissory notes, trust indentures, share certificates, security agreements, deeds of trust, collateral agency agreements and other instruments evidencing or securing a Claim will be deemed cancelled without further act or action under any applicable agreement or law, and the obligations of the Debtor under the agreements, instruments, trust indentures and certificates governing and securing such Claims, as the case may be, will be discharged. Subordination agreements in favor of the Agent shall survive the Effective Date.

6.11 **Release of Liens** Except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, (i) each holder of: (a) any purported Secured Claim and/or (b) any judgment, personal property or ad valorem tax, molder, warehouse or artisan or similar Lien Claim, in each case regardless of

\12851557.3
\12851557.9

whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (y) turn over and release to the Estate any and all property of the Debtor or the Estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by the Debtor or the M&E Trustee, as the case may be, be deemed released and (z) execute such documents and instruments as the Debtor or M&E Trustee, as the case may be, requires to evidence the holder of a Claim's release of such property or Lien, and if such holder refuses to execute appropriate documents or instruments, the Debtor or the M&E Trustee, as the case may be, in its discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any holder of a Claim's rights in such property; and (ii) immediately before the Effective Date, all right, title and interest in such property shall revert to or be transferred to the Debtor, free and clear of all Claims, interests, and Liens of any kind, and thereafter be transferred to the Purchaser and the M&E Trust, as applicable.

**6.12** **Books and Records**. Debtor or its designee will retain possession of all accounting, business, financial and tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Effective Date and transferred to Purchaser and (ii) coming into existence after the Effective Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period not to exceed the period in which the M&E Trust remains in existence. Debtor or its designee shall give Purchaser at least sixty (60) days prior written notice and an opportunity to retain or copy any such records in the event that Debtor or its designee determines to destroy or dispose of them. In addition, from and after the Effective Date, Debtor or its designee shall provide access to Purchaser and its designees, (after reasonable notice and during normal business hours and without charge), to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Purchaser may reasonably deem necessary. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

**6.13** **Closing of Case by Charitable Gift**. If at any time the M&E Trustee determines that the expense of administering the M&E Trust or distributing M&E Trust Assets to Beneficiaries is likely to exceed the value of the M&E Trust Assets remaining in the M&E Trust, the M&E Trustee may (i) reserve any amounts necessary to close the Case; (ii) donate any balance of M&E Trust Assets or their proceeds to a charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to the Debtor and any insider of the Debtor; and (iii) close the Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

### ARTICLE VII
### PROCEDURES FOR DISPUTED CLAIMS

**7.1** **Objections to Claims**. On and after the Effective Date, the M&E Trust will be entitled to object to all Claims of potential beneficiaries of the M&E Trust other than the Class 1 Claim representing the Pre-Petition Bank Debt. The Purchaser will be entitled to object only to Claims constituting Assumed Liabilities under the Sale Documents.

29

**7.2  No Distribution Pending Allowance**.  Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution to the holder of such Disputed Claim will be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**7.3  Reserve on Account of Disputed Claims**.

(a)  **Establishment and Maintenance of Reserve for Disputed Claims.** Solely for Claims for which the M&E Trustee is the Responsible Distribution Agent, the M&E Trustee will maintain a Disputed Claim Reserve at an amount equal to the aggregate of 100% of the distributable amounts to which holders of such Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or such lesser amount as required by a Final Order.  For purposes of effectuating the provisions of this section 7.3(a) and the distributions to holders of Allowed Claims, the Bankruptcy Court may set, fix or liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated will be deemed the amounts of the Disputed Claim for purposes of distribution under this Plan.  In lieu of fixing or liquidating the amount of any Disputed Claim, the M&E Trustee may request that the Bankruptcy Court determine the amount to be reserved for such Disputed Claim or such amount may be fixed by agreement in writing between the M&E Trustee and the holder of a Disputed Claim.

(b)  **Distributions on Allowance of Disputed Claims.** The holder of a Disputed Claim that becomes an Allowed Claim will receive distribution (i) in Cash from the Disputed Claim Reserve of the M&E Trustee for Claims against the Estate for which the M&E Trustee is the Responsible Distribution Agent, or (ii) from the Purchaser per the terms of the Plan or as agreed between the Purchaser and the holder of an Allowed Claim for which the Purchaser is the Responsible Distribution Agent, as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  These distributions will be made in accordance with the Plan based on the distribution(s) that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.  No holder of a Disputed Claim will have any Claim against the Disputed Claim Reserve or the applicable Responsible Distribution Agent with respect to such Claim until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim will have any right to interest on such Disputed Claim except for any Reserve Income earned thereon (unless otherwise required pursuant to applicable non-bankruptcy law for Priority Tax Claims).

**7.4  Resolution of Disputed Claims**.  Unless otherwise provided in the Plan or ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the applicable Responsible Distribution Agent will have the exclusive right to file objections to Claims.  Each objection must be served on the holder of the Claim to which the objection is made as soon as practicable, but in no event later than ninety (90) days after entry of the Post-Confirmation Order and Notice (subject, however, to the right of the Responsible Distribution Agent to seek an order of the Bankruptcy Court granting an extension of time to file such objections with the Bankruptcy Court).

\12851557.3
\12851557.9

7.5 **Estimation**. The Debtor, or following the Effective Date, the applicable Responsible Distribution Agent may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Responsible Distribution Agent (as the case may be) may pursue supplementary proceedings to object to the allowance of such Claim. All objection, estimation and Claim resolution procedures are intended to be cumulative and not exclusive of one another.

7.6 **Distributions to Holders of Allowed Claims Upon Disallowance of Disputed Claims**. On disallowance of any Disputed Claim, each holder of an Allowed Claim in the same Class as the disallowed Disputed Claim will be entitled to its Pro Rata share of Cash equal to the distribution that would have been made in accordance with the Plan to the holder of such Disputed Claim had such Disputed Claim been an Allowed Claim on or prior to the Effective Date. Such distributions on account of disallowed Disputed Claims will be made as soon as practicable. On allowance or disallowance of all or a portion of such Disputed Claims, the applicable Responsible Distribution Agent will make appropriate distributions in accordance with the Plan.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 **Rejection of Executory Contracts and Unexpired Leases**

(a) **General Treatment**. On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123(b)(2) of the Bankruptcy Code, unless any such executory contract or unexpired lease: (i) has been previously subject to a Final Order of the Bankruptcy Court authorizing assumption/assignment or rejection, as the case may be, entered prior to the Effective Date; (ii) is the subject of a motion to assume, assume and assign or reject pending as of the Effective Date; or (iii) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases which is Exhibit C to the Plan Supplement**, and can be supplemented until the Effective Date**.

(b) **Rejection Damages**. The Confirmation Order, as of the Effective Date, will constitute an order of the Bankruptcy Court authorizing and approving (i) the assumption and assignment of executory contracts and unexpired leases constituting Acquired Contracts identified in Exhibit C to the Plan Supplement and (ii) the rejection of all other Executory Contracts of the Debtor which are not otherwise identified in Exhibit C to the Plan Supplement or subject to a motion to assume/assume and assign executory contracts pending as of the Effective Date. Exhibit C may be amended by the Purchaser from time to time up through and

31

including the conclusion of the Confirmation Hearing. Counterparties to executory contracts or unexpired leases that are deemed rejected as of the Effective Date will be permitted to assert any Claim on account of the rejection of such executory contracts or unexpired leases, including under section 502(g) of the Bankruptcy Code, subject to compliance with the requirements of the Plan. Unless otherwise provided by a Bankruptcy Court order, any proofs of claim asserting Claims arising from the rejection of the Debtor's executory contracts and unexpired leases pursuant to the Plan or otherwise must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date. Any proofs of claim arising from the rejection of the Debtor' executory contracts or unexpired leases that are not timely filed will be disallowed automatically, and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the M&E Trustee, without the need for any objection the M&E Trustee or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtor's executory contracts and unexpired leases shall be classified as General Unsecured Claims.

**8.2** **Assumption of Executory Contracts and Unexpired Leases**.

(a) <u>Assumption of Executory Contracts and Unexpired Leases</u>. On the Effective Date, the Debtor will assume and assign to the Purchaser all of the executory contracts and unexpired leases listed on ~~the Schedule of Assumed Executory Contracts and Unexpired leases attached to the Plan Supplement as Exhibit C. Exhibit C may be amended by the Purchaser from time to time up through and including the conclusion of oral presentations at the Confirmation Hearing and the submission to the Court by the Plan Proponents of a proposed Confirmation Order. With respect to the~~**Exhibit C to the Plan Supplement, which may be supplemented with additional leases up until the Effective Date. The timing and amount of the cure payments to be made to counterparties to** executory contracts and unexpired leases ~~listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtor, in consultation with the Purchaser, will designate a proposed Allowed Cure Claim on the Schedule of Assumed Executory Contracts and Unexpired Leases which Schedule of Assumed Executory Contracts and Unexpired Leases will include Cure Costs identified in Schedule 2.3 of the Agreement. Counter parties whose~~**to be so assumed and assigned shall be made by the Debtor or Purchaser pursuant to and as limited by the terms of the Restated Agreement,** <span style="color:green">unless otherwise agreed</span> **upon by the Purchaser and counterparty to assumed contract/lease. All** executory contracts and unexpired leases ~~are~~ identified ~~in~~**on** Exhibit C to the Plan Supplement ~~and whose Cure Claims, if any, are identified in Schedule 2.3 to the Agreement will have fourteen (14) days (but not later than August 2, 2010) from the date of receipt of Schedule 2.3 to file an objection to Cure Claims with the Bankruptcy Court; otherwise, such Cure Claims will be deemed to be Allowed Claims in the amount identified in Schedule 2.3.~~**will be assumed on the Effective Date with all benefits and burdens contained therein in accordance with applicable law, subject to, however, modifications agreed upon in writing between the Purchaser and the various counterparties to assumed contracts/leases. Notwithstanding anything contained herein to the contrary, any accrued and unbilled obligations arising**

~~\12851557.3~~
**\12851557.9**

**under any lease for real property that is assumed by the Debtor and assigned to the Purchaser will be an obligation of the Purchaser.**

(b) <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>.  Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed pursuant to the **Restated Purchase** Agreement and the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan, the **Restated Purchase** Agreement or separate motion and Final Order of the Bankruptcy Court.  Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtor during the Case will not alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims in connection therewith.

(c) <u>Modification of the Schedule of Assumed Executory Contracts and Unexpired Leases</u>.  The ~~Schedule of Assumed Executory Contracts and Unexpired Leases may be modified by the Purchaser to add or delete contracts and leases after the conclusion of oral presentations at the Confirmation Hearing until the Plan Proponents submit a proposed Confirmation Order to the Court.  The Plan Proponents have agreed not to submit a proposed Confirmation Order to the Court until at least two hours after the conclusion of oral presentations at the Confirmation Hearing, however,~~ <u>~~Schedule 2.3~~</u> ~~identifying Cure Claims may not be modified after the hearing on allowance of Cure Claims~~ <span style="color:green">unless otherwise agreed</span> ~~by the applicable contract counter party~~**Debtor may add additional executory contracts and unexpired leases to Exhibit C to the Plan Supplement, (meaning that the Debtor, with the consent of Purchaser, may include additional contracts for assumption and assignment) at any time prior to the Effective Date.  The Debtor may not eliminate executory contracts and unexpired leases designated on Exhibit C for assumption after entry of the Confirmation Order**.

(d) <u>Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed</u>.  Any and all Proofs of Claim relating to executory contracts or unexpired leases that have been assumed in the Case and assigned to the Purchaser will be deemed amended and superseded by the amount of the Allowed Cure Claim identified in <u>Exhibit C</u> to the Plan Supplement (the Schedule of Assumed Executory Contracts and Unexpired Leases), the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtor and assignment of these contracts to Purchaser.

(e) <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. With respect to each of the executory contracts or unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtor or the Purchaser will designate a proposed Cure and the assumption and assignment of such executory contract or unexpired lease will be conditioned on the disposition of all issues with respect to Cure.  All Allowed Cure Claims, up to an aggregate amount established in <u>Schedule 2.3</u> of the **Restated Purchase** Agreement (subject to adjustment), will be satisfied by Purchaser by payment of the Allowed

33

Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be either: (i) ordered by the Bankruptcy Court or (ii) agreed by the Purchaser, and applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Debtor's executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure. ~~In the event all Allowed Cure Claims relating to (i) Unexpired Leases exceed in the aggregate or on a Purchased Store by Purchased Store basis amounts set forth in Schedule 2.3 of the Agreement, or (ii) Executory Contracts exceed $90,000, the Debtor will be responsible for all such amounts in accordance with Section 2.1 of the Agreement.~~

        (i)      **Cure Dispute Resolution Process (IMPORTANT BAR DATE). The following process shall govern disputes relating to Cure:**

        (A)      Counterparties to any executory contract and unexpired leases (I) designated for assumption on the Schedule of Assumed Executory Contracts and Unexpired Leases and (II) that dispute the proposed Cure Cost listed on Schedule 2.3 of the **Restated Purchase** Agreement or dispute assumption and assignment of an Acquired Contract for any other reason must serve counsel to the Debtor, the Purchaser and the Committee any objection to the proposed Cure Cost ("Cure Objection") so that it is received no later than August 2, 2010.

        (B)      The Cure Objection should include: (1) the Cure Claim asserted by the objecting contract counter-party; (2) documentation that substantively and quantitatively supports the Cure Claim alleged by the objecting contract-counter party; (3) contact information of the counterparty (including but not limited to email, fax and telephone numbers at which the counterparty can be reached), and (4) the legal and factual basis for an objection to assumption and assignment of a proposed Acquired Contract.

        (C)      The Debtor (in consultation with the Committee), Purchaser and the objecting counterparty will promptly following receipt of the Cure Objection commence good faith negotiations of the Cure Objection.

        (D)      If a Cure Objection dispute cannot be resolved within three (3) days before the Consolidated Confirmation Hearing, the Debtor will file a notice of disputed Cure ("Cure Dispute Notice") with the Bankruptcy Court and Cure Objection disputes will be addressed by the Bankruptcy Court prior to the conclusion of the Consolidated Confirmation Hearing.

        (E)      The Purchaser may delete executory contracts and unexpired leases from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time up to the submission by the Plan Proponents of a proposed Confirmation Order to the Court. The Plan Proponents will not submit a proposed Confirmation Order to the Court until at least two hours after the

conclusion of the presentation of all other evidence and argument at the Consolidated Confirmation Hearing.

(F)     Failure to comply with the Cure Objection dispute resolution process will result in the disallowance of the Cure Claim. The contract counterparty will be forever barred, estopped, and enjoined from asserting a Cure Claim against the Purchaser, the Estate or the M&E Trust in an amount that exceeds the amount listed in Schedule 2.3 of the **Restated Purchase** Agreement. In instances where an executory contract is to be assumed pursuant to the **Restated Purchase** Agreement and the Plan and no Cure Objection has been timely filed with the Bankruptcy Court by the applicable contract counter-party, the Cure Cost listed on Schedule 2.3 of the **Restated Purchase** Agreement (notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary) will be binding on all parties, including the Purchaser and contract counter-party. The Debtor, with approval of the Purchaser and Committee, may settle any Cure Objection without any further notice to or action, order, or approval of the Bankruptcy Court.

(f)     Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Purchaser within the meaning of section 365 of the Bankruptcy Code. Objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other then Cure Claim disputes) must be asserted as an objection to confirmation of the Plan. Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Purchaser pursuant to section 365(k) of the Bankruptcy Code.

## ARTICLE IX
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

**9.1     Conditions Precedent to Effective Date**. The following are conditions precedent to the Effective Date of the Plan:

(a)     The Bankruptcy Court has approved the Disclosure Statement and entered the Confirmation Order

(b)     no stay of the Confirmation Order is in effect;

(c)     Purchaser closes on the Sale and provides all consideration required under the Sale Documents;

(d)     All documents required to be executed by Purchaser to implement the Plan and close the Sale have been executed by Purchaser; and

(e)     The Effective Date occurs no later than August 31, 2010.

35

**9.2    Waiver of Conditions Precedent**.  Subject to Purchaser's written consent, the Debtor, with the written consent of the Committee and PNC Bank, as Agent, has the right to waive the conditions set forth in section 9.1 other than section 9.1(a).

**9.3    Effect of Nonoccurrence of Conditions to Effective Date**.  If the Debtor and the Committee and PNC Bank, as Agent to the extent applicable, determine that one of the conditions precedent set forth in section 9.1 cannot be satisfied and are not waived pursuant to section 9.2, then the Plan Proponents will file a notice with the Bankruptcy Court and the Confirmation Order may be vacated following notice and hearing.  If the Confirmation Order is vacated pursuant to section 9.3, the Plan will be null and void in all respects.

**ARTICLE X**
**EFFECT OF CONFIRMATION**

**10.1    Vesting of Assets**.

(a)    On the Effective Date, (i) all property of the Estate that is an Excluded Asset will vest in the M&E Trust free and clear of all Claims and Liens, except as provided in the Plan or the Confirmation Order.

**10.2    Binding Effect**.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan are binding on all holders of Claims against, or Equity Interests in the Debtor and their respective successors and assigns, whether or not a Claim or Equity Interest of a holder is Impaired or Unimpaired under the Plan and whether or not such holder has accepted the Plan.

**10.3    Discharge of Claims and Termination of Equity Interests**.  Except as otherwise specifically provided in the Plan or in the Confirmation Order, the rights granted under the Plan and the payments and distributions to be made under the Plan discharge all existing debts and Claims, and terminate all Equity Interests of any kind, nature or description, whatsoever, in or against the Debtor, the Estate, their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as otherwise provided under the Plan or in the Confirmation Order, on the Effective Date, all existing Claims against the Debtor and the Estate will be discharged and terminated, and all holders of Claims and Equity Interests will be precluded and enjoined from asserting against the Debtor, the Estate or any of its assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim or is listed in the Schedules. Notwithstanding the foregoing, the Pre-Petition Bank Debt and the related loan documents shall remain in full force and effect except as expressly modified by the Plan.

**10.4    Discharge of the Debtor**.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan or in the Confirmation Order, the distributions and rights that are provided in this Plan will be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of any and all Claims, whether known or unknown, against the Debtor or any of its assets

36

or properties, regardless of whether the property has been distributed or retained pursuant to the Plan. Without limiting the generality of the foregoing, the Debtor will be discharged from any and all Claims and debts of the kind specified in sections 502(g), 502(h) of 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim accepted the Plan. Notwithstanding the foregoing, the Pre-Petition Bank Debt and the related loan documents shall remain in full force and effect except as expressly modified by the Plan.

**10.5** **Full Release of PNC Bank, as Agent, and the Pre-Petition Lenders**. Notwithstanding anything contained in the Plan to the contrary, provided that Class 1 votes to accept the Plan, on the Effective Date for the good and valuable consideration provided by PNC Bank, as Agent, and the Pre-Petition Lenders, the Debtor, the Committee, **and** the M&E Trust, and all Persons and Persons holding Claims or Interests in or against the Debtor shall fully discharge and release PNC Bank, as Agent, the Pre-Petition Lenders and their respective agents, employees, receivers, and professionals (including, without limitation, Raintree Capital Partners, LLC (including William Frazier as a member and in his capacity as former receiver of Max & Erma's); Reed Smith LLP; Bailey Cavalieri, LLC and their respective members, employees and representatives) (collectively, the "Lender Released Parties") (and each such Lender Released Party so released shall be deemed released and discharged) from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction or other occurrence or circumstances (collectively, the "Released Lender Claims") existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor (the "Full Release").

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Fed. R. Bankr. P.9019, of the Full Release, which includes by reference each of the related provisions and definitions contained in this Plan, and *further*, shall constitute its finding that the Full Release is: (a) in exchange for the good and valuable consideration provided by the Released Lender Parties, a good faith settlement and compromise of such Claims; (b) in the best interests of the Debtor and all Holders of Interests and Claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor, the Committee, **or** the M&E Trustee, any Holder of a Claim or Interest, or any other Person **from** asserting any Released Lender Claim or any other Claim, cause of action or liability related thereto of any kind whatsoever against any of PNC Bank, as Agent, and the Pre-Petition Lenders.

**10.6** **Exculpation**. Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have, nor incur any liability to any Person for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering the Plan, any of the Sale Documents or any contract, instrument, release or other agreement or document created or

entered into in connection with the Plan, or other pre- or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Company or confirming or consummating the Plan; *provided*, *however*, that the foregoing provisions of this Article shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct, and, *provided*, *further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties to, or in connection with, the Plan and the Sale Documents.

**10.7    Preservation of Rights of Action.**

(a)    Maintenance of Causes of Action

Except as otherwise provided in the Plan, after the Effective Date the M&E Trust, as successor to the Debtor and/or the Committee, shall retain all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed. Except as otherwise provided in the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, any other Claims, rights, and Causes of Action in that the Debtor may hold against any Entity or Person shall vest upon the Effective Date in the M&E Trust. The M&E Trust through the M&E Trustee, will receive, be vested with and may exclusively enforce any and all such claims, rights, or Causes of Action. After the Effective Date, the M&E Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle or compromise any and all such claims, rights, and Causes of Action without the consent or approval of any third party and without further order of the Bankruptcy Court.

(b)    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Claim or Cause of Action against a Person or Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, all such Claims or Causes of Action are expressly reserved for the M&E Trust and its Beneficiaries for later adjudication by the M&E Trust (including, without limitation, Claims and Causes of Action not specifically identified or which the Debtor or Committee may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or Committee at the time or facts or circumstances which may change or be different from those which the Debtor and Committee now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines or res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Sale Documents (including without limitation, the Disclosure Statement), except where such Claims or Causes of Action have been released in the Plan. In addition, rights are expressly reserved for the M&E Trustee as of the Effective Date and thereafter, to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

**10.8    Injunction**

\12851557.3
\12851557.9

(a)     From and after the Effective Date, all Person and Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the M&E Trust, the Lender Released Parties, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

(b)     From and after the Effective Date, all Persons and Entities shall be precluded from asserting against the Debtor, its Estate, the M&E Trust, the Lender Released Parties, their successors and assigns, and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(c)     The rights afforded in the Plan and treatment of Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor and any of its assets or properties.  On the Effective Date, all such claims against, and Equity Interest in the Debtor shall be satisfied and released in full, unless as otherwise provided in the Plan.

(d)     Except as otherwise expressly provided in the Plan on in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined from and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby from:

(i)     Commencing or continuing in any manner, any action or other proceeding of any kind against the Debtor or Committee, after the Effective Date, against the M&E Trust, their successors and assigns and their assets and properties;

(ii)     Enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor or, after the Effective Date, against the M&E Trust, its successors and assigns, and their assets and properties;

(iii)     Creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, or after the Effective Date, against the M&E Trust or the property or Estate of the Debtor, or after the Effective Date, of the M&E Trust;

(iv)     Asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or after the Effective Date against the M&E Trust, or against the property or Estate of the Debtor or after the Effective Date, of the M&E Trust with respect to any such Claim or Equity Interest; or

(v)     Commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Cause of Action released or settled hereunder.

**10.9     Purchaser Not a Successor**.  Except for those liabilities and obligations specifically assumed pursuant to the Sale Documents, Purchaser shall not be deemed to be liable

\12851557.3
\12851557.9

to any party, known or unknown, under any theory of successor liability including, without limitation, "Implied Assumption", "Defacto Merger", "Continuation of Enterprise", "Fraudulent Transfer" or "Product Line Exception".

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1** **Jurisdiction of Bankruptcy Court**. The Bankruptcy Court will retain jurisdiction of all matters arising under, arising out of, or related to the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, or any other Cause of Action;

(c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) To consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(g) To hear and determine any application to modify the Sale Documents in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Sale Documents, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h) To hear and determine all applications under sections 328, 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by Professionals;

(i) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any

40

transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j) To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the M&E Trust Agreement, and to hear and determine all matters involving or relating to the M&E Trust or the M&E Trustee;

(k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l) To recover all property of the Estate, wherever located, which jurisdiction shall not be limited as a result of the transfer of any such assets and property to the M&E Trust pursuant to the Plan;

(m) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

(o) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(p) To enter a final decree closing the Case.

## ARTICLE XII
## CRAMDOWN RESERVATION

**12.1** **Nonconsensual Confirmation**. The Plan Proponents reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code and/or amend the Plan in accordance with section 13.4 to the extent necessary to obtain entry of the Confirmation Order.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1** **Disposition of Creditors' Committee**. The Committee will disband and be released of its duties and obligations on the Effective Date.

**13.2** **Substantial Consummation**. On the Effective Date, the Plan will be deemed to be "substantially consummated" as contemplated under sections 1101 and 1127(b) of the Bankruptcy Code.

\12851557.3
\12851557.9

**13.3    Payment of Statutory Fees**.  On the Effective Date, (or as soon thereafter as is reasonably practicable) and thereafter as may be required, the M&E Trustee will pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.  These fees are Retained Administrative Expense Claims.

**13.4    Modification of Sale Documents**.    The Sale Documents and any Ancillary Agreements may be amended, modified, or supplemented by the Plan Proponents (and to the extent that such amendments, modifications or supplements may adversely affect the Pre-Petition Bank Debt or its treatment under the Plan with the express written consent of the Agent) with the express written consent of Purchaser, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Plan Proponents may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  Prior to the Effective Date, the Plan Proponents, with the express written consent of Purchaser (and to the extent that such amendments, modifications or supplements may adversely affect the Pre-Petition Bank Debt or its treatment under the Plan~~)~~, with the express written consent of the Agent)_ may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

**13.5    Revocation or Withdrawal of Plan**.  The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Plan Proponents take such action, the Plan will be deemed null and void. In such event, nothing in the Plan will be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**13.6    Fiduciary Obligations of Plan Proponents**.  Notwithstanding anything to the contrary contained in the Plan or the Sale Documents, the obligations of the respective Plan Proponents under the Plan with respect to the Purchaser are subject at all times to the fulfillment of the respective fiduciary duties of the Plan Proponents.  Although the Plan Proponents have agreed with Purchaser to cease actively marketing the Acquired Assets for sale, the Plan Proponents, subject to the provisions of the Break-Up Fee Order, if applicable, may, prior to entry of the Confirmation Order, undertake subject to Bankruptcy Court approval, an ~~Alternative Transaction~~**alternative transaction** in the event that the Sale Documents are no longer in the best interests of the Debtor's Estate and creditors and the Sale Documents would be inconsistent with the fiduciary duties of the Debtor and Committee, respectively, as Plan Proponents.

**13.7    Courts of Competent Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction will have no

effect upon and will not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.8** **Severability**.  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.9** **Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof.

**13.10** **Exhibits**.  All exhibits, schedules, addendum or other others annexed to the Plan are deemed incorporated into and are a part of the Plan as if set forth in full herein.

**13.11** **Successors and Assigns**.  All the rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**13.12** **Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**13.13** **Notices**.  All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Debtor:     Robert O Lampl
         960 Penn Avenue, Suite 1200
         Pittsburgh, PA  15222
         Telephone: (412) 392-0330
         Facsimile: (412) 392-0335
         Email:  rol@lampllaw.com

and

Mark A. Roberts
Alvarez & Marsal North America, LLC
Fairfax Square Tower 1
8065 Leesburg Pike, Suite 310
Vienna, VA  22182
Telephone:  (434) 978-1639
Fax:  (877) 333-2204
mroberts@alvarezandmarsal.com


If to the Committee    :        MCGUIREWOODS LLP
Mark E. Freedlander, Esquire
Michael J. Roeschenthaler, Esquire
EQT plaza, 23rd Floor
625 Liberty Avenue
Pittsburgh, PA  15222
Telephone:  (412) 667-6000
Facsimile:  (412) 667-6050
mfreedlander@mcguirewoods.com
mroeschenthaler@mcguirewoods.com


If to the Agent:               REED SMITH LLP
Robert Simons, Esquire
Amy Tonti, Esquire
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
rsimons@reedsmith.com
atonti@reedsmith.com


If to the Purchaser:          ~~c/o CIC II, LP~~**Fidelity Newport Holdings, LLC**
~~Attn:  Fouad Bushour~~
~~50 Crecent Court, Suite 250~~
~~Dallas, TX 75201~~
~~Telephone: (214) 871-6825~~
~~Facsimile: (214) 880-4491~~
~~fbashour@ cicpartners.com~~

~~and~~

~~c/o CDP Management Partners, LLC~~
~~Attn:  Dean S. Oakey, Managing Director~~

44

**c/o American Blue Ribbon Holdings, LLC**
~~5724 Calpine~~**400 W. 48th** Avenue
~~Malibu, CA  90265~~
**Denver, CO 80216**
**Attn: Legal Department**
Telephone:  ~~(310) 457-0356~~**303) 672-2454**
Facsimile:  ~~(310) 457-0256~~**303) 672-2668**
~~deanoakey@gmail.com~~

**anita.adams@abrholdings.com**

With required copy to:        ~~Fulbright & Jaworski, L.L.P.~~**Paul, Weiss, Rifkind, Wharton &**
**Garrison LLP**

~~Attn:  Edward Rhyne~~
~~1301 McKinney, STE 5100~~
~~Houston, TX 77010-3095~~
**1285 Avenue of the Americas**
**New York, NY  10019**
**Attn: Jeffrey D. Marell, Esquire**
**Attn: Andrew N. Rosenberg, Esquire**
Telephone:  ~~(713) 651-8334~~**212) 373-3000**
~~Fax:  (713) 651-5246~~
~~erhyne@fulbright.com~~
**Facsimile: (212) 373-3990**
**jmarell@paulweiss.com**
**arosenberg@paulweiss.com**

45

Respectfully submitted,

Dated: ~~July 9,~~**August 18,** 2010                    Max & Erma's Restaurants, Inc.


By:      ____/s/ *Mark A. Roberts*_____
Name:  Mark A. Roberts
Title:   Chief Executive Officer,
          Chief Restructuring Officer

                    and

The Official Committee of Unsecured Creditors for
Max & Erma's Restaurants, Inc.


By:      ____*/s/ William Kaye*_____
Name:  William Kaye
Title:   Co-Chair of Official Committee of
          Unsecured Creditors

## PLAN SUPPLEMENT

Exhibit A      M&E Trust Agreement

Exhibit B      M&E Trust ~~Note~~**Cash Consideration**

Exhibit C      Schedule of Assumed Executory Contracts and Unexpired Leases

Exhibit D      ~~Transition~~**Management** Agreement

Exhibit E      Schedule of M&E Trustee Contingency Fee Consideration

# EXHIBIT "1"

## **Restated Purchase** Agreement

Document comparison by Workshare Professional on Wednesday, August 18, 2010 12:26:47 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMSPROXY/Active/12851557/3 |
| Description | #12851557v3<Active> - Comments to Joint Chapter 11 Plan - Max Erma |
| Document 2 ID | interwovenSite://DMSPROXY/Active/12851557/10 |
| Description | #12851557v10<Active> - First Amended Joint Chapter 11 Plan |
| Rendering set | MW Standard |

| Legend: | |
|---|---|
| **<u>Insertion</u>** | |
| <s>Deletion</s> | |
| <span style="color:green"><s>Moved from</s></span> | |
| <span style="color:green"><u>Moved to</u></span> | |
| Style change | |
| Format change | |
| <span style="color:brown"><s>Moved deletion</s></span> | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 155 |
| Deletions | 187 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 348 |